RONALD O. KAYE (No.145051)
MARILYN E, BEDNARSKI (No. 105322)
CAITLIN S. WEISBERG (No. 262779)
KAYE, McLANE & BEDNARSKI
234 E. Colorado Blvd. Suite 230
Pasadena CA 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
E-mail: rok@kmbllp.com
E-mail: mbednarski@kmbllp.com
E-mail: cweisberg@kmbllp.com

Attorneys for Plaintiff,
FRANCISCO CARRILLO, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| FRANCISCO CARRILLO, JR., | CASE NO. CV 11-10310 SVW (AGRx) |
|---|---|
| Plaintiff, | **JOINT STIPULATION PURSUANT TO LOCAL RULE 37 DISCOVERY DISPUTE; DECLARATION OF RONALD O. KAYE & EXHIBITS A-F; DECLARATION OF JIN S. CHOI & EXHIBIT A** |
| v. | |
| COUNTY OF LOS ANGELES, CRAIG DITSCH AND DOES 1 THROUGH 10, inclusive, | |
| Defendants. | DATE:      July 24, 2012<br>TIME:      10:00 a.m.<br>COURT:   Hon. Alicia G. Rosenberg<br><br>Action Filed: December 14, 2011<br>Pretrial Conference: October 1, 2012<br>Trial: October 16, 2012 |

//

//

//

---

# **TABLE OF CONTENTS**

JOINT DISCOVERY STIPULATION ...................................................................... 1

I.       INTRODUCTION ............................................................................ 1

     A.    Plaintiff's Introductory Statement.......................................... 2

     B.    Defendant's Introductory Statement ...................................... 5

II.     PROCEDURAL BACKGROUND & RELEVANT DEADLINES .............. 6

III.    DISPUTED DISCOVERY .............................................................. 7

     A.    Requests and Responses........................................................ 7

     B.    Other Documents Produced by the Parties ........................... 9

     C.    Background of Discovery Dispute......................................... 9

ISSUE 1:    DEFENDANT'S INSUFFICIENT RESPONSES AND DELAYED PRODUCTION OF DOCUMENTS.................................................... 10

     A.    Plaintiff's Contentions ...................................................... 10

     B.    Defendant's Contentions.................................................... 17

ISSUE 2:    DEFENDANT'S PRIVILEGE CLAIMS AND PRIVILEGE LOG........................................................................................ 17

     A.    Plaintiff's Contentions  ...................................................... 18

     B.    Defendant's Contentions.................................................... 37

ISSUE 3:    DEFENDANT'S INSUFFICIENT RESPONSES AND DELAYED PRODUCTION OF DOCUMENTS.................................................... 44

     A.    Plaintiff's Contentions ...................................................... 44

     B.    Defendant's Contentions.................................................... 46

DECLARATION OF RONALD O. KAYE IN SUPPORT OF MOTION TO COMPEL & EXHIBITS A-F................................................ Attached

DECLARATION OF JIN S. CHOI IN OPPOSITION TO MOTION TO COMPEL & EXHIBIT A...................................................... Attached

1

**JOINT DISCOVERY STIPULATION**

2 **I.      INTRODUCTION**

3       This discovery dispute concerns Defendant County of Los Angeles's

4 Responses ("Responses") to Plaintiff's First Set of Requests for Production of

5 Documents ("Requests").[1] Plaintiff asserts that Defendant's written Responses are

6 inadequate and incomplete and that Defendants have prejudicially delayed the

7 production of responsive documents.

8       In the instant motion, Plaintiff respectfully requests that the Court order

9 Defendant to comply with its discovery obligations under Federal Rule of Civil

10 Procedure 34 and applicable case law. In particular, Plaintiff respectfully requests

11 that the Court order the following:

12      1.      Order Defendants to produce all responsive documents to Plaintiff's

13 Requests on or before July 31, 2012;

14      2.      Order Defendants to prepare and produce a privilege log which

15 individually lists each document withheld from production, in compliance with Fed.

16 R. Civ. P. 26(b)(5). *See Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643,

17 650-51 (E.D. Cal. 2010);

18      3.      Order Defendants to provide information regarding the source and

19 original organization of the documents produced pursuant to Plaintiff's Requests;

20 and

21      4.      Order Defendants to prepare and produce an affidavit which describes

22 the steps taken to conduct a reasonable and diligent search for documents, including

23 the files and locations which were searched for responsive documents.

24      Plaintiff further respectfully requests leave to file an expedited motion to

25

26 _____

27      [1] In this joint stipulation, the parties will refer to particular requests and
responses thereto as "RPDs."

28

1  compel, if necessary, following Defendant's July 31, 2012 production, if ordered. In

2  this regard, Plaintiff requests that the Court order defense counsel and the person

3  within the Sheriff's Department who conducted the search for documents to be

4  available for a meet and confer on August 3, 2012 to address any deficiencies in

5  Defendants' compliance with the Court's order on Plaintiff's Motion and to address

6  any disputes prompted by Defendant's production. Should the meet and confer be

7  unsuccessful, Plaintiff requests leave to file a motion to compel (without joint

8  stipulation) on August 7, with a response due on August 9, 2012, a reply (if any) due

9  on August 11th, and a hearing on August 14, 2012.

10  **A.      PLAINTIFF'S INTRODUCTORY STATEMENT**

11      **1.      Factual Background of the Sarpy Case[2]**

12      This case arises out of the wrongful conviction and resulting twenty-year

13  incarceration of Plaintiff Francisco Carrillo, Jr. for a murder that he did not commit.

14  Plaintiff was released from custody in March 2011 following a successful state court

15  petition for writ of habeas corpus ("Petition") pursuant to which he proved that his

16  conviction was based on evidence that was "either false, tainted, or both." Kaye

17  Decl., Ex. E at 14.

18      Mr. Carrillo's wrongful conviction was based on a drive-by shooting that

19  occurred on January 18, 1991, at approximately 7:00 p.m. on Lugo Avenue in

20  Lynwood, California. At the time of the shooting, six African American teenagers—

21  ages 15 to 18—were present at the scene, one of whom was the son of the victim,

22  Donald Sarpy. The nature of the shooting, the existence of a well-known gang

23  rivalry in the area, and the perpetrators' use of gang jargon led to the conclusion that

24  _____

25      [2] The facts stated by Plaintiff in this joint stipulation are based on the

26  allegations in the Complaint (Dkt. No. 1), the state court's findings of fact and

27  conclusions of law granting Plaintiff's Petition (Kaye Decl., Ex. E), and counsel's

review of discovery. Kaye Decl. ¶ 8.

28

1    the crime was gang-related.

2    During the hearing on Plaintiff's Petition, Plaintiff proved to the court—

3    through the testimony of eyewitnesses, through the testimony of a lighting expert,

4    and through a live reenactment of the scene under lighting conditions similar to

5    those of January 18, 1991—that it was too dark at the time of the shooting for any

6    observer to detect the facial features of the perpetrators or make a reliable

7    identification. *See* Kaye Decl., Ex. E at 5-8, 14.

8    On the night of the shooting, the six eyewitnesses were interviewed by

9    investigating officers of the Los Angeles Sheriff's Department ("LASD"). During

10   initial interviews on the scene and by telephone, the eyewitnesses gave vague

11   descriptions of the perpetrators (e.g., "hispanic male") and inconsistent descriptions

12   of the vehicle. Later that night, one of the witnesses, Scott Turner, allegedly made

13   an identification of Plaintiff from a photo array of six photographs ("six pack"). Mr.

14   Carrillo's photograph was in the number one position of the six pack, at the top left

15   corner. Based on Mr. Turner's identification, Mr. Carrillo was arrested.

16   Approximately six months later, immediately prior to the preliminary hearing,

17   the same six pack was shown to the other five eyewitnesses. With varying degrees

18   of confidence, each of the eyewitnesses selected Plaintiff's photograph, still in the

19   number one position. Based exclusively on these identifications, the Los Angeles

20   District Attorney ("DA") Office prosecuted Plaintiff for the murder of Donald Sarpy

21   and the attempted murder of the six eyewitnesses.  The first trial resulted in a hung

22   jury; the second trial resulted in a conviction. On December 3, 1992, Plaintiff was

23   sentenced to a term of twenty-five years to life in prison. Based primarily on the

24   lighting evidence referenced above and also the recantations of the original

25   eyewitnesses, Plaintiff's conviction was vacated in March 2011. The DA has stated

26   that it will not refile the charges against Plaintiff. Indeed, given the eyewitness

27   recantations, there is no evidence of any kind to link Plaintiff to the Sarpy murder.

28   //

2.      **Plaintiff's Allegations**

Plaintiff has alleged constitutional violations against Defendant Craig Ditsch and individual Doe Defendants. At the time of the Sarpy murder, Defendant Ditsch was a deputy assigned to the gang enforcement unit of the Lynwood Sheriff's Station of the LASD (aka "Operation Safe Streets" or "OSS"). He was also an admitted member of the Lynwood Vikings, a group that has been described by the Kolts Commission and United States District Court Judge Terry Hatter as a racist police gang that engaged in brutal and unconstitutional conduct.[3]

In this case, Plaintiff alleges that Defendant Ditsch improperly and intentionally influenced Scott Turner to falsely identify Mr. Carrillo as the perpetrator of a drive-by shooting on January 18, 1991. At the time of this identification, there was no evidence linking Plaintiff to the crime and no reason to suspect he had any involvement in the crime. Indeed, beyond the allegedly tainted eyewitness testimony, there was never any evidence to connect Plaintiff to the crime. Scott Turner later influenced the other eyewitnesses, who falsely identified Plaintiff six months later. These false identifications were the basis for Plaintiff's wrongful conviction.

Plaintiff's theory of the case is that Defendant Ditsch, in concert with other law enforcement officers assigned to the Lynwood Sheriff's Station, in particular other members of the OSS gang unit and the Vikings, targeted Plaintiff because he

---

[3] In September 1990, a group of Lynwood residents filed a class action civil rights lawsuit against LASD officers, the LASD, and the County of Los Angeles that alleged a pattern and practice of constitutional violations—primarily unreasonable searches, excessive force, and false arrest—by officers of the Lynwood Sheriff's Station. Evidence presented in the case to Judge Hatter included evidence of a police gang within the Lynwood Sheriff's Station called the Vikings. Retired Judge James G. Kolts was appointed to conduct a review of the LASD in December 1991 and issued a report in July 1992 that addressed evidence of LASD police gangs, including the Vikings. Kaye Decl. ¶¶ 9-10.

1   was a suspected gang member. Defendant Ditsch and his accomplice officers

2   arrested Plaintiff for the Sarpy Case and for an unrelated assault with a deadly

3   weapon case ("Sarabia Case")[4], knowing that the eyewitness evidence against him

4   in each case was false. The Sarabia Case was dismissed by the DA prior to trial.

