DAVID D. LAWRENCE, State Bar No. 123039
dlawrence@lbaclaw.com
JIN S. CHOI, State Bar No. 180270
jchoi@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
COUNTY OF LOS ANGELES
and CRAIG DITSCH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO CARRILLO, JR., | Case No. CV 11-10310 SVW (AGRx) |
| Plaintiff, | Honorable Stephen V. Wilson |
| vs. | **DEFENDANT CRAIG DITSCH'S REPLY TO OPPOSITION MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| COUNTY OF LOS ANGELES; CRAIG DITSCH; AND DOES 1-10, INCLUSIVE; | |
| Defendants. | |
| | *[Evidentiary Objections and Response to Plaintiff's Additional Material Facts filed concurrently herewith]* |
| | Date: September 10, 2012<br>Time: 1:30 p.m.<br>Courtroom: 6 |

TO THE COURT, ALL INTERESTED PARTIES, AND TO THEIR COUNSEL OF RECORD:

Defendant Craig Ditsch hereby submits the following reply memorandum of points and authorities in support of his Motion for Summary Judgment, or

1

1   Alternatively, Summary Adjudication.

2

3   Dated:  August 27, 2012                    LAWRENCE BEACH ALLEN & CHOI, PC

4

5

6                                        By _____/s/ Jin S. Choi_____

7                                              Jin S. Choi
                                               Attorneys for Defendants
8                                              COUNTY OF LOS ANGELES
                                               and CRAIG DITSCH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .........................................1

I.   PLAINTIFF CANNOT DEMONSTRATE THAT IN 1991, POLICE OFFICERS HAD CLEARLY ESTABLISHED CONSTITUTIONAL OBLIGATIONS UNDER *BRADY v. MARYLAND* THAT COULD RESULT IN SECTION 1983 LIABILITY ...........................................................................................1

II.  FUNDAMENTALLY, PLAINTIFF'S CONTENTION IS THAT DEFENDANT DITSCH CAUSED HIM TO BE UNLAWFULLY SEIZED AND PROSECUTED — A CLAIM THAT CANNOT BE PURSUED AS A SUBSTANTIVE DUE PROCESS VIOLATION ...........3

     A.   Plaintiff's Due Process Claim Is Barred By Supreme Court Precedent And If Allowed, Would Render Moot The Narrow Exception For Section 1983 Malicious Prosecution Claims .............4

     B.   Plaintiff's Due Process Claims Against Defendant Ditsch (Even If Allowable) Do Not Withstand Scrutiny ...............................7

III. THE IDENTIFICATIONS BY FIVE WITNESSES WHO HAD NO CONTACT WITH DEFENDANT DITSCH AND TURNER'S TESTIMONY THAT PLAINTIFF WAS NOT THE SHOOTER PRECLUDE ANY FINDING OF THE REQUIRED PREJUDICE............9

IV.  SCOTT TURNER'S TESTIMONY ESTABLISHES THAT HE WAS NEVER UNDULY INFLUENCED WHEN HE IDENTIFIED PLAINTIFF AS THE SHOOTER................................................................10

V.   PLAINTIFF'S CONSPIRACY CLAIMS ARE BASED ON PURE CONJECTURE AND SPECULATION ......................................................11

VI.  CONCLUSION .........................................................................12

i

1

# TABLE OF AUTHORITIES

2

**Pages**

3

**Cases**

4

*Albright v. Oliver,*
    510 U.S. 266 (1994) ...............................................................5, 6, 7

5

6

*Burns v. County of King,*
    883 F.2d 819 (9th Cir. 1989) ..........................................................13

7

*Caine v. Burge,*
    2012 WL 2458640 (N.D. Ill. 2012) ..................................................6

8

9

*Chappell v. Bess,*
    2012 WL 3276984 (E.D. Cal. Aug. 9, 2012) ...................................5

10

*Cline v. Brusett,*
    661 F.2d 108 (9th Cir.1981) ............................................................5

