RONALD O. KAYE (No.145051)
MARILYN E, BEDNARSKI (No. 105322)
CAITLIN S. WEISBERG (No. 262779)
KAYE, McLANE & BEDNARSKI
234 E. Colorado Blvd. Suite 230
Pasadena CA 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
E-mail: rok@kmbllp.com
E-mail: mbednarski@kmbllp.com
E-mail: cweisberg@kmbllp.com

Attorneys for Plaintiff,
FRANCISCO CARRILLO, JR.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO CARRILLO, JR., <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF LOS ANGELES, et al., <br><br> Defendants. | CASE NO CV 11-10310 SVW (AGRX) <br><br> **NOTICE OF MOTION AND MOTION IN LIMINE NO. 2: FOR AN ORDER THAT PRIOR TESTIMONY OF WITNESS DAVID LYNN REFLECTING DEFENDANT DITSCH'S THREATS TO WITNESS SCOTT TURNER IS NOT EXCLUDABLE ON HEARSAY GROUNDS; DECLARATIONS; EXHIBITS; [PROPOSED ORDER]** <br><br> Hearing Date:  October 1, 2012 <br> Hearing Time:  3:00 P.M. <br> Courtroom:    Hon. Stephen V. Wilson <br><br> Trial Date:    October 16, 2012 <br> Time:        9:00 A.M. |

1    TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, on October 1, 2012, at 3:00 p.m., in

3    Courtroom 6 of the United States District Court for the Central District of

4    California, 312 North Spring Street, Los Angeles, California 90012, Plaintiff

5    Francisco Carrillo, Jr. will, and hereby does, move the Court to rule pretrial that:

6    The excerpts of the testimony that David Lynn provided at Plaintiff's March

7    2011 evidentiary hearing on Plaintiff's Habeas Petition, as specified below and in

8    the exhibits submitted with this motion, is not excludable on hearsay grounds and,

9    instead, is admissible for the truth of the matter asserted.

10   The grounds for admitting the former testimony of David Lynn on this issue

11   for the truth are that the testimony satisfies the exception to the hearsay rule for

12   former testimony, Fed. R. Evid. 804(b)(1), or alternatively should be admitted for

13   the truth pursuant to the residual exception, Fed. R. Evid. 807.

14   Plaintiff's motion is based on this Notice of Motion, the complete files and

15   records of this action, the Memorandum of Points and Authorities, supporting

16   declarations and exhibits, and any additional evidence and argument that may be

17   presented at any hearing on the motion.

18   The parties met and conferred on this motion on August 22nd and 23rd, and

19   were unable to reach agreement.

20

21                                   Respectfully submitted,

22                                   KAYE, McLANE & BEDNARSKI, LLP

23

24   DATED: September 3, 2012    By   */s/ Ronald O. Kaye*

25                                    RONALD O. KAYE
                                      Attorneys for Plaintiff
26                                    Francisco Carrillo, Jr.

27

28

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................ii

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................... 1

I.    INTRODUCTION................................................................................... 1

II.   PRIOR TESTIMONY REQUESTED...................................................... 2

III.  THE EXCERPTS OF THE PRIOR SWORN TESTIMONY OF DAVID
      LYNN ARE RELEVANT TO PLAINTIFF'S CLAIMS FOR RELIEF
      AND ARE RELIABLE........................................................................... 3

      A.    RELEVANCE.............................................................................. 3

      B.    RELIABILITY ............................................................................ 5

IV.   THE EXCERPTS OF THE PRIOR TESTIMONY OF DAVID LYNN
      REFLECTING HIS WITNESSING OF DEFENDANT DITSCH'S
      THREATENING STATEMENTS TO SCOTT TURNER SHOULD BE
      ADMITTED FOR THE TRUTH PURSUANT TO FED. R. EVID.
      804(B)(1) OR FED. R. EVID. 807 .......................................................... 7

      A.    THE TESTIMONY IS ADMISSIBLE FOR THE TRUTH
            PURSUANT TO RULE 804(B)(1)................................................ 7

            1.    Unavailability ................................................................... 8

                  a.    Plaintiff's Due Diligence................................... 8

                  b.    The Legal Standard ......................................... 11

            2.    Predecessor in Interest ................................................. 12

      B.    THE TESTIMONY IS ADMISSIBLE FOR THE TRUTH
            PURSUANT TO RULE 807............................................................ 16

V.    CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

673 F.2d 1298 (3d Cir. 1981) ................................................................... 14

*Carpenter v. Dizio*,
   506 F. Supp. 1117 (E.D. Pa. 1981)..................................................... 14, 15

*Christian v. Rhode*,
   41 F.3d 461  (9th Cir. 1994) ................................................................ 12

*Clay v. Johns-Manville Sales Corp.*,
   722 F.2d 1289 (6th Cir. 1983) ............................................................. 13

*Dykes v. Raymark Indus., Inc.*,
   801 F.2d 810 (6th Cir. 1986) ............................................................... 13

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   250 F.R.D. 452 (N.D. Cal. 2008)......................................................... 14

*Lloyd v. American Export Lines, Inc.*,
   580 F.2d 1179 (3rd Cir. 1978) ....................................................... 11, 13

*Nelson v. Fibreboard Corp.*,
   912 F.2d 469 (9th Cir. 1990) ............................................................... 12

