RONALD O. KAYE (No.145051)
MARILYN E, BEDNARSKI (No. 105322)
CAITLIN S. WEISBERG (No. 262779)
KAYE, McLANE & BEDNARSKI
234 E. Colorado Blvd. Suite 230
Pasadena CA 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
E-mail: rok@kmbllp.com
E-mail: mbednarski@kmbllp.com
E-mail: cweisberg@kmbllp.com

Attorneys for Plaintiff,
FRANCISCO CARRILLO, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| FRANCISCO CARRILLO, JR., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, CRAIG DITSCH AND DOES 1 THROUGH 10, inclusive, <br><br> Defendants. | CASE NO. CV 11-10310 SVW (AGRx) <br><br> **PLAINTIFF FRANCISCO CARRILLO JR.'S NOTICE OF MOTION AND MOTION IN LIMINE # 6 TO EXCLUDE THE TESTIMONY OF DEFENSE PSYCHOLOGICAL EXPERT ROBERT J. SBORDONE, Ph.D.** <br><br> DATE:      October 1, 2012 <br> TIME:      3:00 p.m. <br> COURT:   Hon. Stephen V. Wilson <br><br> Action Filed: December 14, 2011 <br> Pretrial Conference: October 1, 2012 <br> Trial: October 16, 2012 |

PLEASE TAKE NOTICE that on Monday, October 1, 2012 at 3:00 p.m. or as soon thereafter as the matter may be heard, Plaintiff, by and through his counsel of record, will move *in limine* to exclude the testimony of defense expert Robert J.

Sbordone, Ph.D. on the grounds that Dr. Sbordone's opinions, as set forth in his Rule 26 expert report, lack foundation, are not the proper subject of expert testimony, and are beyond the scope of his expertise.

Pursuant to Local Rule 7-3, counsel for Plaintiff conferred with counsel for Defendants on August 22, 2012 prior to filing this motion. Defendants do not consent to the relief requested in this motion.

Plaintiff's motion is based on the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Caitlin S. Weisberg, all pleadings and papers on file in this action, and such other evidence and argument as may be presented on behalf of Plaintiff at the hearing on this motion.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: September 3, 2012          By        */s/ Caitlin S. Weisberg*
                                             CAITLIN S. WEISBERG
                                             Attorney for Plaintiff Francisco Carrillo, Jr.

1

## <u>TABLE OF CONTENTS</u>

2  TABLE OF AUTHORITIES .......................................................................... ii

3  MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

4  I.   INTRODUCTION ................................................................................. 1

5  II.  BACKGROUND .................................................................................. 1

6  III. LEGAL STANDARD ......................................................................... 5

7  IV.  ARGUMENT ...................................................................................... 6

8        A.   Credibility and Opinions Regarding Disputed Factual Issues Are
             Not Proper Subjects of Expert Testimony, Rendering the
9             Majority of Dr. Sbordone's Proposed Testimony Inadmissible. ........... 7

10       B.   Dr. Sbordone Has No Expertise That Would Allow Him to
             Provide Reliable Expert Testimony on Educational Achievement
11            or Legal Standards Relating to Innocence. ........................................... 11

12       C.   Dr. Sbordone Has Not and Cannot State Any Opinion Regarding
             Plaintiff's Emotional Distress or Mental Health Condition
13            Because Such an Opinion Would be Unreliable and Would Lack
             Foundation ........................................................................................... 12

14  V.   CONCLUSION ................................................................................. 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Ward*,
140 U.S. 76 (1891) .................................................................. 8

*Carroll v. Otis Elevator Co.*,
896 F.2d 210 (7th Cir.1990) ................................................ 12

*Cooley v. Lincoln Elec. Co.*,
693 F. Supp. 2d 767 (N.D. Ohio 2010) .......................... 13, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
43 F.3d 1311 (9th Cir. 1995) .............................................. 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........................................... 5, 6, 10, 12

*E.E.O.C. v. GLC Restaurants, Inc., CV05*,
618 PCT DGC, 2007 WL 30269 (D. Ariz. Jan. 4, 2007) ............ 15

*EEOC v. Sbarro's Italian Eatery*,
Civ. No. 00-774, 2003 WL 25676478 (D. Utah Apr. 25, 2003) ........ 8

*Hubbard v. Rite Aid Corp.*,
433 F. Supp. 2d 1150 (S.D. Cal. 2006) ............................... 6

*Jones v. Lincoln Elec. Co.*,
188 F.3d 709 (7th Cir.1999) ............................................... 11

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ........................................................... 5

*Lust ex rel. Lust v. Merrell Dow Pharmaceuticals, Inc.*,
89 F.3d 594 (9th Cir. 1996) ................................................ 5

*Nichols v. Am. Nat'l Ins. Co.*,
154 F.3d 875 (8th Cir. 1998) ( .................................... 9, 11

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ......................................... 8, 11

