RONALD O. KAYE (No.145051)
MARILYN E. BEDNARSKI (No. 105322)
CAITLIN S. WEISBERG (No. 262779)
KAYE, McLANE & BEDNARSKI
234 E. Colorado Blvd. Suite 230
Pasadena CA 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
E-mail: rok@kmbllp.com
E-mail: mbednarski@kmbllp.com
E-mail: cweisberg@kmbllp.com

Attorneys for Plaintiff,
FRANCISCO CARRILLO, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| FRANCISCO CARRILLO, JR., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, CRAIG DITSCH AND DOES 1 THROUGH 10, inclusive, <br><br> Defendants. | CASE NO. CV 11-10310 SVW (AGRx) <br><br> **PLAINTIFF FRANCISCO CARRILLO JR.'S NOTICE OF MOTION AND MOTION IN LIMINE # 5 TO EXCLUDE ADMISSION OF AND/OR ANY REFERENCE TO THE PROCEEDINGS IN *PEOPLE V. NORIEGA*** <br><br> DATE:     October 1, 2012 <br> TIME:     3:00 p.m. <br> COURT:    Hon. Stephen V. Wilson <br><br> Action Filed: December 14, 2011 <br> Pretrial Conference: October 1, 2012 <br> Trial: October 16, 2012 |

PLEASE TAKE NOTICE that on Monday, October 1, 2012 at 3:00 p.m. or as soon thereafter as the matter may be heard, Plaintiff, by and through his counsel of

record, will move *in limine* to exclude evidence and cross-examination relating to *People v. Noriega*, an entirely unrelated criminal case during which Plaintiff's illumination expert, Scott Fraser, testified at a pretrial hearing.

Pursuant to Local Rule 7-3, counsel for Plaintiff conferred with counsel for Defendants on August 29, 2012 and August 31, 2012 prior to filing this motion. Defendants do not consent to the relief requested in this motion.

Plaintiff's motion is based on the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Caitlin S. Weisberg and exhibits thereto, all pleadings and papers on file in this action, and such other evidence and argument as may be presented on behalf of Plaintiff at the hearing on this motion.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: September 3, 2012     By     */s/ Ronald O. Kaye*
                                    RONALD O. KAYE
                                    Attorneys for Plaintiff Francisco Carrillo, Jr.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND .......................................................................................... 1

    A. Proceedings in *People v. Noriega* ........................................................ 2

    B. Aftermath of the Pounders Incident ..................................................... 3

III. ARGUMENT ............................................................................................... 4

    A. Judge Pounders's Finding Constitutes Inadmissible Hearsay That May Not Be Introduced Through Cross-Examination or Otherwise ........................................................................................... 4

    B. Even If the Pounders Incident Were Not Inadmissible Hearsay, It Would Be Subject to Exclusion Under Rule 403 As Creating a Danger of Unfair Prejudice, Confusion of the Issues, and Waste of Time ..................................................................................................... 7

V. CONCLUSION .......................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Chein v. Shumsky*,
    373 F.3d 978 n. 6 (9th Cir.2004) .................................................................. 10

*Douglas v. Alabama*,
    380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ...................................... 6

*Fenenbock v. Dir. of Corr. for California*,
    Civ. No. 11-15880, 2012 WL 3743171 (9th Cir. Aug. 30, 2012) ................... 10

*Herrick v. Garvey*,
    298 F.3d 1184 (10th Cir. 2002) ........................................................................ 6

*Le Baron's Estate v. Rohm & Haas Co.*,
    506 F.2d 1261 (9th Cir. 1974) ...................................................................... 8, 9

*Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*,
    Civ. No. 87-9853, 1993 WL 280765 (N.D. Ill. July 26, 1993) ...................... 10

*Nipper v. Snipes*,
    7 F.3d 415 (4th Cir. 1993) ................................................................................ 6

*Trustees of University of Pennsylvania v. Lexington Ins. Co.*,
    815 F.2d 890 (3d Cir. 1987) ............................................................................. 6

*United States v. Binder*,
    769 F.2d 595 (9th Cir.1985) ........................................................................... 11

*United States v. Fonseca*,
    435 F.3d 369 (D.C. Cir. 2006) ......................................................................... 9

*United States v. Frankenthal*,
    582 F.2d 1102 (7th Cir.1978) ......................................................................... 10