5        Accordingly, Plaintiff alleges in the Complaint that Defendant Ditsch and

6   others violated his constitutional rights by engaging in suggestive eyewitness

7   identification procedures which produced the false evidence that was used to convict

8   him. Plaintiff further alleges that Defendant Ditsch violated his constitutional rights

9   by failing to disclose to the defense the facts of the tainted identification by Scott

10  Turner as well as his Vikings membership, as required by *Brady v. Maryland*, 373

11  U.S. 83 (1963).

12  **B.     DEFENDANTS' INTRODUCTORY STATEMENT**

13       This 42 U.S.C. § 1983 action arises from the granting of Plaintiff's state court

14  habeas corpus petition in March 2011, which resulted in his release from state

15  prison.  In 1992, Plaintiff had been convicted for murder, the victim having been

16  shot by a drive-by shooter on January 18, 1991.  The habeas corpus finding did not

17  hinge upon any actual finding of innocence, and nor did it rest on the Brady

18  violations alleged in the instant action.  Instead, it was based on certain

19  eyewitnesses' recantations of their prior identification of Plaintiff as the shooter, and

20  evidence regarding the lighting conditions at the time of the shooting.

21       The only individual Defendant in this case, Lieutenant Craig Ditsch, was a

22  deputy in 1991, and his only involvement was having interviewed eyewitness Scott

23

24  _____

25       [4] The same six pack that was used in the Sarpy Case was previously shown to
    two eyewitnesses in the Sarabia Case. Those eyewitnesses initially identified
26  Plaintiff as the perpetrator in that case. However, Plaintiff was later exonerated
    during live line-ups. At the preliminary hearing in the case, one of the Sarabia
27  eyewitness testified that a LASD deputy led her to select Plaintiff's six pack photo.

28

1   Turner, within hours of the shooting, and during that interview, Mr. Turner
2   identified Plaintiff as the shooter.  Lieutenant Ditsch did not arrest Plaintiff, and he
3   was not one of the investigators assigned to this murder case.  Lieutenant Ditsch
4   also was not involved in the "Sarabia case", an incident for which Plaintiff had been
5   arrested and charged with assault with a deadly weapon.  (Choi Decl., ¶ 2.)

6          On May 8, 2012, Defendant served responses to Plaintiff's requests for
7   production of documents, and produced 216 pages of responsive documentation.
8   This production was in addition to the 975 pages of documentation, obtained from
9   the California Department of Corrections.  (Choi Decl., ¶ 3.)

10          Defense counsel has made clear to Plaintiff's counsel that production of many
11   of the documents sought by Plaintiff has been delayed due to the archived status of
12   the documents, and that responsive documents would be produced once they were
13   obtained.  Accordingly, in conjunction with the service of Defendant's portion of
14   this joint stipulation, over 200 additional pages of documents related to the
15   underlying criminal investigations, are being produced, which addresses many of
16   Plaintiff's concerns.  (Choi Decl., ¶ 4.)

17          Moreover, with respect to Plaintiff's concerns about the source of the
18   documents produced to them, the documents produced prior to July 3, 2012 were
19   obtained from the District Attorney's Office, and documents being produced in
20   conjunction with the service of this portion of the discovery stipulation were
21   obtained from the Los Angeles County Sheriff's Department.  (Choi Decl., ¶ 5.)

22   **II.      PROCEDURAL BACKGROUND AND RELEVANT DEADLINES**

23          Plaintiff filed this action on December 14, 2011. (Dkt. No. 1). The initial case
24   management conference was held on March 12, 2012 before the honorable Judge
25   Wilson who set a trial date of October 16, 2012 and a pretrial conference date of
26   October 1, 2012. (Dkt. No. 11). The parties filed a joint stipulation to continue the
27   trial date, which was denied by the Court on June 18, 2012 (Dkt. No. 19). Pursuant
28   to Local Rule 16-15.2, the current deadline for completing the required settlement

conference procedures is August 17, 2012. Pursuant to Local Rule 16-6, the parties'
joint trial exhibit list must be filed on or before September 10, 2012.

### III.   DISPUTED DISCOVERY

### A.   Requests and Responses

Following the initial case management conference, Plaintiff propounded his
First Set of Requests for Production of Documents to Defendant County of Los
Angeles ("Requests") on April 3, 2012. Kaye Decl. ¶ 2 & Ex. A. In those requests,
pursuant to Federal Rule of Civil Procedure 34(b)(1)(B), Plaintiff specified May 7,
2012 as the date for inspection and copying of the requested documents at the
offices of Plaintiff's counsel.[5] *Id.*, Ex. A at 2. Pursuant to Federal Rules of Civil
Procedure 6(d) and 34, Defendant's written responses were due on the same date.

In the Requests, Plaintiff sought the following groups of documents:

- Documents relating to the "Sarpy Case" and documents relating to the "Sarabia Case." (RPDs 1-5 and 7-8). Both of these terms were defined in definitions section of the Requests. *See* Kaye Decl., Ex. A at 5-6.

- Documents in Defendants possession that relate to Plaintiff, the six eyewitnesses in the Sarpy Case, and three alternative suspects for the drive-by shooting on January 18, 1991.[6] (RPDs 10-20, 23, 29).

- Documents reflecting interactions and communications between Scott Turner and law enforcement officers in Lynwood Sheriff's Station (RPDs 21-22).

- Documents reflecting allegations of misconduct against Defendant Ditsch and other specifically-named law enforcement officers involved in the Sarpy and Sarabia Cases. (RPDs 24-25).

- Documents reflecting the existence and activities of the Lynwood Vikings, as well as Defendant Ditsch's involvement with the Lynwood Vikings.

---

[5] Plaintiff further stated that he would accept legible copies of the requested documents, in lieu of inspection of the originals, if the documents were produced by May 7, 2012 and identified according to the relevant demand for production. Kaye Decl., Ex. A at 2.

[6] Plaintiff subpoenaed each of these suspects for the evidentiary hearing on his petition for writ of habeas corpus. Each of the three suspects refused to testify, asserting his Fifth Amendment rights.

1   (RPDs 26-28).

2   • Documents reflecting Sheriff's Department policies and practices in effect at the time of the investigation and prosecution of the Sarpy Case. (RPDs 30-31).

3

4   Kaye Decl., Ex. A.

5   On May 8, 2012, Defendant County of Los Angeles served written Responses

6   to Plaintiff's First Set of Requests for Production of Documents ("Responses") and a

7   Privilege Log. Kaye Decl. ¶ 3 & Ex. B.

8   Defendant's Responses to individual RPDs included the following objections:

9   • "Overbroad and burdensome; fails to designate the documents and materials sought with reasonable particularity." (all RPDs).

10
    • "[S]eeks documents not likely to lead to the discovery of admissible evidence." (RPDs 24-28).
11

12   • "[S]eeks documents protected by" various privileges, including attorney work product doctrine, deliberative process privileges, official information privilege, right to privacy, and various state law privileges. (RPDs 3-4, 6-8, 10-29).

13

14   • "[S]eeks documents which are the subject of a pending public records act request." (RPD 4).

15

16   "Without waiving the foregoing objection(s) and subject thereto," Defendant

17   responded to individual RPDs as follows:

18   • "A reasonable and diligent search of additional non-privileged, responsive documents is ongoing, and such documents will be produced, along with necessary redactions of any privileged information."[7] (All RPDs, except RPD 4).

19

20   • "[D]ocuments responsive to this request are in the possession, control and custody of Plaintiff (in conjunction with the documents obtained by him in conjunction with his prior criminal and habeas corpus proceedings)." (RPDs 1-3, 5-8, 10-23, and 29).

21

22

23

24   ───────────────

25   [7] In response to RPD 20, Defendant stated a variation of the language quoted

26   in the text, omitting reference to a reasonable and diligent inquiry: "Defendant will produce non-privileged, responsive documents in its possession, along with

27   necessary redactions of any privileged information." The omission may have been inadvertent.

28

1   On May 8, 2012, at the time Defendant served its written Responses,

2   Defendant produced 216 pages of documents (numbered D000792-D001007)

3   responsive to Plaintiff's RPDs 1-3 and 5. Kaye Decl. ¶ 3 & Ex. B.

4   **B.      Other Documents Produced by the Parties**

5   The parties have also exchanged documents pursuant to the requirements of

6   Federal Rule of Civil Procedure 26(a)(1). Defendants' initial disclosures consist of

7   records subpoenaed from the California Department of Corrections and

8   Rehabilitation relating to Plaintiff (numbered D00001-D000791 and D001008-

9   D001192). Plaintiffs' initial disclosures contain court records from the two trials in

10  the Sarpy Case and the subsequent habeas proceedings, including transcripts,

11  exhibits, and pleadings (numbered PFC 00001 – PFC 03515). Kaye Decl. ¶ 4.

12  No other Rule 34 requests for production have been propounded and no other

13  documents have been produced in this action apart from those identified above.

14  Kaye Decl. ¶ 4.

15  **C.      Background of Discovery Dispute**

16  Plaintiff sent a meet and confer letter to Defendants on May 16, 2012. Kaye

17  Decl. ¶ 5 & Ex. C. The letter identified several objections to Defendant's Responses,

18  the primary concern being the generic nature of the responses which provided little

19  information about what documents would be produced and when.  *See id.*, Ex. C.

20  The parties discussed the issues raised in Plaintiff's May 16th letter on May

21  24, 2012. Defense counsel represented that he had notified his clients of the

22  requests, many of which sought documents that had been archived, and had

23  thereafter reminded Defendant that responsive documents must be produced.

24  Defense counsel did not request a specific extension of the deadline for production

25  and did not provide any estimate of when a complete production would be made.

26  On June 7, 2012, the parties filed a joint stipulation to continue the trial date

27  in this case from October 16, 2012 to April 30, 2012, based, in part, on Defendant's

28  delayed production of documents in response to Plaintiff's Requests. Dkt. Nos. 15 &

15-2. At a hearing on June 18, 2012, the Court denied the parties' request to extend the trial date. Dkt. No. 19. Following the hearing, counsel again conferred regarding Defendant's production of documents.  Kaye Decl. ¶ 6. Defense counsel represented that he had been in communication with his client, but that no further documents had been turned over to counsel. *Id.* Defense counsel did not provide any estimate of when further documents would be produced or when the production of responsive documents would be complete. *Id.* By e-mail dated June 20, 2012, Plaintiff notified Defendant that he would be filing the instant motion to compel responsive documents to Plaintiff's Requests. *Id.* ¶ 7 & Ex. D.

**ISSUE 1:     DEFENDANT'S INSUFFICIENT RESPONSES AND DELAYED PRODUCTION OF DOCUMENTS**

**A.     PLAINTIFF'S CONTENTIONS**

     With one exception,[8] Defendant responded to each of Plaintiff's thirty-one RPDs with boilerplate objections and the following statement: "A reasonable and diligent search of additional non-privileged, responsive documents is ongoing, and such documents will be produced, along with necessary redactions of any privileged information." Kaye Decl., Ex. B. In response to twenty-two of the requests, Defendants added the observation that "documents responsive to this request are in the possession, control and custody of Plaintiff (in conjunction with the documents obtained by him in conjunction with his prior criminal and habeas corpus proceedings)." *Id.* Defendants did not produce *any* documents specifically responsive to the bulk of Plaintiff's requests. *Id.* ¶ 3. No supplemental productions have been made since May 8, 2012. *Id.*

     Plaintiff's May 16, 2012 meet and confer letter identified, *inter alia*, the following objections to Defendant's Responses:

_____

     [8] The exception is RPD 4, for which Defendant refused to produce responsive documents. RPD 4 is discussed *infra* at Issue 3.

1   • "With regard to your response that there are documents in Plaintiff's
2     possession—there actually could be, and probably are, documents which are
      not in our possession, particularly from the *Sarabia* case. The County is the
      ultimate depository for these documents, so the County must somehow give
3     us an assessment of what documents are available."