11

12

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir. 2001) .........................................................9

13

*Domenech v. City of Philadelphia,*
    2009 WL 1109316 (E.D. Pa. 2009)..................................................1

14

15

*Freeman v. City of Santa Ana,*
    68 F.3d 1180 (9th Cir. 1995) .......................................................3, 7

16

*Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety,*
    411 F.3d 427 (3rd Cir.2005), *cert. denied,* 547 U.S. 1035 (2006)....................1

17

18

*Graham v. Connor,*
    490 U.S. 386 (1989) .....................................................................6, 7

19

*Haley v. City of Boston,*
    657 F.3d 39 (1st Cir. 2011) .............................................................2

20

21

*Harris v. Kuba,*
    486 F.3d 1010 (7th Cir. 2007) .........................................................2

22

*Jean v. Collins,*
    221 F.3d 656 (4th Cir. 2000) ...........................................................1

23

24

*Jernigan v. Richard,*
    ___ F.Supp.2d ___, 2012 WL 79262 (D. Ariz. 2012)......................1

25

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ....................................................................1, 2

26

27

*Moldowan v. City of Warren,*
    578 F.3d 351 (6th Cir. 2009)............................................................2

28

*Morris v. State Bar of California,*
    2010 WL 2353528 (E.D. Cal. 2010)................................................6

*Pattiz v. Minye,*
   61 Cal.App.4th 822 (1998)...............................................................5

*Sagonowsky v. More*
   64 Cal.App.4th 122 (1998)...............................................................5

*Sornberger v. City of Knoxville,*
   434 F.3d 1006 (7th Cir. 2006)..........................................................2

*Tennison v. City & County of San Francisco,*
   570 F.3d 1078 (9th Cir. 2009) .........................................................1

*United Steelworkers v. Phelps Dodge Corp.,*
   865 F.2d 1539 (9th Cir. 1989) (en banc)......................................13

*Usher v. City of Los Angeles,*
   828 F.2d 556 (9th Cir. 1987) ...........................................................3

*Womack v. County of Amador,*
   551 F.Supp.2d 1017 (E.D.Cal. 2008) ............................................5

**Statutes**

42 U.S.C. §1983.............................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**    **PLAINTIFF CANNOT DEMONSTRATE THAT IN 1991, POLICE OFFICERS HAD CLEARLY ESTABLISHED CONSTITUTIONAL OBLIGATIONS UNDER *BRADY v. MARYLAND* THAT COULD RESULT IN SECTION 1983 LIABILITY.**

Assuming *arguendo* that Defendant Ditsch was aware of exculpatory evidence that a *prosecutor* would have been required to disclose under *Brady v. Maryland*, Defendant Ditsch is nevertheless entitled to qualified immunity because a police officer's constitutional duty under *Brady* to disclose such evidence to the prosecutor was not clearly established in 1991.  Plaintiff brushes aside this argument by simply citing to *Tennison v. City & County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009) — where the Ninth Circuit held for the first time that section 1983 *Brady* claims must prove deliberately indifferent conduct.  Plaintiff has not cited any Ninth Circuit case which directly addressed the timing of the application of *Brady* in the section 1983 context in a manner that supports his contention that qualified immunity must be denied.

Moreover, Plaintiff flatly and completely ignores the many cases that cannot be reconciled with Plaintiff's conclusory remarks, including *Jernigan v. Richard*, ___ F.Supp.2d ___, 2012 WL 79262, *15-16 (D. Ariz. 2012), *Domenech v. City of Philadelphia*, 2009 WL 1109316 (E.D. Pa. 2009), and *Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000).  These are just a few of the many cases where courts have recognized the significance of the Supreme Court's opinion in *Kyles v. Whitley*, 514 U.S. 419 (1995) in the expansion of the constitutional duty to disclose exculpatory evidence to law enforcement officers.