*Ortiz-Sandoval v. Gomez*,
   81 F.3d 891 (9th Cir. 1996) ................................................................... 5

*Pacelli v. Nassau County Police Dep't*,
   639 F. Supp. 1382 (E.D.N.Y. 1986) ............................................... 15, 16

*People v. Anderson*,
   70 Cal.2d 15 (1968) .............................................................................. 5

*Perricone v. Kansas City Southern Ry. Co.*,
   630 F.2d 317 (5th Cir 1980) ............................................................... 12

*Phillips v. United States*,
   334 F.2d 589 (9th Cir. 1964) ................................................................ 5

*Rule v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Local Union No. 396*,
  568 F.2d 558 (8th Cir. 1977) ..............................................................13

*United States v. Candoli*,
  870 F.2d 496 (9th Cir. 1989) ..............................................................11

*United States v. Fowlie*,
  24 F.3d 1059 (9th Cir.1994) ..............................................................17

*United States v. Geiger*,
  263 F.3d 1034 (9th Cir.2001) ..............................................................14

*United States v. McFall*,
  558 F.3d 951 (9th Cir. 2009) ..............................................................14

*United States v. Pena-Gutierrez*,
  222 F.3d 1080 (9th Cir. 1999) ..............................................................11

*United States v. Salerno*,
  505 U.S. 317, 112 S. Ct. 2503 (1992) ..............................................................14

*United States v. Sanchez-Lima*,
  161 F.3d 545 (9th Cir. 1998) ..............................................................17

*United States v. Valdez–Soto*,
  31 F.3d 1467 (9th Cir.1994) ..............................................................16, 17

*United States v. Winn*,
  767 F.2d 527 (9th Cir. 1985) ..............................................................11

**Rules**

F.R.Evid. 804(b)(1) and 807 ..............................................................10

Fed. R. Evid. 801(d)(2) ..............................................................2

Fed. R. Evid. 804(a)(5) ..............................................................12

Fed. R. Evid. 804(b) ..............................................................7

Fed. R. Evid. 804(b)(1) ..............................................................passim

FED. R. EVID. 804(B)(1) ..............................................................i, 7

Fed. R. Evid. 807 ..............................................................................................passim

Fed.R.Evid. 804(1) .....................................................................................................11

Rule 803 or 804 ..........................................................................................................17

Rule 804.................................................................................................................7, 11

Rule 804(a)(5)(A); and (2) .........................................................................................2

Rule 804(b)(1)(B) ..........................................................................................2, 12, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Francisco Carrillo, Jr. moves the Court for a pretrial ruling that the prior testimony of defense investigator David Lynn provided at Plaintiff's 2011 evidentiary hearing in Plaintiff's Habeas Petition in the case *In Re Francisco Carrillo, Jr.,* No. TA011653-01 specified below and in Exhibit A, is not excludable at the trial of this case by the rule against hearsay, and thus may be offered for the truth of the matter asserted under Fed. R. Evid. 804(b)(1), or in the alternative, Rule 807.

During Mr. Carrillo's second trial, Defendant Ditsch was advised that eyewitness Scott Turner had recanted his identification of Mr. Carrillo as the shooter of Donald Sarpy on January 18, 1991.  Prior to Mr. Turner's testimony, Defendant Ditsch met with Mr. Turner in the lock-up outside the trial courtroom. During this meeting, Defendant Ditsch threatened Mr. Turner. Defense investigator David Lynn was present during this meeting, and he wrote notes of Defendant Ditsch's statements to eyewitness Turner. Those notes are attached hereto at Exhibit B.

The testimony of Mr. Lynn from the March 2011 Habeas hearing addressed in this motion is probative of Defendant Ditsch's manipulation of eyewitness Scott Turner's identification Mr. Carrillo in the Young Crowd gang book and in the photo six-pack during the early morning hours on January 19, 1991.

Plaintiff offers Defendant Ditsch's statements as non-hearsay statements, described by David Lynn in his Habeas testimony, not offered for the truth of the matter asserted. Rather, these threatening statements are relevant to Defendant Ditsch's "consciousness of guilt" of his manipulation of eyewitness Turner's selection of Plaintiff as the shooter in the Sarpy case.  These statements also reflect Defendant Ditsch's effort to frighten and intimidate eyewitness Turner, and thereby prevent Turner from disclosing to others that Ditsch had manipulated

Turner's initial identification of Plaintiff on Janaury 18, 1991. Thus, they are not offered for their truth, but rather, also for their effect on the hearer.

Alternatively, Defendant Ditsch's statements are admissible against Defendant Ditsch as an admission of a party opponent under Fed. R. Evid. 801(d)(2).

The former testimony of David Lynn should not be excluded on hearsay grounds, and should be admitted for the truth pursuant to the hearsay rule for former testimony, Fed. R. Evid. 804(b)(1) based on: (1) the inability of the Plaintiff to locate Mr. Lynn regardless of the diligent effort to secure his testimony, rendering him unavailable within the meaning of Rule 804(a)(5); and (2) the prosecution at Plaintiff's Habeas evidentiary hearing had an opportunity and similar motive to develop Mr. Lynn's testimony as the Defendants in this case, thereby satisfying the "predecessor in interest" and "similar motive" requirements of Rule 804(b)(1)(B).