*Peals v. Terre Haute Police Department*,
535 F.3d 621 (7th Cir.2008) ............................................. 15

*Rosen v. Ciba-Geigy Corp.*,
78 F.3d 316 (7th Cir. 1996) .............................................. 12

*United States v. Adams*,
271 F.3d 1236 (10th Cir. 2001) .................................... 9, 11

*United States v. Awkard*,
597 F.2d 667 (9th Cir. 1979) ............................................. 8

*United States v. Azure,*
    801 F.2d  (8th Cir. 1986)........................................................................8

*United States v. Benson,*
    941 F.2d 598 (7th Cir. 1991)...........................................................9, 10

*United States v. Binder,*
    769 F.2d 595 (9th Cir. 1985)................................................................9

*United States v. Cordoba,*
    104 F.3d 225 (9th Cir. 1997)...............................................................11

*United States v. Finley,*
    301 F.3d 1000 (9th Cir. 2002).............................................................13

*United States v. Gonzalez–Maldonado,*
    115 F.3d 9 (1st Cir.1997) ...................................................................10

*United States v. Hankey,*
    203 F.3d 1160 (9th Cir. 2000).............................................................11

*United States v. Morales,*
    108 F.3d 1031 n. 1 (9th Cir. 1997).......................................................9

*United States v. Prime,*
    431 F.3d 1147 (9th Cir. 2004)..............................................................6

*United States v. Rosenberg,*
    108 F. Supp. 798 (S.D.N.Y. 1952)........................................................8

*United States v. Saya,*
    961 F. Supp. 1395 (D. Haw. 1996) .....................................................14

*United States v. Thomas,*
    No. CCB-03-0150, 2006 WL 140558 (D. Md. Jan. 13, 2006) .....................13

*United States v. Vallejo,*
    237 F.3d 1008...................................................................................6

*United States v. Vest,*
    116 F.3d 1179 (7th Cir. 1997).............................................................10

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,*
    593 F. Supp. 2d 1153 (S.D. Cal. 2008)................................................11

*Vicente v. Barnett,*
    415 F. App'x 767(9th Cir. 2011) .........................................................14

*Wilson v. Woods,*
    163 F.3d 935 (5th Cir.1999)...............................................................11

**Rules**

Fed. R. Evid. 401 & 402 .................................................................1, 5, 15

Fed. R. Evid. 403 ...................................................................................passim

Fed. R. Evid. 404 .............................................................................................6

Fed. R. Evid. 702 ...................................................................................passim

Fed. R. Evid. 703 .......................................................................................1, 10

Federal Rule of Civil Procedure 26(a)(2)(D)(i)............................................2

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) ....................................1, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.     INTRODUCTION**

3      Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), Defendant has

4  designated Robert J. Sbordone, Ph.D as a rebuttal expert to Plaintiff's expert

5  psychiatrist, Terry A. Kupers, M.D. However, none of the statements and/or

6  opinions contained in the expert report submitted by Dr. Sbordone[1] are the proper

7  subject of expert testimony under Federal Rule of Evidence 702. Indeed, the report

8  consists of facts and opinions which are not relevant, unreliable, lack foundation,

9  and will not assist the trier of fact. Accordingly, the entirety of Dr. Sbordone's

10  proposed testimony should be excluded pursuant to Federal Rules of Evidence 401-

11  403 and 701-703.

12

**II.     BACKGROUND**

13      In this action, Plaintiff alleges that he was wrongfully incarcerated for twenty

14  years as a result of the unconstitutional conduct of Defendants. Plaintiff seeks

15  damages for, inter alia, "extreme and severe mental anguish as well as mental . . .

16  pain and injury" caused by Plaintiff's wrongful incarceration. Complaint (Dkt. No.

17  1) ¶ 73.

18      In support of Plaintiff's claim for damages, Plaintiff designated and submitted

19  the expert report of Dr. Terry Kupers, a psychiatrist and a well-recognized expert in

20  correctional mental health issues.[2] (Ex. B). The report was served ninety days prior

21

22  _____

23      [1] Dr. Sbordone's Expert Report is attached to the Declaration of Caitlin S.
Weisberg ("Weisberg Decl.") as Exhibit A. The exhibits to the Weisberg

24  Declaration are continuously paginated and are referred to herein by those page
numbers as opposed to any internal page numbering.

25
     [2] Dr. Kupers has testified on numerous occasions regarding the psychiatric
26  effects of jail and prison conditions. He has consulted with the U.S. department of
Justice, Human Rights Watch, and several jail departments of mental health. Dr.

27  Kupers is currently serving as the monitor, pursuant to a federal consent decree, for

28

_____

1  to trial as required by Federal Rule of Civil Procedure 26(a)(2)(D)(i). (Weisberg

2  Decl. ¶ 2).  In the Report, Dr. Kupers provides expert opinions on the deleterious

3  psychological impact of incarceration, the psychological trauma experienced by

4  Plaintiff during his incarceration, and the lingering psychological symptoms

5  experienced by Plaintiff. Although Dr. Kupers identifies certain symptoms

6  experienced by Plaintiff that are consistent with Posttraumatic Stress Disorder

7  ("PTSD") or Major Depressive Disorder, he does not assign either of those

8  diagnoses, or any other diagnosis, on Axis I or II of DSM IV. (Ex. B, pp. 104-05).