*United States v. Gomez-Gallardo*,
    915 F.2d 553 (9th Cir. 1990) ........................................................................... 7

*United States v. Hall*,
    989 F.2d 711 (4th Cir.1993) ............................................................................. 6

*United States v. Holler*,
    411 F.3d 1061 (9th Cir. 2005) ......................................................................... 8

*United States v. Jones*,
    29 F.3d 1549 (11th Cir. 1994) ......................................................................... 6

*United States v. Larson*,
    495 F.3d 1094 (9th Cir. 2007) ......................................................................... 8

*United States v. Lipp*,
    54 F. Supp. 2d 1025 (D. Kan. 1999) .............................................................. 10

*United States v. Morales*,
 108 F.3d 1031 (9th Cir. 1997) ................................................................... 11

*United States v. Sanchez*,
 176 F.3d 1214 (9th Cir.1999) ...................................................................... 6

*United States v. Sine*,
 493 F.3d 1021 (9th Cir. 2007) ........................................................... 5, 6, 7, 11

**Statutes**

California Evidence Code § 210 ............................................................................. 3

California Evidence Code § 352 ............................................................................. 4

**Rules**

Fed. R. Evid. 103 ................................................................................................ 4, 6

Fed. R. Evid. 401 ...................................................................................................... 3

Fed. R. Evid. 403 ........................................................................................ 1, 4, 7, 9, 10

Fed. R. Evid. 605 ..................................................................................................... 10

Fed. R. Evid. 801 ....................................................................................................... 5

Fed. R. Evid. Rule 802 ......................................................................................... 1, 5, 6

Fed. R. Evid. 803(8)(C) ............................................................................................. 6

Federal Rule of Civil Procedure 26(a)(2) ................................................................ 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion concerns potential impeachment evidence against Plaintiff's designated illumination expert, Dr. Scott Fraser. The impeachment evidence—a finding by Los Angeles Superior Court Judge William Pounders regarding Dr. Fraser's credibility when testifying on collateral matters at a hearing in *People v. Adam Anthony Noriega*—is inadmissible hearsay and, in addition, far more prejudicial than probative, such that it should be excluded under Federal Rules of Evidence 802 and 403.

## II. BACKGROUND

In this case, Plaintiff alleges that he was wrongfully convicted for a crime that he did not commit based on false eyewitness testimony. The crime at issue, which resulted in the death of Donald Sarpy, was a drive-by shooting that occurred at approximately 7:00 p.m. on January 18, 1991 in Lynwood, CA ("Sarpy case"). In his effort to prove the falsity of the eyewitness testimony used to convict him, Plaintiff, as a habeas petitioner, engaged Dr. Scott Fraser as an expert witness on the science of illumination and human vision. Dr. Fraser testified at the evidentiary hearing on Plaintiff's Petition for Writ of Habeas Corpus ("habeas hearing") that it would have been too dark on the night of the incident for any of the eyewitnesses to detect the features of the perpetrator's face, and he assisted in the staging of a reenactment for the judge who presided over the hearing.[1] In this case, Plaintiff has designated Dr. Fraser as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2) to provide the same opinions and expert testimony that was provided during

---

[1] Dr. Fraser's testimony at the habeas hearing is attached to the Declaration of Caitlin S. Weisberg ("Weisberg Decl.") as Exhibit A. The exhibits to the Weisberg Declaration are continuously paginated and are referred to herein by those page numbers as opposed to any internal page numbering.

1 the habeas proceedings. Weisberg Decl. ¶ 2.

2 As far as Plaintiff is aware, the scientific basis for Dr. Fraser's proposed testimony and the accuracy of his findings are not meaningfully in dispute. Defendants have not designated a rebuttal expert for Dr. Fraser and have not, yet, taken Dr. Fraser's deposition. Further, although Dr. Fraser certainly is subject to the typical cross-examination performed on retained experts regarding bias and motive, there is absolutely no factual basis for suggesting that he falsified or misrepresented any statement or opinion that he has given in this case. Indeed, the state court highlighted the opinions and information provided by Dr. Fraser in its written findings of fact and conclusions of law, indicating that it considered his testimony helpful and reliable. (Weisberg Decl. ¶ 6 & Ex. B, pp. 55-56, 58-60).