4   • "Presently, we have a trial date of October 16, 2012. It is incumbent upon the
      County to produce discovery to enable Plaintiff to prosecute his claims. In our
5     Request for production, we specifically designated May 7, 2012 as the date
      for production. Therefore you have had 9 [additional] days to produce the
6     documents including the most basic of policy documents regarding
      eyewitness identifications. It is unreasonable for the County to unilaterally
7     determine when it will produce documents, and to not be diligently gathering
      and producing documents. Consequently, if there is an unreasonable delay,
8     we will be filing a Motion to Compel with the Magistrate Court."

9   Kaye Decl., Ex. C.

10       Pursuant to Federal Rule of Civil Procedure 34, a party responding to a

11  request for production of documents must respond in writing within 30 days and the

12  response to each individual request must "either state that inspection and related

13  activities will be permitted *as requested* or state an objection to the request,

14  including the reasons. . . . An objection to part of a request *must specify the part and*

15  *permit inspection of the rest*." Fed. R. Civ. P. 34(b)(2)(B), (C) (emphasis added).

16  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a

17  failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

18       A party resisting discovery on the basis of objections and privilege claims

19  bears "the burden [of] show[ing] that discovery should not be allowed, and has the

20  burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen*

21  *Marine Ltd.*, 189 F.R.D. 281, 283 (C.D. Cal.1998) (citing *Nestle Food Corp. v.*

22  *Aetna Cas. & Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990)). Boilerplate objections and

23  blanket privilege claims do not satisfy a party's obligations under Rule 34 and

24  therefore do not serve as a basis for resisting discovery. *Burlington Northern &*

25  *Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142, 1449 (9th Cir. 2005); *Clarke v.*

26  *American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Miller v.*

27  *Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

28       Thus, a party is obliged to produce all of the *requested* documents, tangible

things, or electronically stored information in its "possession, custody, or control" *on the date specified by the propounding party* or *specifically state* why a complete response is not being made. Fed. R. Civ. P. 34(a), (b)(2)(B), 37(3)(B)(iv); *see Bernat v. City of California City*, Civ. No. 10-305-OWW-JLT, 2010 WL 4008361, at *2 (E.D. Cal. Oct. 12, 2010). A responding party may not unilaterally decide when and how to produce documents and may not make behind-the-scenes judgments regarding relevance and privilege that are not set forth explicitly in writing to the requesting party. *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 246-247, 248 (M.D.N.C. 2010). As stated by one court:

> [T]here are only three appropriate responses to a request for production of documents: (1) an objection to the scope, time, method and manner of the requested production; (2) an answer agreeing to the requested scope, time, place and manner of the production; or (3) or a response offering a good faith, reasonable alternative production, which is definite in scope, time, place or manner.

*Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997).

Where a party believes that a request for production of documents does not set forth "a reasonable time, place, and manner" for the inspection or production of responsive materials, the proper course of action is for the responding party to (a) specifically state its objections to the time, place, and manner set forth in the requests and (b) propose an alternative reasonable time, place, and manner. *Kinetic Concepts*, 268 F.R.D. at 246. This allows the parties to meet and confer to arrive at an agreeable production schedule. If the parties cannot reach an agreement, it is the responding party who must move to enlarge the time for a response pursuant to Rule 26(c)(1)(B). *Kinetic Concepts*, 268 F.R.D. at 246 ("[T]he Rules authorize a requester to specify the deadline for document production and permit the responder to seek relief from unreasonably short response times."). Under this regime, "the promise to continue to search for records and supplement [one's] responses in the future, is a completely inadequate response to a long standing discovery request . . ." *Id.* (citing *Aerodyne Sys. Eng'g, Ltd. v. Heritage Int'l Bank*, 115 F.R.D. 281, 284-85

1    (D. Md. 1987)). Such a response leaves the requesting party entirely at the mercy of

2    the responding party, with no ability to "obtain the requested information in time to

3    use it in shaping the conduct of other discovery." *Id.*

4          In this case, Defendant has done exactly what the Rules forbid. The

5    Responses, which state merely that "a reasonable and diligent search of additional

6    non-privileged, responsive documents is ongoing, and such documents will be

7    produced, along with necessary redactions of any privileged information" fails to

8    give Plaintiff any indication of when documents will be produced, what documents

9    will be produced, what documents will be withheld, and what kind of reasonable

10   search for documents has been undertaken. By making such vague and

11   uncooperative statements, Defendant has unilaterally decided that it, alone, will

12   determine the course of discovery while leaving Plaintiff in the dark.

13         The boilerplate objections and responses stated in Defendant's Responses do

14   not comply with Rule 34's requirement that objections specifically identify the

15   aspects of the request that are problematic and permit inspection of materials

16   responsive to the unobjectionable portion of the requests. Fed. R. Civ. P.

17   34(b)(2)(B), (C). Defendant's vague responses, stating that each and every request is

18   "overbroad and burdensome [and] fails to designate the documents and materials

19   sought with reasonable particularity" leaves considerable room for Defendant to not

20   search for documents and not produce documents without informing Plaintiff of the

21   exact parameters of its response. Plaintiff made a good faith effort to propound

22   specific and reasonable Requests. Defendant was required to provide *all* responsive

23   documents to *those* Requests or explicitly state *what part(s) of each RPD* are

24   objectionable. At this point, by failing to present valid objections to Plaintiff's

25   Requests, Defendant "waived any legitimate objection [it] may have had." *Kinetic*

26   *Concepts*, 268 F.R.D. at 247 (quoting *Mancia v. Mayflower Textile Servs. Co.*, 253

27   F.R.D. 354, 364 (D. Md. 2008).

28         Defendant's Responses, which state that Defendant will produce "responsive,

non-privileged" documents "subject to" its vague and general objections, "serves only to obscure potentially discoverable information and provides no mechanism for either plaintiff[] or the Court to review defendant's decisions." *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998). This type of response has been described as "a pattern of calculated ambiguity," which "confuses more than it clarifies" and does not satisfy the requirements of Rule 34. *Kinetic Concepts*, 268 F.R.D. at 248, 250-51 (ordering the responding parties to "produce *all* documents responsive to [the propounded requests], with the *sole* exception of documents as to which [the responding parties] have a good faith basis for claiming privilege as reflected in a proper privilege log" and without the responding party making its own judgments as to "overbredth, burdensomness, and relevance" (emphasis in original)).

Finally, in this case, the source and provenance of documents is relevant to the merits of Plaintiff's claims, particularly Plaintiff's *Brady* claims for which Plaintiff must prove that exculpatory information was in the possession of Defendants and not turned over to the prosecutor or the defendant in the criminal case. The documents produced by Defendant thus far have been produced without source information and without information which would show the original organization of the documents. All 216 pages (D000792-D001007) were produced in a single block without any apparent rhyme or reason. For example, the 1991 "murder book" (the first police reports produced during the investigation) was produced in the middle of the production (D000882-919), followed by two subpoenas from the second trial (D000920-923), an envelope from 2003 (D000924), a pleading filed in October 1992 (D000925-938), and then an unsigned Information setting forth the charges, presumably from 1991 (D000939-944). If this is the current organization of some file in some archive, then so be it. As it currently stands, however, Plaintiff has no way of interpreting the bizarre structure of Defendant's production, and has no way of knowing where these materials were

found.

At the very least, Plaintiff requests that Defendant identify whether documents were produced from the LASD records or from the DA records, and whether they were produced in the original order. In addition, Plaintiff is entitled to know what documents were produced from what individual files, and whether the production of, for example, the "DA File" is comprehensive. *See, e.g.*, *Kinetic Concepts*, 268 F.R.D. at 250-51 (ordering that the responding party permit inspection of original "laboratory notebooks" where the copies produced by the party were not organized and therefore did not reveal the source and form of the originals). Finally, it is appropriate for the responding party to provide some assurances, in the form of an affidavit, where there is doubt that all responsive documents have been located and produced. *See id.* at 252 (ordering the responding party to produce "an affidavit describing the efforts made to locate documents responsive" to the request).

Plaintiff is cognizant of the current demands on the civil litigation unit of the Los Angeles Sheriff's Department, which processes discovery requests such as the one propounded by Plaintiff. Further, Plaintiff is well aware that the documents sought in this case are over twenty years old and could, theoretically, be difficult to locate. Nevertheless, Plaintiff served his Requests on April 3, 2012, three months prior to the instant motion. The parties are required to engage in settlement by mid-August and must file exhibit lists by mid-September. The requested documents were intended to be the foundation for further discovery in the form of depositions, interrogatories and requests for admission, and the parties are quickly running out of time.

Furthermore, having engaged in similar civil rights litigation against the Los Angeles Sheriff's Department in the past and judging from Defendant's categorical privilege log and general objections, Plaintiff anticipates that Defendant will withhold certain documents from its eventual production prompting further

1  discovery disputes. Whether or not Defendant's basis for withholding documents
2  may be valid, Defendant cannot avoid disputes over such documents by hiding the
3  ball and running out the clock. *See Athridge*, 184 F.R.D. at 190; *Kinetic Concepts*,
4  268 F.R.D. at 246-47, 249.

5        For these reasons, Plaintiff respectfully requests that the Court order
6  Defendant to produce <u>*all responsive documents*</u> in its possession, custody or control
7  on or before July 31, 2012 along with a privilege log that *specifically identifies <u>each</u>*
8  *of the documents that have been withheld*.[9] Plaintiff further respectfully requests that
9  the Court order Defendant to produce an affidavit which describes the steps taken to
10  conduct a reasonable and diligent search for documents, including the files and
11  locations which were searched for responsive documents.

12        Finally, Plaintiff respectfully requests that the Court set an expedited briefing
13  schedule for any further motions to compel.  This unusual request is prompted by
14  Plaintiff's concern that the parties will not have sufficient time to litigate further
15  discovery disputes prior to the filing of pretrial disclosures and motions. Thus,
16  Plaintiff respectfully requests that the Court order defense counsel and the person
17  within the Sheriff's Department who conducted the search for documents to be
18  available for a meet and confer on August 3, 2012 to address any perceived
19  deficiencies in Defendants' compliance with the Court's Order and to address any
20  disputes prompted by Defendant's production. Should the meet and confer be
21  unsuccessful, Plaintiff requests leave to file a motion to compel (without joint
22  stipulation) on August 7, with a response due on August 9, 2012, a reply (if any) due
23  on August 11th, and a hearing on August 14, 2012.
24  *//*

25
26  _____
27        [9] The components of a proper privilege log are discussed *infra* at Section A.2
   of Issue 2.
28

---

1    **B.      DEFENDANTS' CONTENTIONS**

2           As explained in the Introduction, Defendant already has and will be

3    producing documents relating to both the Sarpy and Sarabia investigations.  There

4    has been no intentional delay in the production of these documents, many of which

5    have been in archives for over 20 years.  There are, however, documents generated

6    by the District Attorney's Office which are subject to the attorney work product and

7    deliberative process privileges, and Plaintiff also seeks criminal history

8    documentation about individuals who were juveniles during the subject time period.

9    Moreover, Plaintiff seeks documents regarding the "Lynwood Vikings" that are only

10   related to Plaintiff's *Monell* claim against the County of Los Angeles, and the

11   District Court ahs specifically precluded such discovery at this stage.  (Choi Decl., ¶

12   65; Exhibit "A".)