*Kyles v. Whitley*, obviously, was issued in **1995**, and the need for the Supreme Court to address this issue in 1995 is only further evidence of Defendant's entitlement to qualified immunity for his alleged actions in 1991. *See*, *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 443-44 (3rd Cir. 2005), *cert. denied*, 547 U.S. 1035 (2006) (while holding that

1

police officers may be liable under section 1983 for concealing material evidence from prosecutors, also holding that the defendant **police officers were entitled to qualified immunity "with regard to their failure to inform the prosecutor of** ***Brady*** **material" — since "the Supreme Court did not settle this matter until 1995 when it decided** ***Kyles v. Whitley***"**) (emphasis added); *see also*, *Moldowan v. City of Warren*, 578 F.3d 351, 378-79 (6th Cir. 2009) (explaining that the Sixth Circuit had not "yet directly addressed" the issue of *Brady* obligations vis-à-vis police officers); *Haley v. City of Boston*, 657 F.3d 39, 48 (1st Cir. 2011) ("The [Supreme Court] did not clarify that the *Brady* duty imposed on prosecutors bore any relation to disclosure by police officers until [1995].  Even then, the described relationship was indirect.  In *Kyles v. Whitley,* the Court held that the disclosure obligation imposed by *Brady* extends to evidence known only to police officers, but that the responsibility for obtaining and disclosing such evidence remains the duty of the prosecutor, and not the police officer.").

Another previously cited case is *Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007), where a plaintiff, who had spent over 20 years in prison and had been pardoned as innocent, brought a section 1983 claim based on a purported *Brady* violation.  The Seventh Circuit affirmed the granting of summary judgment, and found that *Brady* "does not apply" because the plaintiff "seeks an extension of *Brady* to provide relief if a police officer makes a false statement to a prosecutor by arguing that an officer is 'suppressing' evidence of the truth by making the false statement." *Id.* at 1017.  The Seventh Circuit explained that it had "already foreclosed this extension", citing *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) (failing to disclose a coerced confession not governed by *Brady* because the Constitution "does not require that police testify truthfully").

Thus, the year 1995 represents a significant line of demarcation for purposes of section 1983 claims against police officers based on the alleged failure to disclose *Brady* evidence to prosecutors.  Plaintiff has not and cannot

2

demonstrate that these many cases, from both within and outside the Ninth Circuit, should be ignored.  On the contrary, this legal backdrop unquestionably establishes the murky constitutional waters with respect to the relationship between *Brady*-based constitutional requirements and police officers, as of 1991, and accordingly, Defendant Ditsch should be granted qualified immunity.  This grant of qualified immunity impacts all of Plaintiff's section 1983 claims because they are all fundamentally based on Plaintiff's contention that Defendant Ditsch's failure to disclose exculpatory or impeachment evidence to the prosecutor led to the denial of his due process right to a fair trial.[1]

## II. FUNDAMENTALLY, PLAINTIFF'S CONTENTION IS THAT DEFENDANT DITSCH CAUSED HIM TO BE UNLAWFULLY SEIZED AND PROSECUTED — A CLAIM THAT CANNOT BE PURSUED AS A SUBSTANTIVE DUE PROCESS VIOLATION.

It is well-established that "[m]alicious prosecution, by itself, does **not** constitute a due process violation; to prevail [a section 1983 plaintiff] must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of **denying her equal protection or another specific constitutional right**." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (emphasis added); *Usher v. City of Los Angeles*, 828 F.2d

---

[1] Plaintiff devotes most of his qualified immunity argument on whether Defendant Ditsch also had a clearly established constitutional duty to disclose his acts of misconduct, including his alleged membership in a white supremacist deputy gang.  (Opp. at 17:15-20:28.)  In effect, Plaintiff alleges that Defendant Ditsch was constitutionally required under *Brady v. Maryland* to tell the prosecutor that he was a white supremacist (an allegation that has no evidentiary support and which Defendant unequivocally denies).  *See* SUMF 80.  Plaintiff also asks this Court to ignore the instructive analysis in *Bastidas v. City of Los Angeles*, 2006 WL 4749706 (C.D. Cal. 2006), simply because it seriously undermines Plaintiff's position.