Alternatively, the specified parts of Mr. Lynn's testimony should be admitted for the truth pursuant to the residual exception hearsay exception found in Fed. R. Evid. 807. The trustworthiness of the testimony is assured by guarantees equivalent to the exceptions recognized by the Rules. Moreover, Defendant Ditsch will have the opportunity to offer competing live testimony as to the matters addressed by the former testimony of Mr. Lynn.

## II.    PRIOR TESTIMONY REQUESTED

Plaintiff requests that the Court permit approximately 10 pages identified by the highlighted portions of the transcript excerpts submitted as Exhibit A to this motion to be read to the jury – a relatively short amount of court time. This testimony of David Lynn pertains to the following subjects from the preliminary hearing at the pages specified:

(a) Mr. Lynn's placed under oath, and his description of his role as the defense investigator in the Plaintiffs criminal defense in the Sarpy case. (Ex. A at 2:14 -3:8-11);

2

(b) Mr. Lynn's presence during the interview of Scott Turner by Defendant Ditsch in the lock-up outside the courtroom in the second trial.  (Ex. A at 4:16-5:13);

(c) Mr. Lynn's confirmation that he wrote notes of the statements made by Defendant Ditsch to Scott Turner while in lock-up immediately after leaving lock-up, and the notes are dated Monday, June 22, 1992. (Ex. A at 5:22-6:20, 88:24-89:11); and

(d) Mr. Lynn's testimony regarding the threatening statements made Detective Ditsch to Turner: (i) no more breaks for you if you get arrested in Lynwood; and (ii) I'll tune him [Turner] up.  (Ex. A at 6:19-20; 8:19-20; 12:15-17, 12; 81:4-14; 82:4-10; 12:21-27).

## III.   THE EXCERPTS OF THE PRIOR SWORN TESTIMONY OF DAVID LYNN ARE RELEVANT TO PLAINTIFF'S CLAIMS FOR RELIEF AND ARE RELIABLE

### A.   RELEVANCE

The thrust of Plaintiff's Claims for Relief in this lawsuit focus on Operation Safe Street gang unit ("O.S.S.") Investigator Ditsch's manipulation of 16 year old eyewitness Scott Turner in the early morning hours of January 19, 1991 to identify Mr. Carrillo both from the Young Crowd gang book and from the preexisting photo six-pack in the Sarabia case.  At the time of the showing of the photo six-pack to Turner, Defendant Ditsch was very familiar with Scott Turner as a cooperating witness on gang shooting cases in Lynwood. In September of 1990 Ditsch had had used Turner to locate a gang member who engaged in a drive-by shooting, and in October of 1990, Ditsch was aware that O.S.S. gang Detective Luna  used Scott Turner as an eyewitness to identify suspects  of a Young Crowd gang shooting. Both shootings occurred in Lynwood.[1]

---

[1]   Defendant Ditsch's familiarity with Scott Turner as a witness against gang crime is supported by the following evidence:

1.   Defendant Ditsch had used Scott Turner to locate the shooter in a Lynwood drive-by in September of 1990.  Ex. C at 101:8-104:20

2.   Detective Luna, one of Defendant Ditsch's other nine O.S.S. colleagues in 1990 / 1991, had used Scott Turner in October of 1990 as an

Regardless of the fact that: (1) none of the eyewitnesses could physically see who the shooter was on the night of the shooting; (2) no eyewitness advised law enforcement that they could recognize any physical characteristic or knew of the identity of the shooter – other than the fact that shooter was from the Young Crowd gang; and (3) Defendant Ditsch was not assigned to this case, Defendant Ditsch decided  to show the Young Crowd gang book photographs to Scott Turner, who had been a cooperating witness with the O.S.S. unit in September and October of 1990.

At this showing, Defendant Ditsch pressured Turner to select a photo of the shooter: "Focus, man. [ ] Get this shit together. [ ] Look at the pictures and this – you're not going to let this guy get away with this. It's your friend's dad there. He's in the hospital. You going to let that ride? . . . Find the guy who did this to your friend's dad. Don't let him get away with this. You're enemies. I know you want to take him down."  Ex. G at 131:6-24. As a result, Turner randomly selected several of the possible 140 photographs from the gang book, ultimately choosing

---

eyewitness of a drive-by shooting perpetrated by Young Crowd. Turner was the target / victim of the Young Crowd drive-by shooting. Luna had Turner select photographs of the suspects out of the *same Young Crowd gang book* Turner was presented with in the Sarpy case. Ex. D  at 111:24-113:23; 114:17-115:3.

3.      One of Defendant Ditsch's target gangs at O.S.S. was the Neighborhood Crips, the gang which Scott Turner was a member. Defendant Ditsch testified that if one of his target gang members was a victim, Ditsch would be advised of the shooting. Consequently, he would have been apprised of Scott Turner's role as an eyewitness in the October 1990 shooting because Ex. C at 99:20-100:2;

4.      By the time of Mr. Carrillo's second trial in June of 1992, Ditsch had approximately 20 contacts with Turner and he characterized him as "cooperative and seemed to be a good witness." Ex. E at 118:20-22; Ex. F at 127:23-26.