9       Generally speaking, Dr. Kupers's opinions are based on his extensive

10  experience in the area of correctional mental health issues, his review of Plaintiff's

11  records from the California Department of Corrections and Rehabilitation and other

12  materials pertaining to this litigation, and his interview and examination of Plaintiff,

13  which took place on June 22, 2012. (Ex. B, p. 76).

14       Thirty days after the designation of Dr. Kupers, Defendants served the expert

15  report of Dr. Sbordone. (Weisberg Decl. ¶ 3). The report, which was intended to

16  rebut Dr. Kuper's Report (Ex. A, p. 2), consists of the following observations and

17  opinions: [3]

18  - **Para. 1:** Mr. Carrillo's statement to Dr. Kupers that he received "average"
19  grades in high school prior to his arrest is inconsistent with Mr. Carrillo's
   school records.[4] (Ex. A, p. 2).

20

---

21  (…continued)

22  the provision of mental health services at Mississippi State Penitentiary. In addition,
   he has received numerous awards and has written scores articles and books on

23  correctional mental health and public health issues. (Ex. B, pp. 75, 115-127).

24  [3] Dr. Sbordone's report is organized into ten numbered areas or points. This
   motion refers to each numbered point as a "Paragraph," although certain of the

25  points span more than one block of text.

26  [4] Mr. Carrillo addressed this purported inconsistency during his deposition,

27  which occurred on August 24, 2012, after the production of Dr. Sbordone's report,
   which is dated August 17, 2012.

28

---

- **Para. 2:** Mr. Carrillo's statement to Dr. Kupers that he was not given *Miranda* warnings when he was arrested is inconsistent with his trial testimony. (Ex. A, p. 2-3).

- **Para. 3:** Mr. Carrillo's statement that he is confident that he would have completed high school and continued his education is wrong because, in Dr. Sbordone's opinion, "[b]ased on Mr. Carrillo's academic records . . . it is doubtful that Mr. Carrillo would have been promoted to the 11th grade or would have graduated from high school." (Ex. A, p. 3).

- **Para. 4:** Dr. Kupers failed to note or explain various information regarding Mr. Carrillo's educational background and skills, which, in Dr. Sbordone's opinion, shows that "it is unlikely that Mr. Carrillo would have graduated from high school or gone to college at that time."[5] (Ex. A, p. 3).

- **Para. 5:** Certain purported factors are inconsistent with Dr. Kupers's statement that Mr. Carrillo showed great potential because of his various successes during and after his period of incarceration. (Ex. A, p. 3)

- **Para. 6:** Dr. Kupers failed to note the purported circumstances surrounding a positive drug test for marijuana that was administered to Mr. Carrillo in 1994 while he was incarcerated, which, in Dr. Sbordone's opinion, shows that Mr. Carrillo was not telling the truth to avoid being punished for using drugs. (Ex. A, p. 3).

- **Para. 7:** Dr. Kupers based his findings and opinions on his clinical interview with Mr. Carrillo and did not administer any psychological tests. Dr. Sbordone states no opinion regarding this observation. (Ex. A, p. 4).

- **Para. 8:** Mr. Carrillo's high functioning is inconsistent with Dr. Kupers's description of how the prison system psychologically devastates individuals who are incarcerated and how Mr. Carrillo's life was destroyed when he entered the criminal justice system. (Ex. A, p. 4).

- **Para. 9:** Dr. Sbordone opines that Mr. Carrillo's symptoms, as described in Dr. Kuper's report, do not satisfy the diagnostic criteria for PTSD. In other words, Dr. Sbordone agrees with Dr. Kupers's decision not to diagnose PTSD. However, unlike Dr. Kupers, Dr. Sbordone renders this opinion without having examined Plaintiff. Dr. Sbordone's opinion is based, instead, on the description provided in Dr. Kuper's report of his examination of Plaintiff. (Ex. A, p. 4-5).[6]

---

[5] For example, Dr. Sbordone references testing conducted in 1992 which placed Mr. Carrillo at a 3rd to 5th grade reading level although he was supposed to be in the 10th grade. Again, Dr. Sbordone's perception of this issue is divorced from the facts of this case. Plaintiff obtained his GED in custody, further pursued his education, and is currently enrolled in college. (Weisberg Decl. ¶ 6). He has more than adequately demonstrated his potential and is working to live up to it.