### A.    Proceedings in *People v. Noriega*

In 2001, Dr. Fraser was retained by the defendant in a criminal case, *People v. Anthony Noriega*, although he did not ultimately testify as an expert at Mr. Noriega's trial. (Ex. A, pp. 42, 47). He did testify, however, on a collateral matter. (*Id.*, pp. 42, 46-47). During the case, the defendant, Mr. Noriega, raised the issue of possible witness intimidation by the prosecutor, Deputy District Attorney Michael Kraut. (*Id.*, pp. 46-48). One of the witnesses who felt intimidated by Mr. Kraut was Dr. Fraser who then testified about Mr. Kraut's behavior during a telephone call. (*Id.*). On the issue of witness intimidation, which was handled collaterally to the trial of the underlying issues in the case, Judge Pounders held that Mr. Kraut had not intimidated defense witnesses or had a chilling effect on the defense. (*Id.*, p. 48). In the course of that ruling, Judge Pounders also made a finding that Dr. Fraser had made false and misleading statements under oath as to the allegedly intimidating telephone call with Mr. Kraut. (*Id.*, pp. 44, 48).

Dr. Fraser was not personally represented in *People v. Noriega*, and the only issue before Judge Pounders in relation to Dr. Fraser's testimony was the defense allegation of possible witness intimidation. (*See* Ex. A, pp. 43-44, 47-48). In other

words, the finding was made without any contemporaneous opportunity for Dr. Fraser to personally be heard on the correctness of the finding. Although Judge Pounders referred the matter to the Attorney General, Dr. Fraser was never charged with perjury and certainly has never been convicted of perjury.[2] (*Id.*, pp. 45, 48-49).

### B. Aftermath of the Pounders Incident

The practical consequence of the *Noriega* proceedings for Dr. Fraser is obvious. Since 2001, adversaries in many of Dr. Fraser's cases have attempted to cross-examine him with Judge Pounders's finding and the circumstances of the finding (referred to herein as the "Pounders Incident"). (Ex. A, p. 49; Ex. C; Weisberg Decl. ¶ 7).Thus, the issue of the admissibility of the Pounders Incident in relation to testimony offered by Dr. Fraser has been litigated many times. Judges have excluded the impeachment evidence in over thirty cases.[3] (Ex. C).

During Plaintiff's habeas hearing, the deputy district attorney was allowed to cross-examine Dr. Fraser regarding the Pounders Incident; however, the only objection considered by the court was a relevance objection made by Plaintiff's counsel at the time of the testimony.[4] (Ex. A, pp. 42-43). No motion *in limine* was

---

[2] Although the allegation of witness intimidation was a serious matter to be resolved in the *Noriega* case, one court's discussion of the Pounders Incident suggests that there may have been an element of inside baseball about the whole situation, reflecting a clash of personalities between repeat players of the Los Angeles County court system. (Weisberg Decl. ¶ 7; Ex. D, pp. 85-86). In any event, as relevant here, Plaintiff takes the position that Judge Pounder's finding, whatever the story behind it, is unreliable, of marginal relevance, and inadmissible.

[3] The prior rulings have no collateral estoppel effect in this case, of course, but are relevant contextually as an indication of how the admissibility issue has played out in the past.

[4] In retrospect, this was not the correct objection to make, as matters pertaining to witness credibility almost always, if not always, pass the threshold relevance test under Federal Rule of Evidence 401 (or California Evidence Code § 210).

filed, and the court did not consider any hearsay objection or objection pursuant to California Evidence Code § 352, the state equivalent of Federal Rule of Evidence 403. (*Id.*). Furthermore, as the court was the trier of fact, and there was no jury present, the ruling cannot be viewed as an indication of the admissibility of the evidence before a jury. *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence *is not suggested* to the jury by any means." (emphasis added)).

## III.  ARGUMENT

The proceedings and facts of *People v. Noriega* are entirely irrelevant to this case. Dr. Fraser's testimony in that case did not concern his areas of expertise or anything remotely relating to the science of illumination and human vision. Accordingly, the underlying facts of the Pounders Incident range far afield from the issues to be presented in this case and have absolutely no bearing on the subject matter of Dr. Fraser's proposed testimony. Had Judge Pounders ruled on the witness intimidation issue in *Noriega* without making a specific credibility finding against Dr. Fraser, the entire *Noriega* drama would have long been forgotten regardless of the substance of Dr. Fraser's testimony in that proceeding. Defendants' only possible purpose in raising the incident is to impeach Dr. Fraser on collateral and prejudicial matters that would waste time and distract the jury. Moreover, any reference to the finding itself constitutes impermissible use of hearsay testimony. Accordingly, the evidence should be excluded under Federal Rules of Evidence 802 and 403.