13   **ISSUE 2:    DEFENDANTS' PRIVILEGE CLAIMS AND PRIVILEGE LOG**

14          Defendant asserted privileges in three ways. First, in response to thirty of the

15   thirty-one RPDs, Defendant stated that following a reasonable and diligent search,

16   "*non-privileged*, responsive documents . . . will be produced, along with necessary

17   *redactions of any privileged information*." Kaye Decl., Ex. B (all RPDs, except RPD

18   4) (emphasis added). Second, in the written Responses, Defendant stated blanket

19   privilege objections in response to the majority of RPDs. *Id.* (RPDs 3-4, 6-8, 10-29).

20   Third, Defendant submitted a privilege log containing eight separate entries. *Id.* at

21   25-26. The privilege log submitted by Defendant states as follows:

22

| No. | Description | Author (if any) | Date | Privilege(s)[10] |
|-----|-------------|-----------------|------|------------------|
23 | 1 | Jury trial evaluation of June | Mary Ann | Undated | WP, DP, OIP |

24   —————————————

25          [10] The codes for these privileges are as follows: WP = Attorney Work Product

26   Privilege; DP = Deliberative Process Privilege; OIP = Official Information

27   Privilege; PR = Privacy Rights of Individuals; EC = Cal. Evid. Code §§1040, 1043,

     1045; PC = Protected by California Penal Code / Statute.

28

| | | | | |
|---|---|---|---|---|
| | | 1992 trial ([Sarpy Case]) | Escalante | | |
| 2 | Handwritten notes by district attorney's office personnel regarding relevant events, witnesses, factual evaluations, etc. re [Sarpy and Sarabia Cases]. | Mary Ann Escanalte and other District Attorney personnel | Various and/or undated | WP, DP, OIP, PR |
| 3 | Criminal history information and/or rap sheets of Plaintiff and other individuals | n/a | n/a | OIP, PR |
| 4 | Documents pertaining to Plaintiff in connection to juvenile court proceedings, such as probation officer's reports and psychological evaluations | Probation officers, psychologists, social workers, court personnel | Various | OIP, PR |
| 5 | Investigative and administrative documents contained in peace officer's personnel files, pursuant to California Penal Code § 832.7 | Various LASD personnel | Various | OIP, PR, EC, PC |
| 6 | Memoranda and emails exchanged between LASD personnel and District Attorney's office personnel,  regarding Francisco Carrillo's murder charge, prosecution, conviction, and habeas corpus proceeding. | Various LASD and District Attorney personnel | Various | WP, DP, OIP, EC, PC |
| 7 | Prosecutor's disposition report re [Sarabia Case] | Mary Ann Escalante | August 5, 1991 | WP, DP, OIP |
| 8 | Autopsy report of Donald Sarpy | Medical Examiner's Office | January 22, 1991 | OIP, PR, Cal. Code Civ. P. § 129 |

Kaye Decl., Ex. B at 25-26.

The parties dispute the privilege claims asserted in the Responses and all entries on this privilege log.

**A.    PLAINTIFF'S CONTENTIONS**

This action concerns the wrongful conviction of Plaintiff in 1992 for an offense committed on January 18, 1991, and the events surrounding the investigation and prosecution of that offense. Accordingly, the facts of this case

1   implicate criminal investigations conducted by the Los Angeles Sheriff's
2   Department, criminal prosecutions by the Los Angeles District Attorney's Office,
3   the operations of the gang enforcement unit within the Lynwood Sheriff's Station
4   including contacts with known or suspected gang members, and the activities of an
5   alleged police gang, the Lynwood Vikings. The vast majority of the documents
6   relevant to this case are "official" records in the custody of the County of Los
7   Angeles and do not exist elsewhere.

8        Plaintiff's RPDs sought information contained in LASD records relating to
9   the investigation of the Sarpy and Sarabia cases, information about the witnesses
10  and suspects in those investigations (including Plaintiff), information about the
11  officers who conducted those investigations, information about communications
12  between those officers and the DA's office, and information contained in DA
13  records relating to the prosecution of the Sarpy and Sarabia Cases. *See supra* at page
14  7-8 (summarizing the groups of documents requested by Plaintiff).

15       It appears from Defendant's Responses that Defendant objects to the
16  production of documents reflecting information about the last four categories: (1)
17  information about the witnesses and suspects in the Sarpy and Sarabia investigations
18  (including Plaintiff), (2) information about the officers who conducted those
19  investigations, (3) information about communications between those officers and the
20  DA's office, and (4) information from DA records.

21       The scope and extent of Defendant's objections is presently unclear because
22  Defendant has stated in its responses that it will produce responsive documents, but
23  has also made blanket privilege claims and has listed broad categories of documents
24  on its privilege log. Because Defendant has not given any indication of what
25  documents will be produced, Plaintiff must largely address Defendant's privilege
26  claims in the abstract.

27  //

28

1.      **The Blanket Privilege Claims Asserted in the Written Responses Are Improper and Ineffective**

Defendant's attempt to assert blanket privilege objections in the written Responses—both by stating that "non-privileged" documents would be produced eventually and by asserting generic privilege objections to twenty-five of the thirty-one RPDs—is ineffectual. It is well established that any party who withholds documents based on a claim of privilege must produce a privilege log which specifically identifies the documents that have been withheld with enough information for the opposing party and the court to evaluate the legitimacy of the claim.

The Ninth Circuit and the Central District of California have firmly rejected parties' use of blanket privilege claims. *Burlington Northern & Santa Fe Ry. Co. v. U.S. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992). Absent information about particular responsive documents claimed to be privileged (such as the date, location, subject matter, author, and recipients of the document), courts reviewing privilege claims lack the information they need to determine if any privilege applies and, in the case of the official information privilege (discussed *infra* at Section A.3.a.ii), the "information necessary to make a reasoned assessment of the weight of the interests against and in favor of disclosure."  *Miller*, 141 F.R.D. at 300.

Defendant's blanket assertion of privilege in the written Responses amounts to a waiver of the claimed privilege for all documents not listed on Defendant's privilege log (addressed in the next section) and should result in an order compelling the production of documents. *Burlington Northern & Santa Fe Ry. Co. v. U.S. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that boilerplate privilege objections are presumptively insufficient to preserve a claim of privilege).

1   To the extent that Defendant's improper privilege objections are a function of

2   the improperly delayed discovery, Plaintiff will accept a supplemental privilege log

3   at the time the documents are produced, provided that the privilege log specifically

4   identifies *each* responsive document withheld, providing sufficient information for

5   Plaintiff to assess the merits of any privilege claims. Fed. R. Civ. P. 26(b)(5);

6   *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650-51 (E.D. Cal. 2010).

7   **2.    Certain Entries on Defendant's Privilege Log Are Insufficient**

8   Certain entries on Defendant's privilege log fail to identify the particular

9   documents withheld and fail to provide sufficient information regarding the

10  documents withheld. Specifically, Plaintiff contests entry numbers 2 through 6;

11  Plaintiff does not contest the sufficiency of entry numbers 1, 7, and 8.

12  Pursuant to Federal Rule of Civil Procedure 26(b)(5), a privilege log must

13  "describe the nature of the documents, communications, or tangible things . . . in a

14  manner that, without revealing information itself privileged or protected, will enable

15  other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In general, this

16  requires each document to be logged separately with the following information

17  provided for each document: "[1] a description of [the] responsive material

18  withheld, [2] the identity and position of its author, [3] the date it was written, [4]

19  the identity and position of all addressees and recipients, [5] the material's present

20  location, [6] and specific reasons for its being withheld, including the privilege

21  invoked and grounds thereof." *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D.

22  643, 650-51 (E.D. Cal. 2010); *Eureka Financial v. Hartford Acc. & Indem.*, 136

23  F.R.D. 179, 186 (E.D. Cal. 1991).

24  For example, in *Eureka*, the responding party identified withheld materials

25  with the following categorical statement: "correspondence to or from counsel and

26  interoffice communications, memoranda, and writings referencing or relating to the

27  relationship with counsel."  *Id.* at 182.  The responding party's failure to provide

28  more information and to provide information about each document precluded any

1    judicial review of the asserted privilege. As a result, the court ordered the

2    responding party to produce the withheld documents. Furthermore, the court

3    emphasized that the obligation to individually identify privileged documents was

4    well established, making the responding party's blanket objections entirely

5    unjustified:

6         [T]he resulting "blanket objection" is decidedly improper.  This fact
          should no longer be "news" to a responding party.  *Peat, Marwick,*
7         *Mitchell & Co. v. West*, 748 F.2d 540, 541-42 (10th Cir. 1984) (holding
          that a blanket, non-specific attorney-client and work product privilege
8         objection was insufficient and effected a waiver of the privilege); *Davis*
          *v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (blanket privilege
9         objection is improper); *Kansas-Nebraska Natural Gas Co. v. Marathon*
          *Oil Co.*, 109 F.R.D. 12, 23-24 (D.Neb. 1983) (blanket objection based
10        on privilege waives the privilege); *In re Shopping Carts Antitrust*
          *Litigation*, 95 F.R.D. 299, 305 (S.D.N.Y. 1982) (party asserting a
11        privilege objection must specify the evidence to which the privilege
          applies).

12   *Id.*

13        In reaching the above conclusion, the *Eureka* court rejected any notion that

14   specific identification and description of each withheld item was unreasonably

15   burdensome: "If the privilege is worth protecting, a litigant must be prepared to

16   expend some time to justify the assertion of the privilege." *Id.* at 183.

17        Entries 2-6 on Defendant's privilege log identify categories of documents, not

18   individual documents. As such, these entries merely restate the blanket privilege

19   objections contained in Defendant's written responses, an approach which has been

20   described by the courts as "decidedly improper."  *Eureka*, 136 F.R.D. at 182-83.

21   Had Defendant provided an adequate privilege log, Plaintiff would have been able

22   to tailor his arguments to particular documents and privilege claims. Further, it is

23   likely that some documents withheld under the broad categories listed by Defendant

24   are clearly not privileged; an adequate privilege log would therefore have narrowed

25   the issues presented to this Court. As it currently stands, Plaintiff is forced to

26   address Defendant's privilege claims in general terms (*see* next section).

27        Privileges that are improperly asserted are deemed waived, requiring the

28

production of the withheld documents. *See Burlington Northern*, 408 F.3d at 1149; *Eureka*, 136 F.R.D. at 182-83; *Miller*, 141 F.R.D. at 300. Accordingly, Plaintiff respectfully requests that the Court order Defendant to produce all documents withheld under entry numbers 2 through 6.  In the alternative, Plaintiff respectfully requests that the Court order Defendant to produce a privilege log which lists each withheld document separately along with the date, author, recipient, and *specific* subject matter of the withheld document; the current location of the document; and all persons who have viewed the document or received a copy of the document.

### 3. The Documents Listed on Defendant's Privilege Log Should Be Disclosed

Under the Federal Rules of Civil Procedure, it is the party asserting the privilege who bears the burden of establishing its applicability. *Bess v. Cate*, No. 07-cv-1989, 2008 WL 5100203, at *4 (E.D. Cal. Nov. 26, 2008) (collecting cases for attorney client-privilege, deliberative process privilege, official information privilege, and attorney work product privilege). Furthermore, responding parties may not evade the burden of proof by simply requesting in camera review. *Maricopa Audubon Society v. U.S. Forest Service*, 108 F.3d 1089, 1093 & n.2 (9th Cir. 1997). In this case, Defendant has asserted a variety of privileges, none of which protect the requested documents from disclosure.