556, 561-62 (9th Cir. 1987) (explaining that this claim represents an exception to the general rule that malicious prosecution claims are not cognizable under section 1983 if process is available within the state judicial system); *Cline v. Brusett,* 661 F.2d 108, 112 (9th Cir. 1981).

Under California law, "the malicious prosecution plaintiff must plead and prove that the prior proceeding commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Womack v. County of Amador*, 551 F.Supp.2d 1017, 1031 (E.D. Cal. 2008) (citing *Sagonowsky v. More,* 64 Cal.App.4th 122, 128 (1998) (a termination is "not necessarily favorable simply because the party prevailed in the prior proceeding; the termination must relate to the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him")); *Pattiz v. Minye,* 61 Cal.App.4th 822, 826 (1998) (the favorable termination element "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct."). The absence of any allegations in support of a malicious prosecution theory is a clear sign of Plaintiff's inability to satisfy the required elements. Instead, Plaintiff seeks relief under due process, a theory of relief which under the controlling case law is unavailable as a matter of law.

A.   **Plaintiff's Due Process Claim Is Barred By Supreme Court Precedent And If Allowed, Would Render Moot The Narrow Exception For Section 1983 Malicious Prosecution Claims.**

The narrow exception carved out for certain section 1983 malicious prosecution claims goes hand-in-hand with the Supreme Court's "reticence to recognize substantive due process rights." *Chappell v. Bess*, 2012 WL 3276984, *23 (E.D. Cal. Aug. 9, 2012) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). In *Albright*, the Supreme Court established that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without

probable cause.  *Albright*, 510 U.S. at 268, 271 (plurality).  The Supreme Court explained further that the plaintiff's reliance on the Fourteenth Amendment to pursue a malicious prosecution claim was misplaced because "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment', not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Id.* at 273.  This holding was consistent with the holding in *Graham v. Connor*, 490 U.S. 386, 394 (1989) that "[w]hen a governmental conduct is **governed by a specific Constitutional amendment, the conduct is <u>not</u> analyzed under due process**."  (Emphasis added.)

These principles restricting the utility of the due process clause where a specific constitutional amendment has been implicated, have resulted in the consistent application of Fourth Amendment guidelines, in lieu of the due process clause.  *See*, *Morris v. State Bar of California*, 2010 WL 2353528 *6 (E.D. Cal. 2010) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Caine v. Burge*, 2012 WL 2458640, *6 (N.D. Ill. 2012) ("Allegations that police officers failed to provide favorable or exculpatory information by disclosing or admitting that fabrications occurred does not give rise to a due process violation.").

Plaintiff denies seeking relief for malicious prosecution in a transparent attempt to avoid the consequence of his having neither alleged and nor being able to prove the elements of a malicious prosecution claim; Plaintiff also knows that he cannot refute the effect of the presumption that the prosecutor exercised her independent judgment in filing the murder charge and proceeding with the murder trial after Scott Turner's dramatic change in testimony.  Specifically, Plaintiff denies that his claims are based on the allegation of using "false evidence to

5

support an arrest and charges otherwise lacking in probable cause[.]" (Opp. at 4:22-24.) Instead, Plaintiff states that his claims are based on the "use of false evidence at trial to secure a conviction", which led to the denial of his due process right to a fair trial. (Opp. at 4:24-26.) Plaintiff states further that "[i]n this case, [he] alleges that he was both charged and convicted on the basis of false evidence …." (Opp. at 5:9-10.) Plaintiff also asserts that "the thrust of this case is clearly focused on the Due Process violations leading to Plaintiff's wrongful conviction and ensuing wrongful incarceration." (Opp. at 5:14-16.) Plaintiff further argues that the Fourth Amendment has no applicability in this action, and only the "Fifth/Fourteenth Amendments" apply. (Opp. at 5:11-12.)