1   Plaintiff from both the gang book and the preexisting photo six-pack based on

2   Ditsch's influence.

3       Once Defendant Ditsch became aware in Plaintiff's second trial that was

4   Turner recanting his identification – essentially violating their covert agreement

5   from January 19th – Ditsch threatened Turner by making in the following

6   statements:

7       1.    "No more breaks for you if you are arrested in Lynwood;" Ex. A at

8   6:19-20; and.

9       2.    "I'll tune him up." Ex. A at 12:19-20. (Defendant Ditsch testified in

10  his deposition that "tune him up" means "kick somebody's butt." Exhibit C at

11  108:5-18).

12      Defendant Ditsch's threatening statements to Turner are probative and

13  therefore admissible for purposes of demonstrating Ditsch's consciousness of guilt

14  that he previously influenced Turner's identification of Plaintiff on January 19,

15  1991 for the Sarpy murder. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th

16  Cir. 1996), citing *Phillips v. United States*, 334 F.2d 589, 592 (9th Cir. 1964),

17  *People v. Anderson*, 70 Cal.2d 15, 32 (1968).

18      **B.    RELIABILITY**

19      The reliability of David Lynn's description of Defendant Ditsch's testimony

20  is supported by the record in Plaintiff's second trial, particularly juxtaposed with

21  Defendant Ditsch's adamant position at the Habeas hearing that no conversation

22  between Ditsch, Turner and David Lynn ever occurred.

23      At the evidentiary hearing on Plaintiff's Habeas Petition, Defendant Ditsch

24  testified that: (1) he did not believe he threatened Turner; (2) he did not believe he

25  ever said to Turner: "no more breaks for you if you get arrested in Lynwood;" and

26  (3) he absolutely denied making a comment about Mr. Turner that: "I'll tune him

27  up." Exhibit E at 120:2-23.  In his effort to demonstrate that these statements did

28  not occur, Defendant Ditsch further testified that he *only* went into lock-up to

5

speak to Mr. Turner one time, participating in only one meeting with the Deputy District Attorney and with the defense attorney, and that no one else was present in the interview. Defendant Ditsch emphasized that defense investigator David Lynn was "absolutely not" present in lock-up when Ditsch spoke to Turner during the second trial.  Finally, when shown David Lynn's notes at the Habeas hearing (Ex. B), Defendant Ditsch was confident that the notes could not reflect what Ditsch said in lock-up to Turner, because "nobody took notes" during this interview with Scott Turner. Ex. E at 119:21-25; 120:8-10; 121:4-11; 122:14-16; 123:15-18.

During the second trial, however, prior to Scott Turner's testimony, the Superior Court Judge asked Defendant Ditsch whether he met with Mr. Turner in lock-up.  In response, Defendant Ditsch stated on the record that the defense investigator was present during his meeting with Turner and that he believed the investigator had taken notes of the meeting. Ex. H at 133:9-20.

When confronted at his deposition with this excerpt from the record of the second trial, Ditsch conceded that he probably was back in lock-up with the defense investigator who was taking notes during this meeting with Turner at the second trial.  Ex. C at 105:22-107:10.

In addition, David Lynn's notes reflect that while Ditsch was in the lock-up with Mr. Turner, Ditsch confronted Turner saying: "Do you realize that you have caused an innocent man to spend a year and a half in jail." Ex. B at 95, 96.

During his cross-examination of Defendant Ditsch at Plaintiff's second trial, Plaintiff's attorney reiterated this statement made to Turner in lock-up, which was memorialized in David Lynn's notes:

> Q:     "When you Talked to Scotty Turner back in the back, you made a statement to him something to the effect didn't you think by doing this you kept an innocent guy in jail for a year and a half? You made a remark similar to that effect?
>
> A:     Yes.

Ex. F at 126:13-18.

Thus, there is substantial corroboration that the threatening statements described by David Lynn in his Habeas testimony were made by Defendant Ditsch to Scott Turner in lock-up during the second trial.

## IV. THE EXCERPTS OF THE PRIOR TESTIMONY OF DAVID LYNN REFLECTING HIS WITNESSING OF DEFENDANT DITSCH'S THREATENING STATEMENTS TO SCOTT TURNER SHOULD BE ADMITTED FOR THE TRUTH PURSUANT TO FED. R. EVID. 804(B)(1) OR FED. R. EVID. 807

### A. THE TESTIMONY IS ADMISSIBLE FOR THE TRUTH PURSUANT TO RULE 804(B)(1)

David Lynn testified at Plaintiff's March 2011 evidentiary hearing in Plaintiff's Habeas Petition.  As demonstrated below, Plaintiff has taken great effort to depose Mr. Lynn, but has been unsuccessful in locating him.  Notwithstanding David Lynn's unavailability, the excerpts of his prior testimony submitted with this motion should not be excluded on hearsay grounds, and should be admitted for the truth, pursuant to either the exception for former testimony, Fed. R. Evid. 804(b)(1), or the residual exception, Fed. R. Evid. 807.