[6] The last paragraph of the report, Paragraph 10, concerns Dr. Sbordone's

1        Based on this summary and on the text of Dr. Sbordone's report (Ex. A, pp. 2-

2    5), it is clear that Paragraphs 1-6, and 8 contain basic credibility or evidentiary

3    *observations* that do not rely on any psychological or psychiatric expertise. To the

4    extent otherwise relevant and admissible, the evidence and argument referenced in

5    these paragraphs may be used by Defendants to cross-examine plaintiff or Dr.

6    Kupers, but it is not the proper subject of expert psychological opinions or

7    testimony.

8        Furthermore, Paragraphs 4-5 contain opinions that lack foundation in Mr.

9    Sbordone's expertise. In those paragraphs, Dr. Sbordone opines that Mr. Carrillo

10    would not have graduated high school much less enrolled in college. Aside from the

11    fact that this opinion is undermined by Plaintiff's attainment of his GED while in

12    custody and his enrollment in college following his release, Dr. Sbordone is in

13    absolutely no position to render an opinion regarding the practices and procedures of

14    the Los Angeles public school system regarding the promotion or graduation of

15    students in the early 1990s.

16        Finally, Paragraph 9, the only paragraph that in any way relates to Dr.

17    Sbordone's area of expertise, is also inadmissible because it lacks foundation, does

18    not constitute proper rebuttal testimony, is irrelevant, and would waste time during

19    trial. This paragraph contains general information about PTSD that does not

20    contradict the opinions in Dr. Kupers's report, does not reflect any reliable opinion

21    about Plaintiff's mental condition, and does not provide any useful information to

22    the jury.

23   _____

(…continued)

24    opinion that Plaintiff cannot be described as "innocent" because he "has never been

25    found to be innocent for the murder of Donald Sarpy." (Ex. A, p. 5). The obviously

26    flawed reasoning of this statement and its inadmissibility as an expert opinion are

27    not at issue in this motion because the parties have stipulated that neither Dr. Kupers

      nor Dr. Sbordone will be able to state any opinion as to whether Plaintiff is innocent

28    or not.

---

1    In sum, Dr. Sbordone fails to provide any relevant rebuttal opinion that is

2  based on his expertise as a psychologist specializing in PTSD.[7] Because the

3  statements and opinions in the report are not based on any "scientific, technical, or

4  other specialized knowledge" that "will assist the trier of fact," they are not

5  admissible under Federal Rules of Evidence 401-403 and 702.

6  **III.   LEGAL STANDARD**

7    Expert testimony is only admissible under Federal Rule of Evidence 702 "[i]f

8  scientific, technical, or other specialized knowledge will assist the trier of fact to

9  understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Further,

10 to be admissible, the proposed evidence must satisfy the following conditions for

11 reliability: "(1) the testimony is based upon sufficient facts or data, (2) the testimony

12 is the product of reliable principles and methods, and (3) the witness has applied the

13 principles and methods reliably to the facts of the case." *Id.* In other words, "such

14 testimony is admissible only if it is both relevant and reliable." *Kumho Tire Co., Ltd.*

15 *v. Carmichael*, 526 U.S. 137, 141 (1999).

16   The admissibility of expert testimony is determined by the trial court pursuant

17 to Rule 104(a), by a preponderance of the proof. *Daubert v. Merrell Dow*

18 *Pharmaceuticals, Inc.*, 509 U.S. 579, 592 & n.10 (1993). The proponent of the

19 expert has the burden of proving the admissibility of the proposed testimony. *Lust ex*

20 *rel. Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

21   Expert testimony must be relevant in two ways. It must relate to a fact at issue

22 in the litigation under Rules 401-402, and it must be based on "scientific, technical,

23 or other specialized knowledge" such that it will assist the jury in the determination

24 of that fact under Rule 702. *Daubert*, 509 U.S. at 591-592. Opinions that address

25

26

27   [7] Plaintiff does not, in this motion, contest Dr. Sbordone's qualifications in
   this regard.

28

matters within the general knowledge and experience of the jurors do not qualify as admissible expert testimony under Rule 702, both because they do not reflect specialized knowledge and because they will not help the jury. *See United States v. Vallejo*, 237 F.3d 1008, 1019, *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) ("To be admissible, expert testimony must (1) *address an issue beyond the common knowledge of the average layman*, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific knowledge." (emphasis added)); *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1160-61 (S.D. Cal. 2006) (excluding medical expert on topic of whether the conditions described in medical records substantially limited the plaintiff's daily activities under the ADA definition of disability).

On the question of reliability, courts engage in a "flexible, factor-based approach."  *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2004).  The non-exclusive list of factors includes: "1) whether a method can or has been tested; 2) the known or potential rate of error; 3) whether the methods have been subjected to peer review; 4) whether there are standards controlling the technique's operation; and 5) the general acceptance of the method within the relevant community." *Id.* (citing *Daubert*, 509 U.S. at 593-94).

Finally, even if admissible under Rule 702, expert testimony is subject to exclusion under other Federal Rules of Evidence, such as Rules 403 and 404. *Daubert*, 509 U.S. at 595 ("Throughout, a judge assessing a proffer of expert testimony under Rule 702 should also be mindful of other applicable rules.").