### A.  Judge Pounders's Finding Constitutes Inadmissible Hearsay That May Not Be Introduced Through Cross-Examination or Otherwise

Judge Pounders's finding that Dr. Fraser made false or misleading statements during the *Noriega* proceedings is an out-of-court statement that would be used by Defendants to prove the truth of the matter asserted—*i.e.*, that Dr. Fraser actually gave false or misleading testimony during the *Noriega* proceedings. It is not a

conviction and does not satisfy any other hearsay exception. Accordingly, the finding is inadmissible under Federal Rules of Evidence 801 and 802.

The Ninth Circuit directly addressed the situation presented by this motion in *United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007). Defendant Sine's prosecution for mail fraud followed on the heels of several civil cases filed by Sine that related to the same underlying subject matter. One of the civil cases resulted in adverse findings by an Ohio district court judge, rejecting Sine's factual claims and denouncing his "chicanery, mendacity, deceit, and pretense." *Id.* at 1023-24. During the criminal case, the government cross-examined various witnesses, including Sine, by "refer[ing] to the factfinding and derogatory character assessments of the Ohio court." *Id.* at 1024. The Ohio court's order was not separately admitted into evidence. *Id.* at 1027. The Ninth Circuit nevertheless ruled that the government's cross-examination "introduced impermissible hearsay into the trial." *Id.* at 1024. The Ninth Circuit's analysis is directly applicable to this case.

First, the Ninth Circuit clearly and unequivocally ruled, consistent with a prior Ninth Circuit case and the holdings of the Fourth, Tenth, and Eleventh Circuits, that court judgments, orders, and findings constitute hearsay evidence. "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.' It is even more plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay." *Sine*, 493 F.3d at 1036 (citations omitted).

The court went on to state that the Ohio court's fact findings did not fall under any exception to the hearsay rule, and were therefore inadmissible. *Sine*, 493 F.3d at 1036. The court rejected the exceptions provided by 803(22) (judgment of a previous conviction) and 803(23) (judgments involving personal, family, or general history, or a boundary)—the only two hearsay exceptions that allow for the admission of judgments—as a basis for the admission of the findings at issue in

*Sine*. In addition, the weight of authority rejects the admission of *judicial* fact findings under Rule 803(8)(A)(iii)[5] for public records. *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir. 2002); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *Trustees of University of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890, 905 (3d Cir. 1987). *Herrick*, *Jones*, and *Nipper* were cited with approval by the Ninth Circuit in *Sine*. 493 F.3d at 1037 n.16.

Equally important to the present motion, the Ninth Circuit rejected the notion that inadmissible hearsay could be smuggled in through cross-examination questioning.

> We note preliminarily that although the order was never admitted into evidence, a line of questioning that repeatedly incorporates inadmissible evidence can be just as improper as the direct admission of such evidence. We agree with the Fourth Circuit that such "speaking" questions can violate the Federal Rules of Evidence. *See United States v. Hall*, 989 F.2d 711, 716-17 (4th Cir.1993) (noting that by "proceed[ing] to read the [inadmissible hearsay] statement to the jury under the guise of cross-examining ... [t]he government's use of [the] unauthenticated statement violated Fed.R.Evid. Rule 802 ...."); *see also* Fed. R. Evid. 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as ... asking questions in the hearing of the jury."); 21 Charles Alan Wright & Kenneth W. Graham, Jr, Federal Practice and Procedure: Evidence § 5042, at 954, 963 (2d ed.2005) (noting that Rule 103(c) seeks to ensure the jury "goes into deliberations with their minds void of everything except evidence that has been properly validated by trial procedures" and that the rule should apply to leading questions to witnesses "that counsel should have known contained inadmissible evidence"); *cf. Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (holding that "[a]lthough the Solicitor's reading of [the witness's] alleged statement, and [the witness's] refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that[the witness] in fact made the statement," and therefore was the basis for a Confrontation Clause violation).

*Sine*, 493 F.3d at 1031-32; *cf. United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir.1999) (cited in *Sine*) (holding that it was prosecutorial misconduct to place the

---

[5] Formerly Fed. R. Evid. 803(8)(C).