#### a. Applicable Law for Asserted Privileges

##### i. Attorney Work Product Doctrine

The attorney work product doctrine generally protects documents and information prepared by an opposing attorney during the course of the instant litigation. Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discovery documents and tangible things that are prepared in anticipation of litigation or for trial by or for *another party* . . ." (emphasis added)). If it applies, the work product doctrine is a qualified protection against disclosure which may be overcome if the requesting party "shows that it has substantial need for the materials to prepare its

1  case and cannot, without undue hardship, obtain their substantial equivalent by other

2  means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Miller v. Pancucci*, 141 F.R.D. 292, 303

3  (C.D. Cal. 1992) ("The work product rule is not a privilege but a qualified immunity

4  protecting from discovery documents and tangible things prepared by a party or his

5  representative in anticipation of litigation." (internal quotation omitted)).

6       The work product doctrine under Rule 26(b)(3) does not apply to materials

7  prepared in earlier litigation, for persons not parties to the subsequent litigation. *In*

8  *Re California Public Utilities Com'n*, 892 F.2d 778, 780-81 (9th Cir. 1989)

9  ("Although some courts have extended the work product privilege outside the literal

10  bounds of [Rule 26], we conclude that the rule, on its face, limits its protection to

11  one who is a party (or a party's representative) to the litigation in which discovery is

12  sought."). Thus, in *Doubleday v. Ruh*, 149 F.R.D. 601, 605-607 (E.D. Cal. 1993),

13  the district court held that documents generated by a district attorney during a

14  criminal prosecution of the plaintiff were not protected in a subsequent civil rights

15  action by that plaintiff against the police department and individual officers of the

16  police department.

17       Further, like all privileges, the work product doctrine may be waived. "If

18  documents otherwise protected by the work–product rule have been disclosed to

19  others with an actual intention that an opposing party may see the documents, the

20  party who made the disclosure should not subsequently be able to claim protection

21  for the documents as work product." 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.). If the

22  documents sought by Plaintiff in this action were disclosed or were required to be

23  disclosed to plaintiff in the earlier criminal prosecutions, there is no basis for

24  asserting work product protection in this action. *See* Cal. Penal Code § 1050

25  (mandating that the prosecution disclose certain materials to the defense in criminal

26  cases); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (due process requires prosecution

27  to disclose evidence favorable to accused); *cf.* Fed. R. Crim. P. 16 (mandating that

28  the prosecution disclose certain materials to the defense in federal criminal cases).

1   Similarly, if the documents generated in the earlier litigation lost their

2   protected status for some other reason, there is no basis to withhold them in this

3   action simply to thwart Plaintiff's efforts to obtain information. *See Shepherd v.*

4   *Superior Court of Alameda County*, 17 Cal. 3d 107, 122 (1976) (holding that public

5   prosecutor's investigation and work product for closed criminal matter were not

6   protected in subsequent civil case). Finally, even if documents themselves are

7   deemed undiscoverable (because they contain an attorney's opinions and

8   impressions), the work product doctrine does not protect the factual content of the

9   documents. *Laxalt v. McClatchy*, 116 F.R.D. 438, 442 (D. Nev. 1987).

10                  **ii.      Official Information Privilege & Privacy Rights**

11   The official information privilege is a *qualified* privilege, not an absolute

12   privilege like attorney-client privilege or state secrets. It protects *confidential*

13   government documents only where the harm of disclosure outweighs the requesting

14   party's need for the information and right to liberal disclosure under the Federal

15   Rules of Civil Procedure. *Miller v. Pancucci*, 141 F.R.D. 292, 299-300 (C.D. Cal.

16   1992). For civil rights suits against police departments, the balancing of interests

17   should be "moderately pre-weighted in favor of disclosure." *Kelly v. City of San*

18   *Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987).

19   Parties wishing to assert the official information privilege must produce both

20   a privilege log and a detailed and individually tailored declaration setting forth the

21   specific harms that would result from the disclosure of specific documents. *Miller*,

22   141 F.R.D. at 296; *Kelly*, 114 F.R.D. at 660. The failure to produce either a privilege

23   log or a declaration "at the time [the party] files and serves its response to the

24   discovery request" results in a waiver of the alleged privilege. *Miller*, 141 F.R.D. at

25   300. The failure to produce a sufficient declaration also waives the privilege. *Id.*

26   (setting forth necessary elements of the required declaration). Defendant did not

27   produce such a declaration in this case. Kaye Decl. ¶ 12. This makes the claimed

28   privilege entirely moot.

1    Even if properly asserted, a government defendant's official information

2    claim must fail where plaintiffs' legitimate need for the requested information

3    outweighs any proper government interests. *Kelly*, 114 F.R.D. at 661. The privilege

4    is intended to "provide for disclosure of discoverable information without

5    compromising the state's interest in protecting the privacy of law enforcement

6    officers and in ensuring the efficacy of its law enforcement system." *Tate v. Cate*,

7    Civ. No. 09-00770-JLT-PC, 2011 WL 5085568, at *2 (E.D. Cal. Oct. 25, 2011). It

8    was not intended to be used by law enforcement agencies as a blanket justification

9    for withholding damaging documents. Indeed, as stated from the outset, for civil

10   rights suits against police departments, the balancing of interests should be

11   "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661. Further,

12   it is well recognized that the interests commonly raised by law enforcement when

13   asserting the official information privilege do not justify withholding documents

14   when the plaintiff agrees to an appropriate protective order.[11] *Soto v. City of*

15   *Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995); *Chism v. County of San*

16   *Bernandino*, 159 F.R.D. 531, 535 (C.D. Cal. 1994); *Hampton v. City of San Diego*,

17   147 F.R.D. 227, 231 (S.D. Cal. 1993); *Miller*, 141 F.R.D. at 301; *Kelly*, 114 F.R.D.

18   at 662, 666.

19   Defendants have separately asserted "privacy rights of individuals" as a basis

20   for resisting production. There is no recognized "privacy privilege" that is separately

21   applicable in this case. Rather, the privacy rights of police officers and individual

22   citizens with regard to police and prosecution records are recognized by the official

23

24   _____

25   [11] Even though Defendant failed to properly assert the official information
     privilege, and therefore waived any right to withhold documents based on the
26   privilege, Plaintiff nevertheless agrees to enter into a stipulation for a reasonable
     protective order covering confidential documents produced by Defendant, such as
27   police personnel records. Kaye Decl. ¶ 12.

28

information privilege, where appropriate. *Soto*, 162 F.R.D. at 616, 621-22; *Hampton*, 147 F.R.D. at 230-31; *Miller*, 141 F.R.D. at 296. Numerous Courts have held that defendants in civil rights cases should not be able to suppress information relating to constitutional violations through general privacy objections. *See Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 411-12 (C.D. Cal. 2005); *Soto*, 162 F.R.D. at 621-22; *Kelly*, 114 F.R.D. at 661, 666.

### iii.   The Other Privileges Asserted by Defendants Are Entirely Inapplicable

Defendant also asserts various other privileges, including the deliberative process privilege and protections afforded by state law statutes. Defendants have no conceivable basis for asserting these privileges in this federal civil rights case.

The deliberative process privilege protects "materials created by administrative agencies during the decision-making process." *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir.1988). The privilege is designed to promote the quality of agency decisions by encouraging "frank discussion of legal or policy matters." *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150 (1975). Courts have rejected the use of the deliberative process privilege in civil rights cases that do not involve agency decisionmaking at the policy level. *Soto*, 162 F.R.D. at 612-13 ("The 'deliberative process' privilege . . . is inappropriate for use in civil rights cases against police departments. The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."). The materials sought by Plaintiff in the Requests have no bearing on policy-level decision-making of the Sheriff's Department or any other Agency. Rather, the requested documents pertain exclusively to the facts of individual investigations and prosecutions and the operations of the Lynwood Sheriff's Station. Accordingly, there is no basis for Defendant to assert the deliberative process privilege with respect to any of Plaintiff's RPDs.

1    As for the state law privileges claimed by Defendant, it is well established

2 that state law privileges are inoperable in federal civil rights actions. Fed. R. Evid.

3 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989). Courts have specifically

4 rejected the privileges asserted by Defendant in this case under California Penal

5 Code § 832.7 and California Evidence Code §§ 1040, 1043, 1045. *See Green v.*

6 *Baca*, 226 F.R.D. 624, 643-44 (C.D. Cal. 2005) (rejecting application of Cal. Penal

7 Code § 832.7 privilege in federal case); *Jackson v. County of Sacramento*, 175

8 F.R.D. 653, 654 (E.D.Cal.1997) (holding that privileges afforded by Cal. Evid. Code

9 §§ 1040, 1043 and Cal. Penal Code § 832.7 did not bar disclosure of records in §

10 1983 action). Accordingly, Defendant may not rely on these privileges to avoid

11 producing the documents requested by Plaintiff.

12          **b.     Documents Withheld Pursuant to Privileges**

13                   **i.     Entry Nos. 1, 2, 6, 7: Prosecutor Notes and**
                               **Communications**

14

15    In privilege log entry no. 2, Defendant withholds "[h]andwritten notes by

16 district attorney's office personnel regarding relevant events, witnesses, factual

17 evaluations, etc. re [the Sarpy and Sarabia Cases]." Kaye Decl., Ex. B at 25. In

18 privilege log entry no. 6, Defendant withholds "Memoranda and emails exchanged

19 between LASD personnel and District Attorney's Office personnel, regarding

20 Francisco Carrillo's murder charge, prosecution, conviction, and habeas corpus

21 proceeding." *Id.* at 26. In privilege log entry nos. 1 and 7, Defendant withholds the

22 prosecutor's memos evaluating the Sarpy and Sarabia Cases. *Id.* at 25, 26.

23 Defendant relies on the work product privilege, the deliberative process privilege,

24 the official information privilege, the privacy rights of individuals, and state law

25 privileges in the California Evidence Code and Penal Code.

26    For the reasons stated in Sections A.1 and A.2 above, Defendant failed to

27 properly assert and preserve such privileges, at least for entry nos. 2 and 6, by

28 making blanket objections instead of individually listing the withheld documents

1  with sufficient information about each document.  For the reasons stated in Section

2  A.3.a.iii, the deliberative process privilege and the state law privileges asserted by

3  Defendants are entirely inapplicable in this case. Defendant's failure to serve a

4  declaration supporting its assertion of the official information privilege is fatal to the

5  claimed privilege, as explained in Section A.3.a.ii; *see Miller*, 141 F.R.D. at 300-01

6  (describing procedural requirements of asserting official information privilege);

7  *Kelly*, 114 F.R.D. at 669 (explaining why litigants asserting the official information

8  privilege must make a "substantial threshold showing"); *see, e.g.*, *Boyd v. City &*

9  *County of San Francisco*, No.04-5459 MMC (JCS), 2006 WL 1141251, at *4-5

10  (N.D. Cal. May 1, 2006) (overruling a prosecutor's official information claim for

11  prosecution materials because he "failed to meet its threshold burden by providing

12  the [required] affidavit"). The only remaining privilege is the work product doctrine.