Plaintiff's contentions, however, are unavailing because the essence of his allegations against Defendant Ditsch is that he manipulated Scott Turner into identifying him as the shooter which led to the filing of the murder charge against him. Plaintiff seeks to avoid the malicious prosecution label simply by characterizing his claim as a *Brady*/due process claim. This label, however, does not sweep aside the controlling effect of *Albright*, *Graham*, *Usher*, *Freeman*, and other cases that have made it resoundingly clear that section 1983 claims that arise from the province of the Fourth Amendment cannot be litigated under due process principles, at a plaintiff's whim.

Here, the underlying allegations implicate a purported violation of Plaintiff's Fourth Amendment rights against an unlawful arrest and seizure, and prosecution without probable cause, and must therefore be pursued as such (as a malicious prosecution claim), and not under the auspices of substantive due process. The law is also clear that such a claim requires elements such as probable cause and a favorable termination. Allowing Plaintiff to avoid these long-established requirements by seeking relief under the due process clause, creates a gigantic section 1983 loophole that will effectively render Supreme Court and Ninth Circuit precedent null and void — and eviscerating the need to

1    ever allege or prove the elements of a section 1983 malicious prosecution claim.

2    **B.**   **Plaintiff's Due Process Claims Against Defendant Ditsch (Even**
3    **If Allowable) Do Not Withstand Scrutiny.**

4         Even if a section 1983 plaintiff could be allowed to pursue a Fourteenth
5    Amendment due process theory (despite the clear applicability of the Fourth
6    Amendment), Plaintiff's own description of his due process theory undermines
7    the purported validity of the due process claims in this action.  The alleged "false
8    evidence" at the second murder trial during which Plaintiff was found guilty of
9    murder was the collective testimony of the five witnesses who identified Plaintiff
10   as the shooter.  This "false evidence" was neither "used" by Defendant Ditsch,
11   and nor was it manufactured by him.  The evidence was "used" by the
12   prosecution, and the "false evidence" allegedly resulted from Turner having told
13   these witnesses who he had selected from the six-pack (prior to the first trial).
14   Plaintiff does not and cannot explain how these circumstances can give rise to a
15   due process claim against Defendant Ditsch — who had **no contact with the**
16   **other witnesses**, and who had no control over what Turner did after his contact
17   with him on January 19, 1991.

18        In fact, it is undisputed that Turner was told not to tell anyone about his
19   identification of Plaintiff.  (SUMF 41(7).)  And assuming that he failed to follow
20   this unambiguous instruction, and five witnesses then willfully **lied under oath,**
21   **on two occasions (without any pressure to do so by Ditsch or anyone else),**
22   should not and cannot give rise to an actionable section 1983 claim against
23   Defendant Ditsch.

24        Moreover, at the second trial, Defendant Ditsch testified to Turner's
25   identifications of Plaintiff.  This cannot be characterized as "false evidence" that
26   led to an unfair conviction since Turner also testified to these identifications, and
27   also explained that his changed belief about the identity of the shooter was based
28   on his subsequent encounter with the "actual shooter".  Defendant Ditsch's

testimony therefore was wholly consistent with Turner's testimony, and his testimony therefore cannot be characterized as having led to Plaintiff's conviction.  What actually led to the conviction was the testimony of the five witnesses, whose testimony was weighed against Turner's emphatic testimony that Plaintiff was not the shooter, in addition the alibi evidence presented by Plaintiff and his supporting witnesses.

Plaintiff also argues that federal courts have recognized that "the state's use of manufactured evidence to obtain a conviction supports §1983 liability for violation of the *right to a fair trial*, which is secured by the Due Process Clause of Fourth Amendment."  (Opp. at 6:12-15; original emphasis.)  Plaintiff, however, cannot explain how the testimony supports his claim that his right to a fair trial had been violated when Turner testified adamantly that Plaintiff was not the shooter, and five witnesses (who never had any contact with Defendant Ditsch) testified to the contrary.  Thus, even if Defendant Ditsch somehow manipulated Turner into identifying Plaintiff as the shooter, there is no evidence that Defendant Ditsch had any control over the testimony of the five other witnesses, or that he ever made any effort to affect their testimony.  And his purported manipulation of Turner was rendered moot because Turner testified that Plaintiff was not the shooter.