Fed. R. Evid. 804(b)(1) provides an exception to the hearsay rule for former testimony of witnesses who are unavailable. Rule 804 provides that former testimony is not excludable as hearsay:

(b) . . . if the declarant is unavailable as a witness:

(1) [and the testimony][2] (A) was given as a witness at a trial, hearing, lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had – or in a civil case, whose predecessor in interest had – an opportunity and

---

[2]     In many ways, former testimony is the strongest form of hearsay and should be most readily admitted. *See* Advisory Committee Notes to Fed. R. Evid. 804(b). Unlike other forms of hearsay, it consists of statements that were made under oath with the opportunity to cross-examine. *See id.*  Where the issues and motive to cross-examine are so similar, the only quality that makes former testimony less reliable than live testimony is the jury's inability to gauge the demeanor of the declarant. *See* Advisory Committee Notes to Fed. R. Evid. 804(b).

7

similar motive to develop the testimony by direct, cross- or redirect examination.

Fed. R. Evid. 804(b)(1)

### 1. Unavailability

#### a. Plaintiff's Due Diligence

The facts supporting Mr. Lynn's unavailability to testify in a deposition or at trial are as follows:

1. On June 6, 2012, Plaintiff's counsel sent a certified letter to Mr. Lynn at his P.O. Box in the city of Eastsound, on Orcas Island, in Washington State proposing to take Mr. Lynn's deposition prior to August 1, 2012 at counsel's office in Pasadena, California, or near Mr. Lynn's home in Washington State. That letter was returned to counsel's office marked "Refused." Ex. I at 135-136.

2. After the letter was returned, Plaintiff's counsel made multiple phone calls to Mr. Lynn's cellular telephone number, leaving messages for Mr. Lynn to contact him. Plaintiff's counsel eventually contacted Mr. Lynn and Mr. Lynn advised counsel that he was calling from a sail boat heading to Panama, and that he did not wish to testify further in this case, either by deposition or by giving trial testimony. Decl. of Ronald Kaye at ¶ 3.

3. After this conversation, Plaintiff's counsel made multiple additional attempts to contact Mr. Lynn by telephone, but Mr. Lynn did not return counsel's calls. Decl. of Ronald Kaye at ¶ 4.

4. Based on Mr. Lynn's unwillingness to attend a deposition, and having no verifiable proof of Mr. Lynn's whereabouts, Plaintiff retained a private investigator in Washington State to locate Mr. Lynn and serve him with a deposition subpoena. Decl. of Ronald Kaye at ¶ 5. Because counsel only had a Post Office Box and not Mr. Lynn's actual address, Plaintiff's Washington investigator used on-line search engines and located what appeared to be Mr. Lynn's home

address. Decl. of Reba Blissell at ¶¶ 2,3.  The records of the real property reflected the transfer of the property from David Lynn to Valerie D. West. *Id.* at ¶ 3.

5.     With this information, counsel provided Plaintiff's investigator with a deposition subpoena for David Lynn for September 4, 2012 at a law office in Anacortes, Washington. Decl. of Ronald Kaye at ¶ 6, Ex. J at 138-140. On July 16, 2012, Plaintiff's investigator travelled to Orcas Island, one of the San Juan Islands in Washington State, and located the property reflected in the real property records. Decl. of Reba Blissell at ¶ 4.  When Plaintiff's investigator arrived at the property, the following exchange occurred:

> I knocked on the door at 247 Robin Song Lane and a woman answered the door. I asked the woman if her name was Valerie West. She said yes. I identified myself as Reba Blissell, a process server hired by attorney Ronald Kaye. I said that Mr. Kaye was trying to determine if this was where David Lynn lived.  Ms. West confirmed that this was where David Lynn lived. I asked her if he was inside the house or on the property and told her that I wanted to serve a subpoena on him.  Ms. West said Mr. Lynn was not at the address. I then asked Ms. West if she knew where he was and she said no. I then asked Ms. West if she knew when he would be returning to the house, and she said she had no idea and she was not in contact with him. I thanked her for her time and left the house at 247 Robin Song Lane.

*Id.* at ¶ 5.

6.     On July 25, 2012 counsel retained the services of the San Juan County Sheriff's Office in Friday Harbor, Washington to serve Mr. Lynn with the deposition subpoena. Counsel instructed the Sheriff's employee to make multiple efforts to do so. Decl. of Ronald Kaye at ¶ 7.   Counsel provided the Sheriff's office with the deposition subpoena, correspondence addressed to Mr. Lynn dated July 25, 2012, the processing fee for the Sheriff's Office and the statutory witness fees and mileage fees. *Id.*, Ex. K at 142-146.

7.     On August 6, 2012, the Sheriff's representative issued a Return of Service on the deposition subpoena stating: "After diligent search and inquiry, I am unable to find David Lynn Jr.  I served by delivering and leaving with Valerie

West, wife, 247 Robin Song Ln. Eastsound WA 98245." Decl. of Ronald Kaye at ¶ 8; Ex. L at 148.

8.    On August 8, 2012, Plaintiff's counsel notified Defendants' counsel about David Lynn's unavailability and Plaintiff's intention to use Mr. Lynn's prior testimony from the Habeas evidentiary hearing under F.R.Evid. 804(b)(1) and 807. Plaintiff's counsel advised Defendants' counsel of Mr. Lynn's home address, and further encouraged the Defendants to attempt to serve Mr. Lynn for a deposition in Washington State. Decl. of Ronald Kaye at ¶ 9; Ex. M at 15-152.