## IV.   ARGUMENT

In this case, Dr. Sbordone's proposed testimony is objectionable, and inadmissible, for at least four reasons. First, the majority of his testimony is nothing more than his evaluation of perceived inconsistencies in factual statements made by Plaintiff and Plaintiff's expert, Dr. Kupers. Dr. Sbordone's Ph.D. does not make him an expert in evaluating inconsistent statements, an area particularly reserved for the

jury and properly addressed on cross-examination of Plaintiff and Plaintiff's witnesses.  As such, this proposed testimony does not satisfy Rule 702's relevancy requirements. Second, even if Dr. Sbordone is ultimately qualified as an expert in psychology and/or PTSD, that expertise does not qualify him, under Rule 702, to render opinions regarding Plaintiff's school progress. Third, any opinions provided by Dr. Sbordone regarding Plaintiff's psychological condition lack foundation because Dr. Sbordone did not personally evaluate Plaintiff and therefore fail Rule 702's reliability requirement. Fourth, even on the issue of PTSD, which does fall under Dr. Sbordone's area of expertise, Dr. Sbordone does not provide any testimony that would qualify as rebuttal testimony under Rule 26 and is, in addition, not relevant to the issues in dispute.

### A.    Credibility and Opinions Regarding Disputed Factual Issues Are Not Proper Subjects of Expert Testimony, Rendering the Majority of Dr. Sbordone's Proposed Testimony Inadmissible.

Dr. Sbordone's observations in Paragraphs 1-6, and 8 regarding certain perceived inconsistencies in testimony and evidence do not reflect any specialized skill, training, or knowledge. Rather, Dr. Sbordone, like any juror would, compares one piece of evidence (e.g., a statement by Plaintiff) to another piece of evidence (e.g., a school report card). To the extent that such evidence is otherwise admissible, it will be presented to the jury for the jury's consideration as to weight, relevance, and credibility. Further, to the extent that such evidence is noted by Dr. Sbordone merely to support an overall opinion by Dr. Sbordone that Plaintiff (or Dr. Kupers) is not credible,[8] such an opinion would, likewise, not be based on any specialized skill, training, or knowledge as a psychologist.

---

[8] Dr. Sbordone does not explain the significance of the purported inconsistencies identified in his report or state any explicit opinion that Plaintiff or Dr. Kupers is not credible. Presumably, such opinions were not stated because they would lack foundation.

1    It is well established that experts may not vouch for witnesses, resolve

2  disputed issues of fact, or pass judgment on witness credibility. Such matters are

3  exclusively within the province of the jury, and must be left to the jury to decide

4  based on its own common sense and experience.[9] *Nimely v. City of New York*, 414

5  F.3d 381, 397-98 (2d Cir. 2005) ("It is a well-recognized principle of our trial

6  system that 'determining the weight and credibility of [a witness's] testimony....

7  belongs to the jury, who are presumed to be fitted for it by their natural intelligence

8  and their practical knowledge of men and the ways of men....'" (quoting *Aetna Life*

9  *Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891));[10] *United States v. Azure*, 801 F.2d at 336,

10  339-40 (8th Cir. 1986) (holding that medical expert was not qualified to give

11  opinions on credibility and that expert's statement that a witness was believable

12  should have been excluded); *United States v. Awkard*, 597 F.2d 667 (9th Cir. 1979)

13  (excluding opinion as to accuracy of witness's memory because "[c]redibility is for

14  the jury[;] the jury is the lie detector in the courtroom"); *United States v. Rosenberg*,

15  108 F. Supp. 798, 806 (S.D.N.Y. 1952) (excluding expert testimony that a witness

16  was lying because "[i]t is hornbook law that the credibility of a witness and the

17  weight to be given his testimony rests exclusively with the jury").

18    The exclusion of medical experts giving credibility opinions is particularly

19  enforced where the expert's opinion relies on the same logic and common sense to

20  be employed by the jury, in other words when no scientific expertise is brought to

21  bear. For example, in *EEOC v. Sbarro's Italian Eatery*, Civ. No. 00-774, 2003 WL

22  _____

23    [9] In some rare cases, medical experts are permitted to testify as to a

24  psychological condition that interferes with a witness's *ability* to tell the truth, often

   in the context of a competency hearing. It goes without saying that this type of

25  exception is irrelevant to the present case.

26    [10] As stated in *Nimely*, the prohibition on experts providing credibility

27  opinions even extends to situations where the expert's "evaluations *are* rooted in

   scientific or technical expertise." 414 F.3d at 398 (emphasis added).