1  substance of inadmissible hearsay before the jury through cross-examination);
2  *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990)
3  ("[I]mpeachment is not permitted where it is employed as a guise for submitting to
4  the jury substantive evidence that is otherwise unavailable." (internal quotation
5  omitted)).

6  Thus, the *Sine* Court held that "[b]y peppering Sine *during cross-examination*
7  with questions referring to the *fact* that a *judge had found* that Sine . . . acted with
8  mendacity, the government used the order to establish the truth of [the judge's]
9  findings. . . ." *Sine*, 493 F.3d at 1036 (emphasis added). Such a use violated the rule
10 against hearsay, as it would in this case. *Id.*

11 There is one very significant difference between this case and *Sine*. In *Sine*,
12 various underlying facts relating to the previous civil litigation *were relevant* to the
13 criminal case. Accordingly, the government was permitted to introduce evidence
14 about the civil litigation to the extent that it was relevant to the criminal case. *Sine*,
15 493 F.3d at 1033 (noting, *e.g.*, evidence that the civil litigation was a sham intended
16 to set up a good faith defense to the criminal charges). The general relevancy of the
17 civil litigation did not, however, allow the government to "short cut" its evidentiary
18 obligations by bringing the relevant facts before the jury through the *findings* of the
19 Ohio court. *Id.* at 1031. In this case, the underlying facts of *Noriega* are entirely
20 irrelevant, and so there is no independent basis for Defendants to make any
21 reference to the case.

**B.     Even If the Pounders Incident Were Not Inadmissible Hearsay, It Would Be Subject to Exclusion Under Rule 403 As Creating a Danger of Unfair Prejudice, Confusion of the Issues, and Waste of Time**

Impeachment regarding collateral matters is disfavored. Such impeachment necessarily distracts the jurors from the issues in the present case and creates mini-trials on whether or not the collateral matters actually reflect on the credibility of the witness. "The district court . . . has considerable discretion in restricting cross-

examination" and will only be reversed for abuse of discretion. *United States v. Holler*, 411 F.3d 1061, 1066 (9th Cir. 2005); *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007); *Le Baron's Estate v. Rohm & Haas Co.*, 506 F.2d 1261, 1264 (9th Cir. 1974) (holding that district court did not abuse its discretion in limiting cross examination of an expert where cross-examination evidence was of marginal probative value and would unduly confuse the jury).

Based on Dr. Fraser's representations at the habeas hearing, Plaintiff does not in any way concede the truth of the matter provided in Judge Pounder's findings, *i.e.*, that Dr. Fraser actually made false statements during that proceeding. The fact that Dr. Fraser has not been charged or convicted of perjury, despite the referral of the matter to the Attorney General, corroborates Dr. Fraser's position that he did not testify falsely. In any event, it establishes that he is innocent of such allegations, because he has not been found guilty. Any effort by Defendants to imply, through cross examination or otherwise, that Dr. Fraser has testified falsely in the past, is therefore speculative and would be strenuously rejected by Plaintiff.

The impeachment at issue in this motion is collateral in two respects. First, the Pounders Incident occurred in the context of an unrelated case that has absolutely no overlap with the present case. Second, the Pounders Incident concerned a subject—witness intimidation—that has no relation to the substance of his expert testimony on illumination and human vision. Thus, in addition to being speculative, the relevance of the Pounders Incident to Dr. Fraser's credibility in providing accurate and competent expert testimony regarding lighting conditions on January 18, 1991 is truly marginal.

In addition, ample historical information demonstrates the extremely low probative value of this tangential evidence. Dr. Fraser has testified many times over his approximately forty-year career, both before and after the Pounders Incident. (Ex. A, pp. 7, 33, 48-49; Ex. E, pp. 108-10). He has continued to operate as a respected scientist and expert, with the Pounders Incident having little or no impact,

aside from the regular filing of motions *in limine*.[6] Indeed he has been qualified as an expert in over 100 cases in the Los Angeles County Superior Court over the last twenty years. (Ex. A, p. 7).