13       This case concerns the investigation and prosecution of criminal charges

14  against Plaintiff, which led to Plaintiff's wrongful conviction. Plaintiff has alleged

15  *Brady* claims and false evidence claims. Virtually all of the evidence relevant to

16  Plaintiff's claims is contained in the investigation and prosecution files of the Los

17  Angeles Sheriff's Department and the Los Angeles District Attorney's Office. The

18  need for Plaintiff to access those files, in their entirety, is manifest. Without

19  knowing what information was gathered and recorded by the police, what

20  information was turned over to the prosecution, and what information was turned

21  over to the defense, Plaintiff will have no way of proving his *Brady* claims. Thus,

22  even if the work product doctrine were to apply, Plaintiff's need for the information

23  would outweigh the protection afforded by Rule 26(b)(3) because Plaintiff "has

24  substantial need for the materials to prepare its case and cannot, without undue

25  hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P.

26  26(b)(3)(A)(ii).

27       More fundamentally, however, the materials requested by Plaintiff are not

28  protected by the work product doctrine in the first place. Plaintiff requested

1   materials generated by the police and the prosecutor on behalf of the people that

2   were used in litigating criminal cases which are now closed. Plaintiff's requests

3   were specifically limited to documents that were generated prior to the initiation of

4   the instant lawsuit and did not seek any documents prepared by defense counsel in

5   this action or communications with defense counsel in this action. Accordingly, the

6   protection afforded by Rule 26(b)(3) does not apply to Plaintiff's requests.

7   *Doubleday v. Ruh*, 149 F.R.D. 601, 605-607 (E.D. Cal. 1993).

8         In *Doubleday*, as in this case, a plaintiff filed a civil rights lawsuit based on a

9   prior criminal prosecution. 149 F.R.D. at 604. The plaintiff alleged that the

10   defendant police officers used excessive force in arresting her and then contributed

11   to her unwarranted prosecution for assault and battery on a peace officer, which

12   resulted in acquittal. *Id.* In the civil rights action, plaintiff sought the "complete

13   prosecutorial file" from the Sacramento County District Attorney's Office. *Id.*   The

14   non-party district attorney and the defendant County objected to the production of

15   the prosecution file, claiming, *inter alia*, work product protection. *Id.* The court

16   overruled the objections pursuant to Rule 26(b)(3), holding that "the County cannot

17   assert the work product immunity because the work product was never prepared for

18   it; the deputy district attorneys cannot assert the immunity because they are not

19   parties to the present litigation, nor are they 'representative of' [police officer

20   parties] in this litigation for whom the work product was prepared." *Id.* at 606.

21         The court went on to hold that even if the work product doctrine were

22   applicable, the prosecution file would be discoverable because "the best evidence of

23   the[] improprieties [alleged by plaintiff] would be the contemporaneous statements

24   of the witnesses, especially those of the sheriff's officers involved" and because

25   even the district attorneys' mental impressions were implicated by the Plaintiff's

26   claims. 149 F.R.D. at 607-08. Finally, the court also overruled objections to the

27   disclosure of the prosecution file based on other privileges, such as the official

28   information privilege and state law privileges. *Id.* at 609-610.

1    Numerous other cases have refused to allow the withholding of relevant

2  criminal prosecution materials in subsequent civil actions on the basis of work

3  product. *See, e.g.*, *Sommer v. United States*, No. 09-2093-WQH-BGS, 2011 WL

4  4433631, at *5-6 (S.D. Cal. Sept. 22, 2011) ("While it is true that the documents in

5  the district attorney's file used to prosecute Plaintiff constituted work product in the

6  criminal case, they may no longer benefit from that protection [in a subsequent civil

7  rights action]."); *Ostrowski v. Holem*, No. 02-50281, 2002 WL 31956039, at *3-4

8  (N.D. Ill. Jan. 21, 2002) ("[M]any courts have found the work-product privilege

9  unavailable when a prosecutor in a prior criminal investigation later objects to

10 discovery by a litigant in a related and subsequent civil lawsuit"); *Hernandez v.*

11 *Longini*, No. 96-6203, 1997 WL 754041, at *2 (N.D. Ill. Nov. 13, 1997) ("Courts

12 have expressly found the privilege unavailable when a prosecutor in a prior criminal

13 investigation later objects to discovery of her work product by a litigant in a related

14 civil lawsuit...."); *Schultz v. Talley*, 152 F.R.D. 181, 184 (W.D.Mo.1993) (finding

15 that the work-product privilege could not be asserted for district attorney records

16 because he was not a party to the subsequent civil suit); *accord Tennison v. City &*

17 *County of S.F.*, 226 F.R.D. 615, 619-20 (N.D. Cal. 2005).

18    Finally, even if the items listed in entry nos. 1 and 7 could be properly

19 withheld, there is no basis for Defendant to assert the work product privilege for

20 communications between the LASD, particularly Defendant Ditsch, and the DA's

21 office that do not reflect the mental impressions and trial strategy *of the DA*. Such

22 information would have been discoverable by the opposing party in the criminal

23 actions, and therefore cannot be withheld now in a subsequent civil action. 8 Fed.

24 Prac. & Proc. Civ. § 2024 (3d ed.) ("If documents otherwise protected by the work–

25 product rule have been disclosed to others with an actual intention that an opposing

26 party may see the documents, the party who made the disclosure should not

27 subsequently be able to claim protection for the documents as work product.").

28    Simply stated, Defendant's assertion of the work product doctrine for the

prosecution files in the underlying criminal actions—and, in particular, over statements made by LASD officers involved in the criminal investigations—is entirely without merit.

ii.      **Entry Nos. 3, 4, 8: Information About Plaintiff and Other Involved Citizens**

In privilege log entry no. 3, Defendant withholds "Criminal history information and/or rap sheets of Plaintiff and other individuals." Kaye Decl., Ex. B at 25. In privilege log entry no. 4, Defendant withholds "Documents pertaining to Plaintiff in connection to juvenile court proceedings, such as probation officer's reports and psychological evaluations." *Id.* at 25. In privilege log entry no. 8, Defendant withholds the "Autopsy report of Donald Sarpy." *Id.* at 26. Defendant relies on official information privilege and the privacy rights of individuals.[12]

For the reasons stated in Sections A.1 and A.2 above, Defendant failed to properly assert and preserve such privileges, at least for entry nos. 3 and 4, by making blanket objections instead of individually listing the withheld documents with sufficient information about each document. Further, Defendant's failure to

---

[12] For the autopsy report (entry no. 8), Defendant also withholds the document pursuant to California Code of Civil Procedure § 129, which states that "no copy, reproduction, or facsimile of any kind shall be made of any photograph, negative, or print, including instant photographs and video recordings, of the body or any portion of the body, of a deceased person, taken by or for the coroner at the scene of death or in the course of a post mortem examination or autopsy made by or caused to be made by the coroner, except for use in a criminal action or proceeding in this state that relates to the death of that person . . . ." Leaving aside for the moment that this provision is inapplicable in this case, *see* Section A.3.a.iii supra, and that this action is a "proceeding . . . that relates to the death of [Donald Sarpy]," the express terms of the statute only apply to photographs taken of the deceased. The provision does not apply to the autopsy report itself, and is therefore not a basis for withholding the report in general. To the extent that the report attaches photographs taken of the deceased, Plaintiff does not stipulate that they are privileged, but nevertheless does not hereby move to compel them.

---

serve a declaration supporting its assertion of the official information privilege is fatal to the claimed privilege and to any generic "privacy rights" privilege, as explained in Section A.3.a.ii; *see Miller*, 141 F.R.D. at 300-01 (describing procedural requirements of asserting official information privilege); *Kelly*, 114 F.R.D. at 669 (explaining why litigants asserting the official information privilege must make a "substantial threshold showing"); *see, e.g.*, *Boyd v. City & County of San Francisco*, No.04-5459 MMC (JCS), 2006 WL 1141251, at *4-5 (N.D. Cal. May 1, 2006) (overruling an official information privilege claim because proponent "failed to meet its threshold burden by providing the [required] affidavit").

Even if Defendant had properly asserted the official information privilege (and the privacy concerns inherent to the privilege), Defendant would not be able to satisfy its burden of showing the harm flowing from disclosure (particularly pursuant to a protective order) outweighs Plaintiff's need for the information requested. *Miller*, 141 F.R.D. at 300-01;

The underlying criminal conviction in this case involved a gang-style, drive-by shooting that is tied to ten individuals: Plaintiff (because he was prosecuted), six eyewitness-victims (Scott Turner, Jeffrey Coleman, Montrai Mitchell, James Munnerlyn, Dameon Sarpy, and Marcus Stewart), and three alternative suspects (Oscar Rodriguez, Jermaine Sambrano, and Hector Mercado). Several of the eyewitness-victims and all three of the alternative suspects were affiliated with local gangs. In RPDs 10-19, Plaintiff sought, for each of the ten individuals, "Any and all DOCUMENTS referring or relating to [individual] that *were generated by, in the possession of, or accessible to the Los Angeles Sheriff's Department or the Los Angeles County District Attorney's Office at any time prior to December 3, 1992.*[13]

---

[13] On December 3, 1992, Plaintiff was sentenced and the court entered judgment on his conviction.

This request includes but is not limited to criminal history information, gang book entries, gang member files, suspect files, incident reports, arrest reports, witness statements, database entries, and/or index entries." (emphasis added).

Plaintiff also sought "any and all DOCUMENTS in YOUR possession, custody, or control that refer or relate to Francisco Carrillo, Jr." (RPD 20) and "any and all DOCUMENTS reflecting or relating to any suspected gang activity or affiliation for Scott Turner, Jeffrey Coleman, Montrai Mitchell, James Munnerlyn, Dameon Sarpy, and/or Marcus Stewart" (RPD 23). Other RPDs requested related information that doesn't materially change the privilege analysis. (See RPDs 21-22).

First, to the extent that Plaintiff seeks any documents relating to himself, it is simply absurd for Defendant to assert Plaintiff's privacy rights as a basis for withholding the documents requested by Plaintiff. This is particularly the case where Defendant does have access to such materials and could potentially use the information contained in them against Plaintiff as impeachment or otherwise. If Plaintiff wished to assert his privacy rights, he would be doing so *to preclude Defendant* from viewing sensitive materials (such as juvenile records), not to ensure that Defendant was the *exclusive* party to view those materials.

As for materials relating to the other nine individuals, Plaintiff specifically limited his requests to the information that was *accessible to the police and DA* during the *relevant time period of Plaintiff's criminal prosecution*, over 20 years ago. The privacy rights of these individuals would be offended more by the police having possession of it than by Plaintiff gaining access to it many years after the fact for use in civil rights litigation. In addition, the stale nature of the 20-year-old information shows why Plaintiff's need for the discovery outweighs Defendant's privacy rights claims. Plaintiff seeks the information to demonstrate the flawed nature of the investigation which targeted him for a gang-related crime that was perpetrated by other people against possible rival gang members. The only way to demonstrate *what the police knew* about these individuals is through the records that

1  would have been consulted by the police or the prosecutor at the time. By contrast,

2  whatever private information is contained in the archived police files would have

3  little or no bearing on the current lives of the third-parties. There is little additional

4  danger to these individuals' privacy by giving Plaintiff access to *the same records*

5  that the police had access to twenty years ago. Moreover, Plaintiff would readily

6  enter into a protective order preventing further disclosure of the records, fully

7  obviating any claimed concern *by Defendant* for the individuals' privacy interests.