Accordingly, Plaintiff has not and cannot show that Defendant Ditsch's alleged misconduct resulted in the deprivation of Plaintiff's right to a fair trial.  Indeed, in light of Turner's testimony, Plaintiff in fact did have a fair trial, and the subsequent recantations by certain witnesses 19 years later do not transform the fair trial into an unfair trial that justifies § 1983 relief against Defendant Ditsch.  Therefore, on this ground alone, Defendant is entitled to summary judgment as to Plaintiff's due process claims.  At the very least, Defendant should be granted qualified immunity since his alleged actions did not implicate a clearly established constitutional violation.  *See*, *Devereaux v. Abbey*, 263 F.3d 1070,

1076 (9th Cir. 2001) (a plaintiff must show that an officer engaged in investigative techniques so coercive and abusive that officer would have known that false information would have resulted).

### III.   THE IDENTIFICATIONS BY FIVE WITNESSES WHO HAD NO CONTACT WITH DEFENDANT DITSCH AND TURNER'S TESTIMONY THAT PLAINTIFF WAS NOT THE SHOOTER PRECLUDE ANY FINDING OF THE REQUIRED PREJUDICE.

An additional ground for dismissing Plaintiff's *Brady*/due process claims (assuming such claims can be permitted) is Plaintiff's inability to demonstrate that he was meaningfully prejudiced by Defendant Ditsch's alleged failures to disclose exculpatory or impeachment evidence.

Plaintiff's fundamental contention is that because Turner was manipulated into identifying him as the shooter, and this alleged manipulation was not shared with the prosecutor, his right to a fair trial was violated.  Plaintiff's *Brady* claim based on this contention fails as a matter of law because the alleged manipulation did not result in the presentation of testimony by Turner that Plaintiff was the shooter.  In fact, Turner testified that Plaintiff was **not** the shooter.  Notwithstanding Turner's testimony, Plaintiff was convicted due to the testimony of five witnesses who offered contrary testimony — witnesses who never had any contact with Defendant Ditsch.  Under these undisputed facts, Plaintiff cannot satisfy the fundamental requirement of having been prejudiced by Defendant Ditsch's alleged misconduct.

Contrary to Plaintiff's contention that Defendant Ditsch was a "pivotal" witness at the second trial, the truly "pivotal" witnesses were the five witnesses who identified Plaintiff as the shooter, Turner who adamantly declared that Plaintiff could not have been the shooter, and Plaintiff who also adamantly declared his innocence.  Defendant Ditsch is alleged to have "manipulated" Turner who was indisputably told not to tell anyone about who he had identified.  Defendant Ditsch had no contact whatsoever with the other five witnesses.  Under

these circumstances, Plaintiff cannot show that the alleged manipulation led to the violation of his right to a fair trial.  He was given a fair trial, where one witness testified in his favor, while others did not.  Because Plaintiff was not deprived of his due process right to fair trial, Plaintiff's claims in this action fail in their entirety.

Plaintiff's argument that Defendant Ditsch's failure to disclose his alleged membership in a "select group of racist aggressive deputies in Lynwood" also resulted in the violation of his right to a fair trial borders on ludicrous.  First, Plaintiff has not and cannot present any evidence that Defendant Ditsch is or was ever a white supremacist.  Second, if this argument had any merit, each and every criminal conviction that resulted from an investigation conducted by Lynwood-assigned personnel would have to be overturned on the ground that the criminal defendant's counsel was not told that the defendant had been arrested by a white supremacist deputy.  In effect, Plaintiff's stance is that Defendant Ditsch should have told the prosecutor, "I am a member of a white supremacist group of deputies" — even when he was indisputably not.  Indeed, there is no evidence in the record that Defendant Ditsch was a neo-Nazi white supremacist (as Plaintiff cavalierly alleges), and Plaintiff should therefore not be allowed to rely on this baseless accusation.