9.    On August 27, 2012, the Office of the Sheriff of San Juan County, Washington provided a second Return of Service.

> After diligent search and inquiry, I am unable to find David Lynn Jr., personally, at 247 Robin Song Ln., Eastsound, WA 98245: that I return said summons without service . . . because: Valerie West, wife of David Lynn Jr., says he is in northern California. She said he has already spoke to this attorney and she would not give his phone number and said he would not be on Orcas for a long time. Valerie West was substitute served papers on 8/03/12. Requestor, attorney Ronald Kaye asked that San Juan County Sheriff's Office to continue attempts to serve David Lynn Jr. personally and provide a Return of Service for those attempts. There were two attempts made by Deputy Jack Wilsey on the following times and dates: 2:30 PM on 8/11/12, no one was home at 247 Robin Song Ln. Eastsound WA 98245, 1:00 PM on 8/17/12, no one was home at 247 Robin Song Ln. Eastsound WA 98245.

Decl. of Ronald Kaye at ¶ 10; Ex. N at 154.

10.    After receiving this Return of Service, Plaintiff's counsel sent a letter via Federal Express to Mr. Lynn's address, attaching a copy of the deposition subpoena for September 4, 2012, and requesting that Mr. Lynn contact Plaintiff's counsel. Counsel stated: "If I do not hear from you prior to August 31, 2012, I will assume you will **not be attending** the deposition – as you have not contacted me and have not been served with the deposition subpoena." Decl. of Ronald Kaye at ¶ 11; Ex. O at 156-161, (emphasis in original).

11.     As of the filing of this Motion, Plaintiff's counsel has not received any communication from David Lynn, or any party representing David Lynn, that he will agree to appear at any deposition or trial for this matter. Decl. of Ronald Kaye at ¶ 12.

### b.     The Legal Standard

The inability of a party to locate a witness despite reasonable steps is a type of unavailability that is specifically contemplated by Rule 804. *See* Fed.R.Evid. 804(1); *see also  United States v. Winn*, 767 F.2d 527, 530 (9th Cir. 1985) (foreign citizens unavailable because there was no information available to find them); *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1184 (3rd Cir. 1978) (plaintiff unavailable where plaintiff's and defendant's counsel had both been unable to obtain his appearance "in an action in which he had a formidable interest"); *United States v. Candoli*, 870 F.2d 496, 509-510 (9th Cir. 1989) (fugitive declarant is unavailable).

Although the proponent of the hearsay statement must make some attempt to procure the witness, "the law does not require the doing of a futile act, and the extent of the efforts the [proponent] must make is a question of reasonableness." *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1088 (9th Cir. 1999) (internal quotation marks omitted) (citing *Winn*, 767 F.2d).  For example, in *Pena-Gutierrez*, the Ninth Circuit found that the government had not gone to sufficient lengths to procure a witness where the government had the witness' address in Mexico but had made no attempt to contact him. *Id.*  The mere fact that the witness was beyond the jurisdiction of the United States did not mean that the government had no duty to attempt to obtain his appearance at trial. *See id.* at 1088-89. Nonetheless, "when the government has no addresses or any other information that would help locate the deported aliens,  it is reasonable for the government to make no effort to find the . . . aliens." *Id.* (internal quotation marks omitted) (citing *Winn*, 767 F.2d at 530).

Ultimately, the question whether sufficient efforts have been made is a fact-intensive question that cannot be reduced to ridged rules. *Christian v. Rhode*, 41 F.3d 461 at 467 (9th Cir. 1994) ("'good faith' and 'reasonableness' are terms that demand fact-intensive, case-by-case analysis, not rigid rules") *Perricone v. Kansas City Southern Ry. Co.*, 630 F.2d 317 (5th Cir 1980) (plaintiff did not act with sufficient diligence to locate allegedly unavailable witness, where no subpoena had been issued, witness' name was listed in telephone book of city in which he formerly resided and a call to that number would reach recording stating witness' new telephone number).

Here, Plaintiff has taken every reasonable possible step to secure David Lynn's deposition. Plaintiff has: (1) repeatedly telephoned the witness; (2) sent the witness certified mail, and when that was refused, used federal express delivery; (3) retained an investigator to research and uncover the witness' residence; (4) instructed the investigator to travel to the island where the witness resides; (5) retained the services of the Office of the Sheriff of San Juan County, Washington, to serve a deposition subpoena on the witness; and (5) requested that the Defendants also attempt to locate him.

These good faith, reasonable efforts on the part of Plaintiff sufficiently establishes that Plaintiff has "not been able, by process or other reasonable means, to procure" Mr. Lynn's attendance to be deposed. Fed. R. Evid. 804(a)(5). Clearly, Plaintiff would prefer to have Mr. Lynn testify in person at trial, but that appears to not be possible. Mr. Lynn should thus be deemed unavailable within the meaning of Rule 804(a)(5) for trial.