28

1  25676478, at *1 (D. Utah Apr. 25, 2003), the court excluded an expert's testimony
2  regarding "what he perceive[d] to be numerous inconsistencies" in the plaintiff's
3  testimony and his opinion that the plaintiff's testimony was "controverted and
4  confusing." *See also United States v. Benson*, 941 F.2d 598, 603-605 (7th Cir.
5  1991) (ruling that it was an abuse of discretion to admit tax expert's opinion
6  testimony which resolved disputed witness testimony and distinguishing such
7  testimony from opinion testimony based on specialized expert knowledge); *Nichols*
8  *v. Am. Nat'l Ins. Co.*, 154 F.3d 875 (8th Cir. 1998) (reversing district court's
9  admission of defense expert psychological testimony regarding the plaintiff's
10  character for truthfulness that was of a similar nature and arose in very similar
11  circumstances to those discussed above).

12  Similarly, in *United States v. Adams*, 271 F.3d 1236, 1244 (10th Cir. 2001),
13  the Tenth Circuit upheld a district court's exclusion of expert psychological
14  testimony regarding the credibility of a defendant's confession. The expert was
15  presented by the defendant to establish that the defendant's "low neurocognitive
16  functioning and dependent personality structure strongly raise the possibility, given
17  the conflicting explanations made by Mr. Adams and others, that he was not telling
18  the truth when he made incriminating statements [to the police]." *Id.* at 1245-46
19  (internal quotations omitted). In affirming the exclusion of this testimony, the court
20  reasoned that "defendant's recantation that he lied in order to protect his girlfriend is
21  precisely the type of explanation that a jury is capable of resolving without expert
22  testimony." *Id.* at 1246. Accordingly the court observed that "[t]he offered [expert]
23  testimony does little more than 'vouch for the credibility of another witness' and
24  thereby 'encroaches upon the jury's vital and exclusive function to make credibility
25  determinations.'" *Id.* (internal quotations omitted); *accord United States v. Binder*,
26  769 F.2d 595, 601-602 (9th Cir. 1985), *overruled on other grounds*, *United States v.*
27  *Morales*, 108 F.3d 1031, 1035 n. 1 (9th Cir. 1997) (holding it was reversible error to
28  admit expert psychological testimony that was designed to buttress the credibility of

1   witnesses by opining that the witnesses "could be believed").

2       And again in *United States v. Vest*, 116 F.3d 1179 (7th Cir. 1997), the court

3   held that an expert doctor was improperly allowed to testify as to his opinions

4   regarding the truthfulness of witness patients' statements concerning their symptoms

5   in a medical fraud case against their doctor, defendant Vest. The court reasoned:

> The Government, in other words, asked the expert whether, after
> review of the prior statements and other records, the patient actually
> had the symptoms Vest recorded. Experts may rely on evidence that is
> otherwise inadmissible if the evidence is "of a type reasonably relied
> upon by experts in the particular field in forming the opinion or
> inferences upon the subject."  Fed.R.Evid. 703. The subject of these
> government questions, however, was the credibility of the patients—
> something not within an expert's area of special competence. With only
> Vest's records and the patients' statements to the FBI as evidence, the
> expert was in no better position than a lay person to say whether the
> patient testified truthfully. "Credibility is not a proper subject for expert
> testimony; the jury does not need an expert to tell it whom to believe,
> and the expert's 'stamp of approval' on a particular witness' testimony
> may unduly influence the jury." *United States v. Benson*, 941 F.2d 598,
> 604 (7th Cir.1991).

14  *Id.* at 1185.

15      As these authorities establish, the observations of Dr. Sbordone regarding

16  inconsistencies in the evidence in this case are unreliable, not grounded in his

17  expertise, and would not assist the trier of fact. Accordingly, they are inadmissible

18  under Rule 702.

19      Moreover, even if such opinions were permissible expert testimony, they

20  should be excluded under Rule 403 as unfairly prejudicial.  As the Supreme Court

21  stated in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading

22  because of the difficulty in evaluating it. Because of that risk, the judge in weighing

23  possible prejudice against probative force under rule 403 . . . exercises more control

24  over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation

25  omitted); *see also United States v. Gonzalez–Maldonado*, 115 F.3d 9, 18 (1st

26  Cir.1997) ("Expert testimony on a subject that is well within the bounds of a jury's

27  ordinary experience generally has little probative value. On the other hand, the risk

28  of unfair prejudice is real. By appearing to put the expert's stamp of approval on [a

party's] theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged.").

Courts have often considered expert testimony on issues of witness credibility to be unfairly prejudicial and to have a high chance of misleading and confusing the jury. *See, e.g.*, *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997); *Adams*, 271 F.3d at 1245; *Nichols*, 154 F.3d at 883-84. As stated by the Second Circuit, "it was an abuse of the district court's substantial discretion" under Rule 403, to permit an expert to "comment directly, under the guise of an expert opinion, on the credibility of trial testimony from crucial fact witnesses. [The expert] was permitted not only to state his belief that the [witnesses] were not lying, but also to give the jury a series of rationales for that belief. . . [Such testimony was] prejudicial, confusing, and misleading to the jury." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).