Moreover, Dr. Fraser's testimony at the habeas hearing in this case provides useful insight as to the low probative value of the proffered impeachment. Dr. Fraser testified at length—over 100 transcript pages—on his qualifications, his review of the facts of the case, the science of illumination and vision, and his relevant experiments. (Ex. A). He was cross-examined effectively on bias, motive, and the limits of his opinions. (*Id.*) At the end of his cross-examination, the prosecutor attempted to impeach Dr. Fraser with the dramatic fact that he had been found by Judge Pounders to have made false and misleading statements. This impeachment derailed the testimony because it required, in fairness, a complete explanation by Dr. Fraser as to what happened in *Noriega*, but it ultimately had no discernible effect. Dr. Fraser's testimony was embraced by the court and featured prominently in the judge's Findings of Fact and Conclusions of Law. (Ex. B, pp. 55-56, 58-60). Indeed, the transcript of Fraser's testimony essentially proves the point at issue—that the cross examination was misleading, a waste of time, and had no impact other than the distraction of the parties with a seemingly salacious, but ultimately equivocal, bit of history. (Ex. A, pp. 41-50).

Cross-examination and evidence regarding collateral statements alleged to be false are properly excluded under Rule 403. *See, e.g.*, *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006) ("Because evidence regarding collateral matters is more likely to implicate [Rule 403] problems, while being of lesser probative value, trial courts are afforded considerable leeway in deciding whether to admit such

---

[6] Plaintiff further notes that it appears that Dr. Fraser has also continued to receive appointments in indigent defense cases from Los Angeles County Superior Court judges. (Ex. D, p. 81).

evidence."); *United States v. Lipp*, 54 F. Supp. 2d 1025, 1037 (D. Kan. 1999) ("[I]t is well-settled that it is not improper for the trial judge to limit impeachment on matters that are deemed collateral or irrelevant."); *see also, e.g.*, *Fenenbock v. Dir. of Corr. for California*, Civ. No. 11-15880, 2012 WL 3743171, at *6-7 (9th Cir. Aug. 30, 2012); *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, Civ. No. 87-9853, 1993 WL 280765, at *4 (N.D. Ill. July 26, 1993).

In addition, to the extent that Defendants make any reference or allusion to Judge Pounders's finding that Dr. Fraser testified falsely, such a reference would create a serious danger of unfair prejudice—that the jurors would place undue weight on the referenced finding because it was determined by a judge. This type of *unfair* prejudice, particularly with respect to credibility opinions by professionals and authority figures, has been recognized in numerous cases, including *Sine*:

> By [referring on cross-examination to the adverse and derogatory fact findings in the state court opinion], the government created a substantial risk that the jury would pay undue and unwarranted attention to the strongly adverse assessment of a figure, the Ohio judge, who never appeared in the courtroom but who the jury likely assumed had both authority and expertise with regard to determining the true course of events and to making credibility determinations. Such use of the judge's statements both created far too great a danger of unfairly prejudicing Sine and introduced impermissible hearsay into the trial.
>
> . . . .
>
> Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially out-weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. We have previously observed that factual testimony from a judge unduly can affect a jury. *See Chein v. Shumsky*, 373 F.3d 978, 989 n. 6 (9th Cir.2004) (en banc). Similarly, jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves. *Cf.* Fed. R. Evid. 605 ("The judge presiding at the trial may not testify in that trial as a witness."); *United States v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir.1978) ("[T]he possibility that prestige, dignity, and authority may have somehow been imparted to the prosecution's case by the judge's appearance on its behalf cannot lightly be dismissed.").
>
> . . . .
>
> In this case . . . the nature of the facts found and comments made by Judge Carr—directly opining on Sine's motivations and truthfulness,

> thereby implicating Sine's overall credibility as a witness—heavily weighs on the unfair prejudice side of the balance.

*United States v. Sine*, 493 F.3d 1021, 1024, 1033-34 (9th Cir. 2007) (footnote omitted); *see also United States v. Binder*, 769 F.2d 595, 602 (9th Cir.1985) (cited in *Sine*) (holding that expert witness testimony on the credibility of witnesses was impermissible because "[i]t is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience"), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (en banc). So too in this case, it would be difficult for jurors to look past the notion that "a judge called this guy a liar" to actually consider the marginal weight and relevance of the underlying Pounders Incident to the issues in this case.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion *in limine* to exclude the Pounders Incident as impeachment evidence.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: September 3, 2012     By     */s/ Ronald O. Kaye*
                                    RONALD O. KAYE
                                    Attorney for Plaintiff Francisco Carrillo, Jr.