8      For all of these reasons, Defendant has failed to carry its burden of

9  establishing that the information requested by Plaintiff is protected from disclosure.

10                  **ii.      Entry No. 5: Information About Police Officers**

11      In privilege log entry no. 5, Defendant withholds "[i]nvestigative and

12  administrative documents contained in peace officers' personnel files, pursuant to

13  California Penal Code § 832.7." Kaye Decl., Ex. B at 26. Defendant relies on the

14  official information privilege, the privacy rights of individuals, and California state

15  law privileges.

16      For the reasons stated in Sections A.1 and A.2 above, Defendant failed to

17  properly assert and preserve such privileges by making blanket objections instead of

18  individually listing the withheld documents with sufficient information about each

19  document.  For the reasons stated in Section A.3.a.iii, the state law privileges

20  asserted by Defendants are entirely inapplicable in this case. Finally, once again,

21  Defendant's failure to serve a declaration supporting its assertion of the official

22  information privilege is fatal to the claimed privilege and to any generic "privacy

23  rights" privilege, as explained in Section A.3.a.ii; *see Miller*, 141 F.R.D. at 300-01

24  (describing procedural requirements of asserting official information privilege);

25  *Kelly*, 114 F.R.D. at 669 (explaining why litigants asserting the official information

26  privilege must make a "substantial threshold showing"); *see, e.g.*, *Boyd v. City &*

27  *County of San Francisco*, No.04-5459 MMC (JCS), 2006 WL 1141251, at *4-5

28  (N.D. Cal. May 1, 2006) (overruling an official information privilege claim because

1   proponent "failed to meet its threshold burden by providing the [required]

2   affidavit").

3        In his Requests, Plaintiff sought documents reflecting allegations of

4   misconduct against Defendant Ditsch and other police officers who were involved in

5   the investigation of Plaintiff which led to his wrongful conviction. (RPDs 24-26)

6   Plaintiff also sought documents reflecting the existence of the Lynwood Vikings and

7   Defendant Ditsch's involvement with the Lynwood Vikings (RPDs 26-28). These

8   requests relate exclusively to misconduct (a) that could be used to impeach these

9   officer-witnesses should they testify at trial; (b) that could be admitted under 404(b)

10  as misconduct relevant for proving motive, intent or pattern; or (c) that could be

11  used to prove Plaintiff's claim that Defendant Ditsch violated *Brady* by failing to

12  disclose his membership in the Vikings. Plaintiff did not make blanket requests for

13  each officer's "personnel file."

14       Thus, even if Defendant had properly preserved an official information

15  privilege (or privacy) objection, Defendant would not be able to resist disclosure

16  because Plaintiff's need for the information sought by his narrowly-tailored requests

17  outweighs the types of interests that could be asserted by Defendant. *See, e.g., Soto*

18  *v. City of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) ("Considering the great

19  weight that is afforded to federal civil rights laws, as articulated in *Kelly*, and the

20  case law which supports discovery of police personnel files, this Court finds that

21  Defendants' privacy interests in the personnel files are outweighed by Plaintiff's

22  need for the documents); *Miller v. Pancucci*, 141 F.R.D. 292, 297 (C.D. Cal. 1992)

23  (granting plaintiff's motion to compel complaints against officers alleging "false

24  arrest, civil rights violations, assault and battery, brutality, intentional infliction of

25  emotional distress, dishonesty, corruption, perjury, fabricated probable cause, and

26  bigotry" because Defendant failed to show how the harm of disclosure would

27  outweigh Plaintiff's need for the information in his civil rights case). As these cases

28  demonstrate, the materials requested by Plaintiff are regularly disclosed in civil

1   rights litigation. Defendant is well aware of this line of cases and nevertheless

2   persists in asserting the official information privilege without any basis and without

3   following the required procedure.

4          4.       **Conclusion on Issue 2**

5          For all of the foregoing reasons, the Court should overrule Defendant's

6   privilege claims in their entirety and order Defendant to produce all documents

7   withheld based on privilege claims. Defendant's half-hearted and obstructionist

8   assertion of these claims should not be given any weight by the Court, and given the

9   expedited time-frame of this case, Defendant should not be given a second

10  opportunity to thwart discovery by attempting to perfect otherwise flawed privilege

11  claims.[14]

12  **B.   DEFENDANTS' CONTENTIONS**

13        **A.   <u>PLAINTIFF IMPROPERLY SEEKS DOCUMENTS SUBJECT</u>

14              <u>TO THE ATTORNEY WORK PRODUCT AND DELIBERATIVE</u>

15              <u>PROCESS PRIVILEGES.</u>**

16        Plaintiff's contention that the attorney work product privilege has no

17  meaningful effect here cannot be reconciled with the wealth of case law that

18  demonstrates the applicability of the work product privilege in criminal

19  prosecutorial settings, in addition to the deliberative process privilege.

20        The deliberative process privilege is implicated here because Plaintiff seeks

21  information directly related to the DAO's **decision-making and deliberative**

22  _____

23        [14] In this regard, Plaintiff notes that Plaintiff's counsel and Defendants'
    counsel have extensively litigated, in the context of a different civil rights case
24  against the County of Los Angeles and LASD deputies, the procedural issues
    relating to privilege logs and the declarations required for asserting the official
25  information privilege. *See Rodriguez et al. v. County of Los Angeles et al.*, Civ. No.
    10-6342-CBM-AJW (C.D. Cal.) (Dkt. Nos. 115, 117, 139). Thus, defense counsel
26  has no basis for arguing that his failure to comply with such procedural
27  requirements was inadvertent.

28

**processes** regarding the underlying criminal proceeding.  *Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 435 (D. N.H. 1989) ("The decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry."); *Belmontes v. Woodford*, 350 F.3d 861, 895 n. 12 (9th Cir. 2003) ("A charging decision is made with great deliberation over a period of time and is generally the product of a deliberative process involving more than one person."); *Newport Pacific Inc. v. County of San Diego*, 200 F.R.D. 628, 636 (S.D. Cal. 2001) ("the main justification for the deliberative process privilege has . . . much to do with the public policy of protecting confidential exchanges of opinions and advice within the executive branch."); *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) ("The deliberative process privilege is based on the perceived need to encourage candor within the decision-making process by protecting predecisional communications from disclosure."); *United States v. Edelin*, 128 F.Supp.2d 23, 39 (D. D.C. 2001) ("[t]he deliberative process privilege has been recognized . . . one that enables government agencies to come to well-reasoned decisions on important matters."); *In re United States*, 197 F.3d 310, 312 (8th Cir. 1999) ("the DOJ decision making process is protected from inquiry by the deliberative process and the work product privileges").

The deliberative process privilege has been enforced in criminal proceedings where privileged information is sought from the prosecution.  *See*, *In re United States*, 197 F.3d 310, 312 (8th Cir. 1999) ("the DOJ decision making process is protected from inquiry by the deliberative process and the work product privileges"); *United States v. Furrow*, 100 F.Supp.2d 1170, 1174 (C.D. Cal. 2000) (death penalty memorandum and form "part of a deliberative and pre-decisional process; accordingly, they fall within the 'deliberative process' privilege, and the government should not be compelled to produce them to defendant."); *Antonelli v. Sullivan,* 732 F.2d 560, 561 (7th Cir. 1983) (applying deliberative process privilege to preclude disclosure of an internal United States Attorney's Office prosecution memorandum).

A case with similar facts as the instant case and an instructive discussion of the relevance of the **deliberative process privilege** is *Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432 (D. N.H. 1989). In *Gomez*, the plaintiff in a § 1983 civil rights action (alleging excessive force) subpoenaed for deposition an assistant Attorney General who sought to quash the subpoena. The assistant Attorney General had conducted an investigation of the plaintiff's allegations and concluded that there was insufficient evidence of police misconduct. *Id.* at 433. In finding that the assistant Attorney General was "privileged from the discovery process", the *Gomez* Court explained that "[r]elevant to this action is the 'governmental' or '**deliberative process' privilege**." *Id.* at 434. The Court explained further that "[f]ederal courts have long recognized **a policy against exploratory inquiries into the mental processes of governmental decision makers**." *Id.* (citing cases, emphasis added). Moreover, "factual information may also be privileged if it is inextricably intertwined with the process by which policy is made or if the manner of selecting or presenting the facts **would reveal the deliberative process**." *Id.* at 435 (emphasis added).

In accordance with these guidelines, the *Gomez* Court ruled that the plaintiff was not entitled to take the assistant Attorney General's deposition which was purportedly necessary to discover the basis of his "decision not to prosecute the case." *Id.* This inquiry was "clearly protected from the discovery process" because the "decision whether to prosecute is the product of the deliberative process which should be afforded a high degree of protection from public inquiry." *Id.* Moreover, the plaintiff's inquiry into the assistant Attorney General's "decisions made in investigating the case and in determining whether to prosecute would improperly divulge mental processes protected by the privilege." *Id.* at 436 (emphasis added). Thus, due to the need to maintain the prosecutor's deliberative process privilege, the plaintiff in *Gomez* was precluded from taking the deposition.

Prosecutors are also protected by the work product privilege as evidenced by the facts and analysis in *United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000).

In *Fernandez*, the district court ordered the disclosure of the prosecutor's death penalty evaluation form and related prosecution memorandum.  The Ninth Circuit held that these materials were protected by both the deliberative process and work product privileges.  The *Fernandez* Court explained the deliberative process privilege "encourages forthright and candid discussions of ideas and, therefore, improves the decisionmaking process." *Id.* at 1246 (citing *Assembly of the State of Cal. v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir.1992)).  Accordingly, the Court held that the materials in question were "predecisional" and "deliberative" in nature, and thereby protected by the deliberative process privilege.

The *Fernandez* Court also held that the same materials (which were prepared in the anticipation of a criminal litigation) were also protected by the "more general work product privilege," noting that the Supreme Court in *Hickman* had held that the primary purpose of this privilege is to "'prevent exploitation of a party's efforts in preparing for litigation.'" *Fernandez*, 241 F.3d at 1247 (quoting from *Admiral Ins. Co. v. United States Dist. Court,* 881 F.2d 1486, 1494 (9th Cir.1989)).  Based on this dual-pronged analysis, the Ninth Circuit held that the subject materials "are protected by **the deliberative process and work product privileges.**" *Id.* (emphasis added).

Indeed, attorney work product concerns can be heightened where the government agencies and their agents are involved:

> "More concretely, **disclosure of work product connected to prior litigation can cause real harm to the interests of the attorney and his client <u>even after the controversy in the prior litigation is resolved</u>.** Many government agencies, for example, deal with hundreds or thousands of essentially similar cases in which they must decide whether and how to conduct enforcement litigation.  Few of these cases will be 'related' to each other in the sense of involving the same private parties or arising out of the same set of historical facts; yet large classes of them may present recurring, parallel factual settings and identical legal and

policy considerations.  **It would be of substantial benefit to an opposing party (and of corresponding detriment to an agency) if the party could obtain work product generated by the agency in connection with earlier, similar litigation against other persons.**  He would get the benefit of the agency's legal and factual research and reasoning, enabling him to litigate "on wits borrowed from the adversary." *Id.,* at 516, 67 S.Ct., at 396 (Jackson, J., concurring).  **Worse yet, he could gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled.**"

*F.T.C. v. Grolier Inc.*, 462 U.S. 19, 30-31, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (Brennan, J., concurring) (emphasis added, footnotes omitted).[15]

Thus, the *Fernandez* Court's treatment of the work product doctrine in the prosecutorial setting is consistent with well-established work product principles. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385 (attorney work product "is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways") (emphasis added); *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("the work-product doctrine is distinct from and broader than the attorney-client privilege.");  *In re Cendant Corporation Securities*

---

[15] The importance of preserving the work product protection in criminal procedures was recognized in *In re Grand Jury Proceedings*, 219 F.3d 175 (2nd Cir. 2000):

"Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case."