## IV.   SCOTT TURNER'S TESTIMONY ESTABLISHES THAT HE WAS NEVER UNDULY INFLUENCED WHEN HE IDENTIFIED PLAINTIFF AS THE SHOOTER.

Plaintiff cannot dispute the substance of Scott Turner's testimony that he changed his mind about the identity of the shooter only after he met who he believed to be the actual shooter sometime after the first trial.  Turner has maintained the truth of this fact to the present date.  If this fact is indeed true, however, no rational trier of fact could find that he was at the same time, manipulated into picking Plaintiff's photographs from the gang photo book and

1  the six-pack on January 19, 1991.  If his allegation about manipulation were true,

2  he would never have had to change his mind about Plaintiff's role in the shooting.

3      Plaintiff seeks to avoid the impact of Turner's continued insistence about

4  the effect of his encounter with the actual shooter at the Jack-in-the-Box by

5  arguing the "confession" by the person he fought with at the Jack-in-the-Box

6  "undermined his (earlier) belief that it was Mr. Carrillo [who was the shooter],

7  which was derived from Ditsch's manipulation."  (Opp. at 9:4-6.)  The notion that

8  Turner initially came to a "belief" that Plaintiff was the shooter cannot be

9  reconciled with his insistence (over 18 years later) that it was Defendant who

10  selected Plaintiff's photographs for him, and he simply "went along" with these

11  selections.  If, indeed, he just "went along" with Defendant's instructions, Turner

12  could never have had any personally held belief that Plaintiff was the shooter.

13      Moreover, Turner has testified that but for the Jack-in-the-Box incident, he

14  would not have changed his testimony.  This necessarily means that he did

15  believe Plaintiff was the shooter when he selected the photographs, and this also

16  necessarily means no rational trier of fact can find in Plaintiff's favor — since all

17  of his claims hinge upon the contention that Turner never believed Plaintiff was

18  the shooter and he only selected Plaintiff due to Defendant's direct and undue

19  influence.

20  **V.   PLAINTIFF'S CONSPIRACY CLAIMS ARE BASED ON PURE**
21      **CONJECTURE AND SPECULATION.**

22      Plaintiff's argument against the dismissal of his three conspiracy-based

23  claims is that there is enough evidence for the jury to infer that the alleged

24  violation of his constitutional rights resulted from a conspiracy among Defendant

25  Ditsch, and fellow O.S.S. investigators Goran and Luna.  This argument,

26  however, is based on pure conjecture about the purported implications about

27  harmless facts, such as the number of O.S.S. investigators, the physical

28  dimensions of the O.S.S. trailer, and the fact that O.S.S. investigators could have

provided one another with updates of noteworthy investigations during the course of their work. *See, United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (to make out a civil rights conspiracy claim, a plaintiff must at a minimum establish "an agreement or meeting of the minds" between the alleged conspirators); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (in order to state a conspiracy claim under section 1983, "the plaintiff must state specific facts to support the existence of the claimed conspiracy").

Under Plaintiff's approach, section 1983 claims against law enforcement personnel would be virtually impervious to summary judgment; a plaintiff would have to do no more than allege that certain personnel worked together, communicated with one another about active cases, and other "facts" that have no evidentiary support but are the product of self-serving speculation and conjecture.

Because Plaintiff cannot meet the controlling standard, the second, fourth, and sixth claims should be dismissed on this additional ground.

## VI.   CONCLUSION.

For the foregoing reasons, and those set forth in the moving papers, Defendant Craig Ditsch is entitled to summary judgment, and the claims alleged against him should be dismissed with prejudice.

Dated:  August 27, 2012                 LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/ Jin S. Choi_____
            Jin S. Choi
      Attorneys for Defendants
      COUNTY OF LOS ANGELES
      and CRAIG DITSCH