### 2.      Predecessor in Interest

The Ninth Circuit has not decided whether the "predecessor in interest" provision of Rule 804(b)(1)(B) requires that the party against whom the former testimony is offered be in legal privity with a party to the former proceeding. *Nelson v. Fibreboard Corp.*, 912 F.2d 469 (9th Cir. 1990) ("we need not reach the

issue of whether 'predecessor in interest' in Rule 804(b)(1) embraces only parties in privity with the opponent or embraces any party with similar opportunity and motive for cross-examination"). Most courts that have decided the issue, however, have consistently ruled privity is not required so long as there exists a "community of interest" between the prior and current party. *See, e.g.*, *Rule v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Local Union No. 396*, 568 F.2d 558, 569 (8th Cir. 1977) ("Defendants point out that MTP was not a party to the Government's case. Under the general rule, however, a party to the second suit need not have been a party to the prior suit if the interest of the objecting party in the prior suit was calculated to induce as thorough a cross-examination as the interest of the present opponent."); *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1185, 1187 (3d Cir. 1978) (former testimony of Lloyd, an unavailable witness, admitted against Alvarez even though Alvarez was not a party to prior action or a predecessor in interest in the sense of privity; "there was a sufficient community of interest shared by the Coast Guard in its hearing and Alvarez in the subsequent civil trial to satisfy Rule 804(b)(1)"); *Dykes v. Raymark Indus., Inc.*, 801 F.2d 810, 815-17 (6th Cir. 1986) ("what has been described as 'the practical and expedient view' [of predecessor in interest] expresses the congressional intention: 'if it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party.' Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party"), *quoting, Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289 (6th Cir. 1983).  *See also, e.g.,* Graham, <u>Handbook of Fed. Evid</u>. §804:1 (7th ed.) ("courts have interpreted the phrase predecessor in interest to extend beyond privity to encompass parties sharing a "community of interest").

As one District Court recently explained:

> The modern test does not require privity between the current party and the party who participated in the prior proceeding. "A previous party having like motive to develop the testimony about the same material facts is a predecessor in interest to the present party [citations omitted]- privity is not the gravamen of (Rule 804(b)(1)) analysis." . . . Instead of a formalistic privity-based test of whether a party is a "predecessor in interest," the test is "inherently factual" and depends on the similarity of issues and context of questioning.

*Hynix Semiconductor Inc. v. Rambus Inc.*, 250 F.R.D. 452, 458 (N.D. Cal. 2008), *quoting*, Jones, Rosen, Wegner & Jones, Rutter Group Practice Guide: Federal Civil Trials & Evidence ¶¶ 8:3061, 8:3067 (The Rutter Group 2007).

This is the same criteria used to determine the "opportunity and similar motive" provision of Fed. R. Evid. 804(b)(1)(B). The Supreme Court has "held that Rule 804(b)(1)'s 'similar motive' prong is a fact-intensive one, dependent on the particular circumstances of the case." *United States v. McFall*, 558 F.3d 951, 961 (9th Cir. 2009), *quoting, United States v. Salerno*, 505 U.S. 317, 325, 112 S. Ct. 2503 (1992); *see, United States v. Geiger*, 263 F.3d 1034, 1038 (9th Cir.2001) ("The 'similar motive' requirement is inherently factual and depends, at least in part, on the operative facts and legal issues and on the context of the proceeding.").

Notably, the prior testimony rule has been applied with little difficulty to testimony from criminal proceedings subsequently admitted into civil rights proceedings addressing the same issue, which is parallel to the situation here. In *Carpenter v. Dizio*, 506 F. Supp. 1117, 1123-24 (E.D. Pa. 1981) *aff'd,* 673 F.2d 1298 (3d Cir. 1981), the court found a community of interest between the prosecutor in a preceding criminal case and the city solicitor in a civil rights action arising from the same facts with regard to the prior testimony of an eyewitness to an altercation between officers and the civil rights plaintiff (the defendant in the preceding criminal case) because:

> [I]t was critical to discredit Kofroth's eyewitness testimony in both proceedings. The district attorney had vigorously cross-examined this

14

witness attempting to discredit him. The City Solicitor in this case would have had the same motive and addressed the identical issues through its cross-examination of Kofroth. With the same issues, motivation for examination and parties, the testimony of Kofroth was properly admitted into evidence.

*Id.* at 1124; *see also Pacelli v. Nassau County Police Dep't*, 639 F. Supp. 1382, 1385-86 (E.D.N.Y. 1986) (the United States, in the prosecution of a criminal action, was held to be a predecessor in interest of a municipality and its police officers who were sued in a subsequent civil rights action).

The former testimony that Plaintiff seeks to offer from the Habeas evidentiary hearing reveals that Defendant Ditsch threatened Scott Turner at Plaintiff's second trial when he discovered that Mr. Turner was recanting his identification of Plaintiff.

In his cross-examination of Mr. Lynn at the Habeas evidentiary hearing, the prosecutor challenged Mr. Lynn's credibility, arguing that the threats allegedly made by Defendant Ditsch against Mr. Turner did not occur. The overall purpose of this cross-examination was to undermine Plaintiff's claim that Defendant Ditsch manipulated Turner's selection of Plaintiff's photograph on January 19, 1991 as the shooter of Donald Sarpy -- the same motive to develop and challenge the testimony as Defendants in this case.