### B. Dr. Sbordone Has No Expertise That Would Allow Him to Provide Reliable Expert Testimony on Educational Achievement or Legal Standards Relating to Innocence.

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. It goes without saying that the expert must have "knowledge, skill, experience, training and/or education," in the subject matter of the proposed opinion testimony. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (holding that trial judge must determine "[w]hether the expert has *appropriate* qualifications-i.e., some special knowledge, skill, experience, training or education *on that subject matter*" and citing *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir.1999) and *Wilson v. Woods*, 163 F.3d 935 (5th Cir.1999) (emphasis added)); *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1162-64 (S.D. Cal. 2008) (excluding expert's opinions regarding ethics because his knowledge, skill, experience, and training lay in the field of patent office procedures, and he had only an average lawyer's "awareness" of ethical standards). "Whether a witness is qualified as an expert can only be

determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990).

Dr. Sbordone's curriculum vitae identifies him as a "Clinical Psychologist and Neuropsychologist" with a specialty in "Traumatic Brain injury, Post Concussive Disorder, PTSD, [and] Assessment of Brain Damage." (Ex. A, p. 9). The curriculum vitae, which at sixty-one pages appears to leave no stone unturned in the reporting of Dr. Sbordone's experience and credentials, lists no training, education, experience, or publication in any areas which would allow him to opine that "based on Mr. Carrillo's academic records at Schurr High School, it is doubtful that [he] would have been promoted to the 11th grade or would have graduated from high school . . . or gone to college at that time." For example, it appears that Dr. Sbordone has never worked in primary or secondary educational settings, has never participated in symposia or written papers on public school policy with regard to the promotion and graduation of students, and has never studied statistics relating to the relationship between grades and promotion or graduation of public school students. Instead, Dr. Sbordone's training and experience is limited, generally speaking, to neuropsychiatry and psychology.

## C. Dr. Sbordone Has Not and Cannot State Any Opinion Regarding Plaintiff's Emotional Distress or Mental Health Condition Because Such an Opinion Would be Unreliable and Would Lack Foundation.

Under Rule 702 and *Daubert*, an expert may only testify if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." F.R.E. 702; *Daubert*, 509 U.S. at 593-94.  No matter how qualified an expert, he may not render opinions that are not based on reliable methodology in the instant case. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318-19 (7th Cir. 1996) (Posner, J.) (If experts in a case fail to "adhere to the same

1  standards of intellectual rigor that are demanded in their professional work . . ., their

2  evidence is inadmissible no matter how imposing their credentials."); *Daubert v.*

3  *Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995) (same).

4      Psychological experts are not uncommon in civil and criminal cases, and their

5  methodology is not unfamiliar. Such expert testimony is based on examination of

6  the person whose mental condition is at issue along with examination of other

7  potentially relevant sources of information, such as medical records, litigation

8  records, psychological testing, family interviews, etc.  *See, e.g.*, *United States v.*

9  *Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) ("The methodology [of the expert

10  psychologist] itself is the form that is used by medical doctors uniformly. He

11  considers the history given by the patient, his observations clinically of the patient's

12  behavior, and any psychological testing."); *United States v. Thomas*, No. CCB-03-

13  0150, 2006 WL 140558, at *16 (D. Md. Jan. 13, 2006) (noting that clinical

14  interviews may be used as a diagnostic tool and concluding "that this clinical

15  approach utilizing the customary interview techniques . . . is a sufficiently reliable

16  method"). *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 782 (N.D. Ohio 2010)

17  (excluding expert testimony because his diagnosis, which was based on reviewing a

18  videorecording of a patient, was not reliable under *Daubert*).

19      In this case, Dr. Sbordone has never met, much less examined Plaintiff. His

20  report is based on his review of Dr. Kuper's report and his review of "the

21  voluminous arrest and legal records" provided to him by defense counsel. (Ex. A,

22  p.2). Accordingly, Dr. Sbordone lacks the necessary foundation to render any

23  diagnostic opinions regarding Mr. Carrillo. And, indeed, it appears to be the case

24  that Dr. Sbordone does not attempt to render a diagnostic opinion in his report. (*Id.*,

25  p. 4-5).

26      In Paragraph 9 of the report, Dr. Sbordone notes that Dr. Kupers did not

27

28

1    diagnose PTSD, but did state that Plaintiff's psychiatric condition could be

2    described as subsyndromal PTSD.[11] (Ex. A, p. 4). Dr. Sbordone does not opine that

3    subsyndromal PTSD is an illegitimate diagnosis, and he does not opine that it would

4    be an inappropriate descriptor of Plaintiff's psychological condition. (*Id.*, p. 5).