*Id*. at 190.

1  *Litigation*, 343 F.3d 658, 662 (3rd Cir. 2003) ("It is clear from *Hickman* that work

2  product protection extends to both tangible and intangible work product.").

3       The attorney work-product privilege has been held to apply to materials

4  prepared by investigators and other agents upon whom attorneys must rely in the

5  compilation of materials in preparation for trial.  *United States v. Nobles*, 422 U.S.

6  225, 238-239 (1975) (involving Fed.R.Crim.P. 16 rather than Fed.R.Civ.P. 26).  For

7  example, in *Shannon v. Koehler*, 257 F.R.D. 519 (N.D. Iowa 2009), a memorandum

8  prepared in the course of police chief's investigation resulting from alleged use of

9  excessive force was privileged work product, where it was prepared a week after

10  arrestee filed a lawsuit against city, police chief, and arresting officer, and it was

    prepared in direct response to the lawsuit.

11       There is necessarily some overlap between the work product privilege and the

12  deliberative process privilege when the deliberating body is a prosecuting authority.

13  In *U.S. v. O'Reilly*, 545 F.Supp.2d 630, 644 (E.D. Mich. 2008), for example, the

14  District Court for the Eastern District of Michigan held that documents reflecting the

15  Attorney General's decision to prosecute and seek the death penalty were entirely

16  protected by both the deliberative process privilege and the attorney work product

17  doctrine and not discoverable by the defense in the criminal case.  The Court noted

18  that "[i]f defendants had unfettered access to agency decision-making processes, it

19  would chill debate or discussion by agency employees and degrade the ability of

20  agencies to function effectively."  *Id.* (citing *W.R. Grace,* 455 F.Supp.2d 1140,1143

21  (D. Mont. 2006); *Assembly of the State of California v. United States Dep't of

22  Commerce,* 968 F.2d 916, 920 (9th Cir.1992)); *see also*, *United States v. Perez,* 222

23  F.Supp.2d 164, 172 (D. Conn. 2002); *United States v. Frank,* 8 F.Supp.2d 253, 284

24  (S.D.N.Y.1998) ("prosecutors are encouraged and required to evaluate carefully the

25  strengths as well as the weakness of their cases . . . Discovery of the deliberative

26  materials would have a chilling effect on the thorough evaluation of these issues and

27  hinder the just, frank, and fair review of the decision . . .").

28       Here, Plaintiff clearly seeks information and documents protected by the

deliberative process and work product privileges in that they require disclosure of documents that reveal the substance of the prosecutors' mental impressions and prosecutorial decision-making processes.  These documents contain specific information regarding the substance of the prosecutorial decision-making processes, including prosecutorial opinions and conclusions regarding evidence, and witnesses.  Such information unquestionably falls under the scope of both the deliberative process and work product privileges.

### B.   CONFIDENTIAL CRIMINAL INFORMATION ABOUT NON-PARTIES WERE PROPERLY WITHHELD.

Plaintiff, and the key eyewitnesses to the 1991 murder Donald Sarpy were all juveniles at the time of the incident and subsequent criminal prosecutions.  Juvenile records are subject to very strict statutory protections.  *See*, Cal. Welf. & Inst. Code § 827, et. seq.

Nevertheless, Plaintiff demands production of criminal rap sheets for these individuals, and Defendant submits that these records were properly withheld.  Moreover, Plaintiff and his attorneys have had access to these individuals during the course of the habeas corpus proceedings, in that they obtained declarations from them prior to the habeas proceeding.  They also testified at the habeas proceeding.  Defendant should not have to open itself to civil claims by individuals for disseminating their respective juvenile criminal rap sheets or other information protected from disclosure under state law.[16]

### C.   PLAINTIFF'S DEMAND FOR ANY AND ALL DOCUMENTS REGARDING THE "LYNWOOD VIKINGS" CANNOT BE RECONCILED WITH THE DISTRICT COURT'S LIMITATION OF DISCOVERY IN THIS ACTION.

Plaintiff contends that in response to his Request for Production Nos. 26 – 28, Defendant should produce to him essentially any and all documents relating to the

---

[16] Records pertaining to Plaintiff have been and will be produced.

1  investigation into the activities of the "Lynwood Vikings". However, at the March

2  12, 2012 status conference, the District Court specifically bifurcated Plaintiff's

3  *Monell* claim against the County of Los Angeles from his claims against Lieutenant

4  Ditsch, the only individual Defendant. (*See* Defendant's Exhibit "A"; Choi Decl., ¶

5  6.) In fact, the District Court was explicit about bifurcating *Monell* discovery from

6  non-*Monell* discovery, and this clarification was made when Plaintiff's counsel

7  offered an explanation as to why the October 16, 2012 trial date would not provide

8  enough time to conduct discovery in this action. Clearly, the District Court

9  indicated that less time would be needed for discovery due to the bifurcation from

10  *Monell* discovery from non-*Monell* discovery. (Choi Decl., ¶ 6.)

11        Thus, Plaintiff's demand for documents regarding the "Lynwood Vikings"

   should be denied. Indeed, Plaintiff's claims against Lieutenant Ditsch require proof

12  about the events surrounding the Donald Sarpy murder and the ensuing investigation

13  — as opposed to documents related to wholly unrelated incidents, where the only

14  commonality would be the involvement of personnel assigned to the Lynwood

15  station. Plaintiff's demand is the prototype "fishing expedition" request, which

16  should therefore be denied.

17  **ISSUE 3:   RPD 4 – COMMUNICATIONS BETWEEN LASD AND DA**
18  **REGARDING THE SARPY CASE**

19        Plaintiff addresses RPD 4 separately from the other requests because it is the

20  only one for which Defendants refused to produce any documents.

21        **RPD No. 4**: Any and all COMMUNICATIONS between the LASD
          and the Los Angeles District Attorney's Office in relation to the
22        SARPY CASE, from January 18, 1991 through the present.

23        **Response to RPD No. 4**: Objections: Overbroad and burdensome; fails
          to designate the documents and materials sought with reasonable
24        particularity; seeks documents protected by the attorney work product
          and deliberative process privileges; seeks documents which are the
25        subject of a pending public records act request (see attached privilege
          log).

26  **A.    PLAINTIFF'S CONTENTIONS**

27        For the reasons stated in Sections A.1, A.2, and A.3.b.i of Issue 2, Defendant

28

1  has no basis for resisting discovery of the requested documents. The only alleged

2  basis for resisting discovery that has not been addressed previously is Defendant's

3  assertion that RPD 4 "seeks documents which are the subject of a pending public

4  records act request." It is that assertion that Plaintiff addresses here.

5       Plaintiff filed an unsuccessful motion to give collateral estoppel effect to the

6  findings of fact made by the state court in granting Plaintiff's petition for writ of

7  habeas corpus. (Dkt. No. 12). To gather information relevant for that motion,

8  Plaintiff made a Public Records Act ("PRA") request to the Los Angeles District

9  Attorney's Office requesting communications between the LASD and the DA's

10  office *during the course of the habeas proceedings*. Kaye Decl. ¶ 13. Those

11  communications were relevant to the question of whether the Defendants in this case

12  were in privity with the DA's office with respect to the habeas proceedings such that

13  they could be bound by the state court's findings of fact.[17] *Id.* Because Plaintiff's

14  motion was due by May 15, 2012, Plaintiff sought the relevant communications

15  through the PRA, which requires officials to respond within 10 days, instead of the

16  Federal Rules of Civil Procedure, which gives responding parties 30 days. *See id.*;

17  *Compare* Cal. Gov't Code § 6256 (setting 10 day response period), *with* Fed. R.

18  Civ. P. 34(b)(2)(A) (30 day response period). In any event, Plaintiff's PRA request

19  was not a substitute for Plaintiff's discovery requests in this litigation because

20  Plaintiff is entitled to greater discovery under the Federal Rules of Civil Procedure

21  than a member of the public is entitled to under the PRA.

22       Moreover, Plaintiff's PRA request did not cover the bulk of the materials

23  sought by RPD 4 because it was limited to communications occurring during the

24  habeas proceeding. The thrust of RPD 4 concerns, by contrast, the communications

25

26  _____

27      [17] The court denied Plaintiff's motion, holding that there was no privity. (Dkt.
No. 19, 20).

28

1  which occurred during the underlying prosecution of the Sarpy Case in 1991 and

2  1992, although it also includes communications that occurred in relation to the

3  habeas proceedings.

4         To the extent that Defendant wishes to avoid re-producing the

5  communications produced pursuant to Plaintiff's PRA request, Plaintiff does not

6  object. However, to the extent that materials were withheld from the PRA request

7  based on the statutory scheme applicable to the PRA, *see, e.g.*, Kaye Decl. ¶ 14 &

8  Ex. F, Defendant must now produce those documents pursuant to Rule 34. In

9  particular, the DA's office, in responding to the PRA request, redacted the content

10 of an email from Defendant Ditsch to the DA commenting on Plaintiff's Petition. *Id.*

11 Although the PRA gave the DA discretion and authority to redact this information,

12 there is no basis for withholding Defendant Ditsch's prior statement in this

13 litigation, as demonstrated above in Section A.3.b.i of Issue 2. Indeed, as

14 successfully argued by Defendant Ditsch in opposition to Plaintiff's motion for

15 collateral estoppel, he was "no more than a percipient witness" for purposes of the

16 habeas proceedings and was not represented by the District Attorney. (Dkt. No. 13

17 at 7:9-11). As such, any statements made by Defendant Ditsch to the DA are entirely

18 fair game.

19 **B.     DEFENDANTS' CONTENTIONS**

20        The attorney work product and deliberative process privileges related

21 arguments discussed above, and the controlling and analogous case law, also apply

22 to communications between the District Attorney's Office and the Sheriff's

23 Department.  These communications were directly related to a pending criminal

24 proceeding, involving a state prison inmate charged with murder.  Moreover, many

25 of the subject documents have already been produced to Plaintiff pursuant to his

26 separate public records act request.  Accordingly, Plaintiff's arguments for the

27 compelling production of these privileged documents should be denied.

28  //

1

2                               Respectfully submitted,

3                               KAYE, McLANE & BEDNARSKI, LLP

4

5  DATED: July 3, 2012      By:   /s/ *Ronald O. Kaye*
6                               RONALD O. KAYE
7                               Attorney for Plaintiff

8

9                               LAWRENCE BEACH ALLEN & CHOI, PC

10

11  DATED: July 3, 2012     By:   /s/ *Jin S. Choi*
12                               JIN S. CHOI
13                               Attorney for Defendants