Specifically, in its cross-examination of Mr. Lynn, the prosecution emphasized Mr. Lynn's bias:

1.    Mr. Lynn's close relationship with the Young Crowd gang;

2.    Mr. Lynn's role in a class action lawsuit against the Sheriff's Department where many of the plaintiffs were Young Crowd members;

3.    Mr. Lynn's publication of newspaper articles criticizing members of the Sheriff's department stationed in the Lynwood sub-station; and

4.     Mr. Lynn's role in a federal criminal matter accusing Detective Loy Luna of murdering a Young Crowd member.

15

Further, the Sheriff's Department itself took an affirmative role in cross-examining David Lynn.  Specifically, Sheriff's Department Chief McSweeney, then head of the Detective Bureau, and Sergeant Biddle -- who sat at counsel table as the Investigating Officer throughout the Habeas Hearing -- presented Deputy DA Mejia with a list of approximately 20 questions and several exhibits for cross-examining David Lynn. Ex. P at 153, ¶ 56.  Deputy DA Mejia then discussed the strategy for cross-examination of Mr. Lynn with LASD Chief McSweeney and LASD Sergeant Biddle, and incorporated these questions and exhibits into his cross examination. *Id*.

Correspondingly, Deputy District Attorney Brentford Ferreira, the Deputy in Charge of the Habeas Corpus Litigation Team of the Los Angeles County District Attorney's Office, specifically characterized the district attorney's cross-examination of the witnesses during the Habeas hearing, including cross-examination of defense investigator David Lynn, as "vigorous." Ex. Q at 176, ¶ 11.

The prosecution had the same motive to develop and challenge Mr. Lynn's testimony as the Defendants. Accordingly, all of the specified former testimony of David Lynn pertaining the statements made by Defendant Ditsch to Scott Turner in lock-up should be admitted for the truth, pursuant to Rule 804(b)(1).

## B.    The Testimony Is Admissible For The Truth Pursuant To Rule 807

Alternatively, if the Court concludes that the absence of legal privity between Defendants and the prosecution makes Rule 804(b)(1) inapplicable, the testimony should be admitted for the truth pursuant to Rule 807. Rule 807 "exists to provide courts with flexibility in admitting statements traditionally regarded as hearsay but not falling within any of the conventional exceptions." *United States v. Valdez–Soto*, 31 F.3d 1467, 1471 (9th Cir.1994).

A statement that would otherwise be excludable on hearsay grounds is admissible under Rule 807 if it: (1) has circumstantial guarantees of

trustworthiness equivalent to the recognized hearsay exceptions; (2) is evidence of a material fact; (3) is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (4) its admission will serve the general purposes of the Rules of evidence and the interests of justice.[3] *United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998).

To satisfy the trustworthiness requirement, "[t]he rule requires only that the hearsay have 'equivalent circumstantial guarantees of trustworthiness" to any of the rule's enumerated exceptions.'" *Valdez-Soto*, 31 F.3d at 1471; *see also United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir.1994). The Ninth Circuit has explained that the fact a statement "almost fit[s]" within an enumerated exception – here 804(b)(1) – "cuts in favor of admission, not against." *Valdez-Soto*, 31 F.3d at 1471 ("the reference to guarantees of trustworthiness equivalent to those in the

---

[3]    The "Residual Exception" to the rule against hearsay, Fed. R. Evid. 807, provides as follows:

(a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

(1)    the statement has equivalent circumstantial guarantees of trustworthiness;

(2)    it is offered as evidence of a material fact;

(3)    it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4)    admitting it will best serve the purposes of these rules and the interests of justice.

(b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

1    enumerated exceptions strongly suggests that almost fitting within one of these

2    exceptions cuts in favor of admission, not against").

3         The necessary equivalent guarantees of trustworthiness are provided here by

4    the adversary testing to which the sworn testimony of David Lynn was subjected

5    when it was presented previously.

6         As discussed above, the record of the second trial demonstrates that the

7    meeting occurred between Scott Turner and Defendant Ditsch in lock-up during

8    the second trial, and that defense investigator David Lynn wrote notes of this

9    meeting.  Even Defendant Ditsch, who was adamant in his denial of the existence

10   of such a meeting where the defense investigator was present, ultimately conceded

11   when he was shown the court transcript that the meeting did occur.

12        Further, the use of the very same language by Plaintiff's defense counsel in

13   his examination of Defendant Ditsch as was written on David Lynn's notes further

14   corroborates that the entirety of these statements – including the threats – were

15   made.

16        This testimony is more probative on the point than any other evidence in that

17   no other person wrote immediate notes quoting the specific threatening language

18   used by Defendant Ditsch to Mr. Turner, an event which occurred over twenty

19   years ago.

20        The interests of justice provision strongly support application of the residual

21   exception. Defendants will suffer no unfair prejudice from admission of the former

22   testimony not only because the prosecution had the same motive and reason to

23   challenge the testimony during the Habeas hearing, but because Defendants are

24   able to offer the contrary testimony of Defendant Ditsch, as he did at Plaintiff's

25   Habeas evidentiary hearing. The interest of justice would be disserved and

26   subverted if the testimony were not allowed, as the jury would be deprived of

27   integral evidence supporting Plaintiff's overriding claim that Defendant Ditsch's

28   influenced Scott Turner's identification of Plaintiff on January 19, 1991.

18

## V.  CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court rule the former testimony of David Lynn specified above is not excludable on hearsay grounds and, instead, is admissible at the trial of this case for the truth of the matter asserted.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: September 3, 2012        By      _/s/ Ronald O. Kaye_
                                        RONALD O. KAYE
                                        Attorney for Plaintiff
                                        Francisco Carrillo, Jr.

19