5    Instead, he makes two points: (1) Dr. Kupers description of Plaintiff's behavior

6    indicates that Plaintiff does not display certain symptoms typically associated with

7    PTSD sufferers and (2) "exposure to traumatic events is not sufficient to cause a

8    person to develop [PTSD]." (*Id.*)

9         The above-summarized text of Dr. Sbordone's report demonstrates that Dr.

10   Sbordone has not disclosed any independent diagnostic opinion of Plaintiff's

11   psychological condition, providing strong corroboration for Plaintiff's position that

12   Dr. Sbordone lacked the necessary foundation to render such an opinion.  In any

13   event, it is clear that any diagnostic opinion by Dr. Sbordone would not be reliable,

14   as required by Rule 702, because it would not be based on "sufficient" facts or data

15   and would not be the product of reliable principles and methods, *i.e.*, a personal

16   examination of Plaintiff, the touchstone of diagnostic method in the field of

17   psychology. *Cf. Vicente v. Barnett*, 415 F. App'x 767, 770 (9th Cir. 2011) *cert.*

18   *denied*, 132 S. Ct. 109, 181 L. Ed. 2d 35 (U.S. 2011) (noting that clinical interviews

19   including observations regarding a person's affect and gathering of data are the

20   "types of diagnositic techniques [that] are part of a valid methodology for

21   psychological evaluation."); *United States v. Saya*, 961 F. Supp. 1395, 1396 (D.

22   Haw. 1996) (excluding expert psychological testimony regarding a witness's

23

24   _____

25        [11] Dr. Kupers describes subsyndromal PTSD as a clinical term that is used to
     describe a patient who has "traumas in [his] history and . . . signs and symptoms

26   typically observed in previously traumatized patients, but the signs and symptoms
     are not quite sufficient in quantity or severity to qualify for the official diagnosis of

27   PTSD." (Ex. B, p. 104).

28

_____

1   memory deficiencies because the opinion was not supported by reliable scientific

2   methodology and procedures such as a clinical examination of the witness or

3   neuropsychologic testing).

4        Moreover, the general information on PTSD provided by Dr. Sbordone,

5   which could be permissible expert testimony regarding general psychiatric

6   principles, are inadmissible *in this case* because (1) it is irrelevant and (2) it does not

7   rebut Dr. Kuper's testimony.

8        It is undisputed that Dr. Kupers did not diagnose Plaintiff with PTSD, for the

9   reasons stated in his report. (Ex. B, p. 104). Thus, Dr. Sbordone's general

10  description of the literature and diagnostic criteria for PTSD would not aid the jury

11  and would not tend to prove or disprove any fact that is of consequence to the

12  determination of this action. Thus, it is inadmissible under Rules 402 and 702. *See,*

13  *e.g.*, *E.E.O.C. v. GLC Restaurants, Inc.*, CV05 618 PCT DGC, 2007 WL 30269 (D.

14  Ariz. Jan. 4, 2007) (excluding expert opinion regarding absence of "psychiatric

15  damage" experienced by plaintiff as irrelevant because plaintiff was not claiming

16  psychiatric damage, but rather emotional pain, mental anguish, and loss of

17  enjoyment of life).

18       Even to the extent such general information is marginally relevant to the

19  *subject matter* of Dr. Kuper's testimony, it is not in disagreement with Dr. Kuper's

20  testimony and therefore does not meaningfully "rebut" any opinion in Dr. Kuper's

21  report. Dr. Sbordone was not designated as an independent expert witness, but rather

22  as a rebuttal witness. His testimony must therefore be limited to those opinions

23  which "contradict or rebut evidence on the same subject matter identified by

24  another" party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii); *Peals v. Terre Haute Police*

25  *Department*, 535 F.3d 621, 630 (7th Cir.2008) ("The proper function of rebuttal

26  evidence is to contradict, impeach or diffuse the impact of evidence offered by an

27  adverse party."). The general information and analysis provided by Dr. Sbordone

28  does neither of these things because Dr. Kupers did not diagnose Plaintiff with

1  PTSD, and Dr. Sbordone identifies no errors in Dr. Kupers expert analysis and

2  opinions.

3  　　　　Finally, because the general information about PTSD stated in Dr. Sbordone's

4  report is, if at all relevant, marginally so, its probative value is substantially

5  outweighed by the cumulative nature of the testimony and the waste of time that

6  would result. Accordingly, the testimony should be excluded under Rule 403.

7  **V.　　　CONCLUSION**

8  　　　　For all of the foregoing reasons, none of the proposed testimony stated in Dr.

9  Sbordone's Rule 26 expert report should be admitted, and Plaintiff respectfully

10  requests that the Court exclude Dr. Sbordone as a witness.

11

12  　　　　　　　　　　　　　　　　　　Respectfully submitted,

13  　　　　　　　　　　　　　　　　　　KAYE, McLANE & BEDNARSKI, LLP

14

15  DATED: September 3, 2012　　　By　　　*/s/ Caitlin S. Weisberg*

16  　　　　　　　　　　　　　　　　　　CAITLEN S. WEISBERG
   　　　　　　　　　　　　　　　　　　Attorney for Plaintiff Francisco Carrillo, Jr.

17

18

19

20

21

22

23

24

25

26

27

28