```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                              ---

 4

 5   THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

 6

 7   FRANCISCO CARRILLO,           )
                                   )
 8              Plaintiff,         )
                                   )
 9      vs.                        )   No. CV 11-10310-SVW
                                   )
10                                 )
     COUNTY OF LOS ANGELES, ET AL.,)
11                                 )
                Defendants.        )
12   _____)

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 LOS ANGELES, CALIFORNIA

17                MONDAY, NOVEMBER 26, 2012

18

19                    STATUS CONFERENCE

20

21

22   _____

23            DEBORAH K. GACKLE, CSR, RPR
                 United States Courthouse
24          312 North Spring Street, Room 402A
              Los Angeles, California 90012
25                   (213) 620-1149
```

**APPEARANCES OF COUNSEL:**

**For the Plaintiff:**

    Ronald O. Kaye
    Marilyn Bednarski
    Kaye McLane & Bednarski LLP
    234 East Colorado Boulevard Suite 230
    Pasadena, CA 91101
    626-844-7660
    Fax: 626-844-7670
    Email: mbednarski@kmbllp.com

**For the Defendant:**

    Jin S Choi
    David D Lawrence
    Lawrence Beach Allen and Choi PC
    1600 North Broadway Suite 1010
    Santa Ana, CA 92706
    714-479-0180
    Fax: 714-479-0181
    Email: dlawrence@lbaclaw.com

- - - - -

```
 1            LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 26, 2012;
 2                               1:55 P.M.
 3                               - - - - -
 4
 5            THE CLERK:  Item 2, CV 2011-10310-SVW, Francisco
 6   Carrillo v. County of Los Angeles, et al.
 7            Counsel, please state your appearances.
 8            MR. KAYE:  Good afternoon, Your Honor.  Ronald Kaye
 9   and Marilyn Bednarski appearing on behalf of plaintiff,
10   Francisco Carrillo.
11            MR. LAWRENCE:  Good afternoon, Your Honor.  Dave
12   Lawrence and Jin Choi appearing on behalf of the defendant,
13   Craig Ditsch.
14            THE COURT:  This is a status conference.  The
15   parties, I'm sure, received the court's order.  I'm sorry it
16   was so long in getting to you, but as you can see, there was
17   quite a bit to it, and that's why it took some time.
18            What I wanted to do today was get your thoughts about
19   what the trial would be about.  My inclinations are that the
20   only triable issue is what happened at that lineup, and the
21   reason I say that is that if the jury concludes that there was
22   an impermissibly suggestive lineup and that events at the
23   lineup were not disclosed to defense counsel, and as the order
24   indicates, that would constitute a *Brady* violation, and as a
25   matter of law -- this is something I've thought about without
```

1  having made a conclusion -- it doesn't seem like it's a jury
2  question because the jury -- I mean, it is a jury question as
3  to what happened at the lineup, but if the jury finds for the
4  plaintiff at the -- on the question of the suggestiveness of
5  the lineup and finds a *Brady* violation, then it seems to me the
6  next question is, as the cases define it, would that *Brady*
7  violation cause -- would it prejudice the plaintiff -- who was
8  then the defendant Carrillo -- and as a question of law whether
9  that violation would prejudice him, strikes me as more of a
10 court determination, and furthermore, it might even be
11 susceptible to a plaintiff's summary judgment motion.  I
12 haven't reached a conclusion there, but I don't comprehend how
13 the jury would be asked to determine prejudice.  In this
14 context, it doesn't seem like that's what juries do; they
15 decide facts but not that -- I'm subject to being persuaded
16 otherwise, but that was my thought.
17         Certainly at a minimum there would be a question
18 about the lineup and in that regard, it seems to me the players
19 are -- what was his had name, Ditsch?
20         MR. LAWRENCE:  Yes, Your Honor.
21         THE COURT:  Officer Ditsch, and there was no one else
22 there except Officer Ditsch and the -- and Carrillo, and I
23 think there were four or five other people, but -- witnesses.
24 I don't know if all those witnesses -- I think all of them but
25 one were shown a photo spread.

1          MR. LAWRENCE: They were all --

2          THE COURT: All? But at different times. I remember
3  that only Carrillo was shown a photo spread, and that's, of
4  course, the important one.

5          That's the only photo spread that I think is at issue
6  because the other witnesses claim that they knew who Carrillo
7  selected is because Carrillo told them which photo he selected.
8  I take it there's no dispute that all the I witnesses were
9  shown in the same photo spread; is that correct?

10         MR. LAWRENCE: They were shown the same photo spread.

11         THE COURT: Yes. What was the plaintiff's thought
12 about the -- what I've just said?

13         MR. KAYE: Your Honor, we believe the critical area
14 of inquiry for the jury is going to be the suggestiveness and
15 the manipulation of the photo spread to the witness Scott
16 Turner. The photo spread was the same one that was used.

17         THE COURT: That's what he said, yeah.

18         MR. KAYE: But it was in -- three weeks earlier with
19 another case that they filed against Mr. Carrillo, and the use
20 of that photo spread was misrepresented for 20 years --

21         THE COURT: Why don't you take the lectern because
22 you're saying things have that I have some memory of, but I
23 remember that there was the murder 20 or some years ago.

24         MR. KAYE: Correct.

25         THE COURT: And then the -- and Carrillo was found at

```
 1   the murder scene, correct?
 2            MR. KAYE:  No.
 3            THE COURT:  No?  He was called in, was he?
 4            MR. KAYE:  It was several weeks after --
 5            THE COURT:  Oh, is that right.
 6            MR. KAYE:  -- after the one eyewitness, Scott
 7   Turner, alleges to have been manipulated and coerced --
 8            THE COURT:  Hold it a second.  It was -- I'm getting
 9   a little twisted here -- it was Turner who was shown the photo
10   spread, and Turner picked our your client; is that right?
11            MR. KAYE:  Correct.
12            THE COURT:  And Turner was shown the photo spread a
13   few weeks after the murder.
14            MR. KAYE:  No, he was shown the night of the murder.
15            THE COURT:  The night of the murder.
16            MR. KAYE:  Yes.
17            THE COURT:  What are you referencing now about a
18   photo spread several weeks before the murder?  Why is that
19   relevant?
20            MR. KAYE:  What came out in the habeas was the photo
21   spread used to show Scott Turner and then the other witnesses
22   was actually a photo spread that was created three weeks before
23   the murder, and what --
24            THE COURT:  With regard to a different crime?
25            MR. KAYE:  With a different crime.  That was
```

1  dismissed, and that eyewitness said that she was manipulated in
2  that identification.
3              THE COURT:  I see.  You're just arguing that could be
4  relevant to the trial, and it may be.
5              MR. KAYE:  Right.
6              THE COURT:  All right.  I understand.
7              MR. KAYE:  And so that's the broadening of the motive
8  and the inextricably intertwined.
9              THE COURT:  That might be.  I understand.
10             MR. KAYE:  As for Your Honor's position with regard
11 to -- the key is clearly the suggestiveness and the influence
12 over Mr. Turner.  As to the prejudice issue and whether that
13 was a court decision or a jury decision, one of the elements
14 for the jury instructions is materiality that we assumed was
15 for the jury to decide, but I would defer to Your Honor on
16 that.
17             THE COURT:  Materiality?  I mean, "materiality" and
18 "prejudice" are almost the same thing.
19             MR. KAYE:  Correct, correct.  So the question is
20 would the jury -- would it reduce the confidence in the
21 verdict.
22             THE COURT:  That was the part of the case -- you
23 actually pinpointed my concern.  How do you instruct the jury?
24 Would knowing -- concluding that the lineup was impermissibly
25 suggestive cause you to lack confidence in the verdict?  I

```
 1   mean, it seems so unlike a jury type of question.  That's what
 2   first got me thinking about why is this a jury question.  And,
 3   of course, I was quite surprised -- maybe you were too -- in
 4   researching the questions.  I thought there would be tons of
 5   cases in this area, and there weren't.  I mean, it was kind of
 6   surprising to me that there weren't -- but anyway.  Okay.
 7             What date would you be ready to try the case?
 8             MR. KAYE:  Your Honor, first I'd advise the court
 9   that we set a mediation date with Judge Woehrle for January 8
10   Mr. Lawrence is in trial in a week, and we'd ask the court to
11   defer to that.  Judge Woehrle has been working with the
12   parties --
13             THE COURT:  By the way, I did send her a copy of the
14   summary judgment order, so she has that.
15             MR. KAYE:  Your Honor, as I advised Your Honor in the
16   initial Rule 26 meeting, I have a trial in state court that is
17   absolutely set to go from January 15th to the -- perhaps the
18   second week of March.
19             THE COURT:  Wow.  What kind of case is that?
20             MR. KAYE:  Perhaps Your Honor has heard of it.  It's
21   this -- the city councilmen from the City of Bell are being
22   prosecuted for misappropriation of public funds in state court.
23   It's that big, high-publicity Bell case, but my client is one
24   of the council members and has been severed from the man who
25   gets all the publicity, the chief administrative officer.  But
```

```
 1   still it's a two-month trial in state court.
 2           THE COURT:  Did I hear correctly that you suggested a
 3   date in April?
 4           MR. KAYE:  April 9th.
 5           THE COURT:  All right.  Let's do it April 9th.
 6           MR. KAYE:  Thank you, Your Honor.
 7           THE COURT:  Have a pretrial conference the Monday
 8   before that, the week before.
 9           MR. KAYE:  Is it feasible to have the pretrial
10   conference two weeks before for purposes of --
11           THE COURT:  Wait a second now.  Let me see that
12   again.  You know, probably for a reason I need not get into,
13   the trial will begin probably on the 3rd, not the 2nd, okay?
14           MR. KAYE:  April 3rd, Your Honor.
15           THE COURT:  Yes.  That's a Wednesday.
16           MR. KAYE:  We said April 9th.  Would that be April
17   10th or April 3rd?
18           THE COURT:  Set it for April 9, but it will begin
19   April 10th.
20           MR. KAYE:  Your Honor, can we ask the court to give a
21   pretrial conference two weeks before versus a week.
22           THE COURT:  Yes.
23           MR. KAYE:  Thank you, Your Honor.  That would be on
24   March 25th?
25           THE COURT:  That's okay.
```

```
 1                    MR. KAYE:  Thank you, Your Honor.
 2                    THE COURT:  One word:  Since you mentioned mediation
 3      and so forth, obviously I'm not going to involve myself in any
 4      aspect of the settlement.  Judge Woehrle is particularly well
 5      qualified, but in terms of an approach, I mean, some of the
 6      things I'm saying now are obvious -- if the plaintiff prevails,
 7      the damages will probably be quite heavy.  If the -- but on the
 8      other hand, notwithstanding the ruling, there are obvious
 9      problems with the plaintiff's case.  I mean, I need not get
10      into the order itself -- suggests -- I mean, the recantations
11      20 years later and what struck me -- and this has nothing to do
12      with my ruling -- was that even when Turner in the second trial
13      recanted, he didn't recant because he said that the lineup was
14      impermissibly suggestive, he recanted, for some hard-to-fathom
15      reason, that he met some boys in the neighborhood, and they
16      convinced him that Carrillo wasn't the murderer.
17                    So you would think that if it was the fact that he
18      was led by the nose to pick out Carrillo, he would have said
19      so.  On the other hand, you know, it's one of those cases where
20      there are real -- real hazards for both sides.  So that's my,
21      sort of, overview of the case.  Thank you.
22                    MR. LAWRENCE:  Your Honor, one quick question:  With
23      regard to the pretrial conference, the court's ruling on
24      summary has changed the landscape a bit.  Will we be permitted
25      to redo our motions in limine?
```

```
 1              THE COURT:  Yes.
 2              MR. LAWRENCE:  Thank you.
 3              MR. KAYE:  Your Honor, so jury selection commences on
 4    April 10th?
 5              THE COURT:  Yes.
 6              MR. KAYE:  Thank you, Your Honor.
 7              MR. LAWRENCE:  Thank you, Your Honor.
 8                 (Proceedings concluded at 2:13 p.m.)
 9                            - - - - -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3        I hereby certify that the foregoing is a true and

 4   correct transcript from the stenographic record of

 5   the proceedings in the foregoing matter.

 6

 7                                      December 26, 2012

 8   /S/_____      _____

 9       Deborah K. Gackle                    Date
         Official Court Reporter
10       CSR No. 7106

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| / | |
|---|---|
| /S [1] 12/8 | |

## 0
**0180 [1]** 2/17
**0181 [1]** 2/18

## 1
**1010 [1]** 2/16
**10th [3]** 9/17 9/19 11/4
**11-10310-SVW [1]** 1/9
**1149 [1]** 1/25
**1600 [1]** 2/16
**1:55 P.M [1]** 3/2

## 2
**20 [3]** 5/20 5/23 10/11
**2011-10310-SVW [1]** 3/5
**2012 [3]** 1/17 3/1 12/7
**213 [1]** 1/25
**230 [1]** 2/7
**234 [1]** 2/7
**25th [1]** 9/24
**26 [4]** 1/17 3/1 8/16 12/7
**2:13 [1]** 11/8
**2nd [1]** 9/13

## 3
**312 [1]** 1/24
**3rd [3]** 9/13 9/14 9/17

## 4
**402A [1]** 1/24

## 6
**620-1149 [1]** 1/25
**626-844-7660 [1]** 2/8
**626-844-7670 [1]** 2/9

## 7
**7106 [1]** 12/10
**714-479-0180 [1]** 2/17
**714-479-0181 [1]** 2/18
**7660 [1]** 2/8
**7670 [1]** 2/9

## 9
**90012 [1]** 1/24
**91101 [1]** 2/8
**92706 [1]** 2/17
**9th [3]** 9/4 9/5 9/16

## A
**about [7]** 3/18 3/19 3/25 4/18 5/12 6/17 8/2
**absolutely [1]** 8/17
**actually [2]** 6/22 7/23
**administrative [1]** 8/25
**advise [1]** 8/8
**advised [1]** 8/15
**after [3]** 6/4 6/6 6/13
**afternoon [2]** 3/8 3/11
**again [1]** 9/12
**against [1]** 5/19
**ago [1]** 5/23
**al [2]** 1/10 3/6
**all [8]** 4/24 4/24 5/1 5/2 5/8 7/6 8/25 9/5
**alleges [1]** 6/7
**Allen [1]** 2/16
**almost [1]** 7/18
**Ana [1]** 2/17
**ANGELES [5]** 1/10 1/16 1/24 3/1 3/6
**another [1]** 5/19
**any [1]** 10/3
**anyway [1]** 8/6
**appearances [2]** 2/1 3/7
**appearing [2]** 3/9 3/12
**approach [1]** 10/5
**April [10]** 9/3 9/4 9/5 9/14 9/16 9/16 9/17 9/18 9/19 11/4
**April 10th [2]** 9/19 11/4
**April 3rd [2]** 9/14 9/17
**April 9 [1]** 9/18
**April 9th [2]** 9/5 9/16
**are [8]** 3/19 4/19 6/17 7/18 8/21 10/6 10/8 10/20
**area [2]** 5/13 8/5
**arguing [1]** 7/3
**as [10]** 3/16 3/23 3/24 4/2 4/6 4/8 4/9 7/10 7/12 8/15
**ask [2]** 8/10 9/20
**asked [1]** 4/13
**aspect [1]** 10/4
**assumed [1]** 7/14
**at [9]** 3/20 3/22 4/3 4/4 4/17 5/2 5/5 5/25 11/8

## B
**be [14]**
**Beach [1]** 2/16
**because [5]** 4/2 5/6 5/7 5/21 10/13
**Bednarski [3]** 2/6 2/7 3/9
**been [3]** 6/7 8/11 8/24
**before [6]** 6/18 6/22 9/8 9/8 9/10 9/21
**begin [2]** 9/13 9/18
**behalf [2]** 3/9 3/12
**being [2]** 4/15 8/21
**believe [1]** 5/13
**Bell [2]** 8/21 8/23
**big [1]** 8/23
**bit [2]** 3/17 10/24
**both [1]** 10/20
**Boulevard [1]** 2/7
**boys [1]** 10/15
**Brady [3]** 3/24 4/5 4/6
**broadening [1]** 7/7
**Broadway [1]** 2/16
**but [17]**

## C
**CA [2]** 2/8 2/17
**CALIFORNIA [4]** 1/2 1/16 1/24 3/1
**called [1]** 6/3
**came [1]** 6/20
**can [2]** 3/16 9/20
**CARRILLO [12]** 1/7 3/6 3/10 4/8 4/22 5/3 5/6 5/7 5/19 5/25 10/16 10/18
**case [7]** 5/19 7/22 8/7 8/19 8/23 10/9 10/21
**cases [3]** 4/6 8/5 10/19
**cause [2]** 4/7 7/25
**CENTRAL [1]** 1/2
**Certainly [1]** 4/17
**certify [1]** 12/3
**changed [1]** 10/24
**chief [1]** 8/25
**Choi [3]** 2/15 2/16 3/12
**city [2]** 8/21 8/21
**claim [1]** 5/6
**clearly [1]** 7/11
**client [2]** 6/10 8/23
**coerced [1]** 6/7
**Colorado [1]** 2/7
**commences [1]** 11/3
**comprehend [1]** 4/12
**concern [1]** 7/23
**concluded [1]** 11/8
**concludes [1]** 3/21
**concluding [1]** 7/24
**conclusion [2]** 4/1 4/12
**conference [6]** 1/19 3/14 9/7 9/10 9/21 10/23
**confidence [1]** 7/20 7/25
**constitute [1]** 3/24
**context [1]** 4/14
**convinced [1]** 10/16
**copy [1]** 8/13
**correct [7]** 5/9 5/24 6/1 6/11 7/19 7/19 12/4
**correctly [1]** 9/2
**could [1]** 7/3
**council [1]** 8/24
**councilmen [1]** 8/21
**counsel [3]** 2/1 3/7 3/23
**COUNTY [2]** 1/10 3/6
**course [2]** 5/4 8/3
**court [10]** 1/1 4/10 7/13 8/8 8/10 8/16 8/22 9/1 9/20 12/9
**court's [2]** 3/15 10/23
**Courthouse [1]** 1/23
**Craig [1]** 3/13
**created [1]** 6/22
**crime [2]** 6/24 6/25
**critical [1]** 5/13
**CSR [2]** 1/23 12/10
**CV [2]** 1/9 3/5

## D
**damages [1]** 10/7
**date [4]** 8/7 8/9 9/3 12/9
**Dave [1]** 3/11
**David [1]** 2/15
**DEBORAH [2]** 1/23 12/9
**December [1]** 12/7
**decide [2]** 4/15 7/15
**decision [2]** 7/13 7/13
**defendant [3]** 2/13 3/12 4/8
**Defendants [1]** 1/11
**defense [1]** 3/23
**defer [2]** 7/15 8/11
**define [1]** 4/6
**determination [1]** 4/10
**determine [1]** 4/13
**did [2]** 8/13 9/2
**didn't [1]** 10/13
**different [3]** 5/2 6/24 6/25
**disclosed [1]** 3/23
**dismissed [1]** 7/1
**dispute [1]** 5/8
**DISTRICT [3]** 1/1 1/2 1/5
**Ditsch [4]** 3/13 4/19 4/21 4/22
**dlawrence [1]** 2/18
**do [5]** 3/18 4/14 7/23 9/5 10/11
**doesn't [2]** 4/1 4/14
**don't [3]** 4/12 4/24 5/21

## E
**earlier [1]** 5/18
**East [1]** 2/7
**elements [1]** 7/13
**else [1]** 4/21
**Email [2]** 2/9 2/18
**et [2]** 1/10 3/6
**even [2]** 4/10 10/12
**events [1]** 3/22
**except [1]** 4/22
**eyewitness [2]** 6/6 7/1

## F
**fact [1]** 10/17
**facts [1]** 4/15
**fathom [1]** 10/14
**Fax [2]** 2/9 2/18
**feasible [1]** 9/9
**few [1]** 6/13

## F

filed [1] 5/19
finds [2] 4/3 4/5
first [2] 8/2 8/8
five [1] 4/23
foregoing [2] 12/3 12/5
forth [1] 10/3
found [1] 5/25
four [1] 4/23
FRANCISCO [3] 1/7 3/5 3/10
funds [1] 8/22
furthermore [1] 4/10

## G

GACKLE [2] 1/23 12/9
get [3] 3/18 9/12 10/9
gets [1] 8/25
getting [2] 3/16 6/8
give [1] 9/20
go [1] 8/17
going [2] 5/14 10/3
Good [2] 3/8 3/11
got [1] 8/2

## H

habeas [1] 6/20
had [1] 4/19
hand [2] 10/8 10/19
happened [2] 3/20 4/3
hard [1] 10/14
hard-to-fathom [1] 10/14
has [6] 8/11 8/14 8/20 8/24 10/11 10/24
have [7] 5/22 5/22 6/7 8/16 9/7 9/9 10/18
haven't [1] 4/12
having [1] 4/1
hazards [1] 10/20
he [11] 5/7 5/17 6/3 6/3 6/14 10/13 10/13 10/14 10/15 10/17 10/18
hear [1] 9/2
heard [1] 8/20
heavy [1] 10/7
her [1] 8/13
here [1] 6/9
hereby [1] 12/3
high [1] 8/23
high-publicity [1] 8/23
him [2] 4/9 10/16
his [1] 4/19
Hold [1] 6/8
Honor [18]
Honor's [1] 7/10
HONORABLE [1] 1/5
how [2] 4/12 7/23

## I

I'd [1] 8/8
I'm [6] 3/15 3/15 4/15 6/8 10/3 10/6
I've [2] 3/25 5/12
identification [1] 7/2
if [6] 3/21 4/3 4/24 10/6 10/7 10/17
impermissibly [3] 3/22 7/24 10/14
important [1] 5/4
in [25]
inclinations [1] 3/19
indicates [1] 3/24
inextricably [1] 7/8
influence [1] 7/11
initial [1] 8/16
inquiry [1] 5/14
instruct [1] 7/23
instructions [1] 7/14
intertwined [1] 7/8
into [2] 9/12 10/10
involve [1] 10/3
is [24]
issue [3] 3/20 5/5 7/12
it [27]
it's [5] 4/1 8/20 8/23 9/1 10/19
Item [1] 3/5
itself [1] 10/10

## J

January [2] 8/9 8/17
January 15th to [1] 8/17
January 8 [1] 8/9
Jin [2] 2/15 3/12
JUDGE [4] 1/5 8/9 8/11 10/4
judgment [2] 4/11 8/14
juries [1] 4/14
jury [15]
just [2] 5/12 7/3

## K

Kaye [3] 2/6 2/7 3/8
key [1] 7/11
kind [2] 8/5 8/19
kmbllp.com [1] 2/9
knew [1] 5/6
know [3] 4/24 9/12 10/19
knowing [1] 7/24

## L

lack [1] 7/25
landscape [1] 10/24
later [1] 10/11
law [2] 3/25 4/8
Lawrence [4] 2/15 2/16 3/12 8/10
lbaclaw.com [1] 2/18
lectern [1] 5/21
led [1] 10/18
Let [1] 9/11
Let's [1] 9/5
like [2] 4/1 4/14
limine [1] 10/25
lineup [8] 3/20 3/22 3/23 4/3 4/5 4/18 7/24 10/13
little [1] 6/9
LLP [1] 2/7
long [1] 3/16
LOS [5] 1/10 1/16 1/24 3/1 3/6

## M

made [1] 4/1
man [1] 8/24
manipulated [2] 6/7 7/1
manipulation [1] 5/15
March [2] 8/18 9/24
March 25th [1] 9/24
Marilyn [2] 2/6 3/9
materiality [3] 7/14 7/17 7/17
matter [2] 3/25 12/5
may [1] 7/4
maybe [1] 8/3
mbednarski [1] 2/9
McLane [1] 2/7
me [7] 4/5 4/9 4/18 8/2 8/6 9/11 10/11
mean [7] 4/2 7/17 8/1 8/5 10/5 10/9 10/10
mediation [2] 8/9 10/2
meeting [1] 8/16
members [1] 8/24
memory [1] 5/22
mentioned [1] 10/2
met [1] 10/15
might [2] 4/10 7/9
minimum [1] 4/17
misappropriation [1] 8/22
misrepresented [1] 5/20

MONDAY [3] 1/17 3/1 9/7
month [1] 9/1
more [1] 4/9
motion [1] 4/11
motions [1] 10/25
motive [1] 7/7
Mr [1] 7/12
Mr. [2] 5/19 8/10
Mr. Carrillo [1] 5/19
Mr. Lawrence [1] 8/10
murder [7] 5/23 6/1 6/13 6/14 6/15 6/18 6/23
murderer [1] 10/16
my [6] 3/19 4/16 7/23 8/23 10/12 10/20
myself [1] 10/3

## N

name [1] 4/19
need [2] 9/12 10/9
neighborhood [1] 10/15
next [1] 4/6
night [2] 6/14 6/15
no [7] 1/9 4/21 5/8 6/2 6/3 6/14 12/10
North [2] 1/24 2/16
nose [1] 10/18
not [6] 3/23 4/15 9/12 9/13 10/3 10/9
nothing [1] 10/11
notwithstanding [1] 10/8
NOVEMBER [2] 1/17 3/1
now [3] 6/17 9/11 10/6

## O

obvious [2] 10/6 10/8
obviously [1] 10/3
officer [3] 4/21 4/22 8/25
Official [1] 12/9
Oh [1] 6/5
okay [3] 8/6 9/13 9/25
on [10] 3/9 3/12 4/4 7/15 9/13 9/23 10/7 10/19 10/23 11/3
one [10] 4/21 4/25 5/4 5/16 6/6 7/13 8/23 10/2 10/19 10/22
only [3] 3/20 5/3 5/5
or [4] 4/23 5/23 7/13 9/17
order [4] 3/15 3/23 8/14 10/10
other [5] 4/23 5/6 6/21 10/8 10/19
otherwise [1] 4/16
our [2] 6/10 10/25
out [2] 6/20 10/18
over [1] 7/12
overview [1] 10/21

## P

p.m [2] 3/2 11/8
part [1] 7/22
particularly [1] 10/4
parties [2] 3/15 8/12
Pasadena [1] 2/8
PC [1] 2/16
people [1] 4/23
perhaps [2] 8/17 8/20
permitted [1] 10/24
persuaded [1] 4/15
photo [14]
pick [1] 10/18
picked [1] 6/10
pinpointed [1] 7/23
plaintiff [6] 1/8 2/4 3/9 4/4 4/7 10/6
plaintiff's [3] 4/11 5/11 10/9
players [1] 4/18
please [1] 3/7
position [1] 7/10
prejudice [5] 4/7 4/9 4/13 7/12 7/18
PRESIDING [1] 1/5
pretrial [4] 9/7 9/9 9/21 10/23

## P

prevails [1]  10/6
probably [3]  9/12 9/13 10/7
problems [1]  10/9
proceedings [3]  1/15 11/8 12/5
prosecuted [1]  8/22
public [1]  8/22
publicity [2]  8/23 8/25
purposes [1]  9/10

## Q

qualified [1]  10/5
question [10]  4/2 4/2 4/4 4/6 4/8 4/17 7/19 8/1 8/2 10/22
questions [1]  8/4
quick [1]  10/22
quite [3]  3/17 8/3 10/7

## R

reached [1]  4/12
ready [1]  8/7
real [2]  10/20 10/20
reason [3]  3/21 9/12 10/15
recant [1]  10/13
recantations [1]  10/10
recanted [2]  10/13 10/14
received [1]  3/15
record [1]  12/4
redo [1]  10/25
reduce [1]  7/20
referencing [1]  6/17
regard [4]  4/18 6/24 7/10 10/23
relevant [2]  6/19 7/4
remember [2]  5/2 5/23
Reporter [1]  12/9
REPORTER'S [1]  1/15
researching [1]  8/4
right [5]  6/5 6/10 7/5 7/6 9/5
Ronald [2]  2/6 3/8
Room [1]  1/24
RPR [1]  1/23
Rule [1]  8/16
Rule 26 [1]  8/16
ruling [3]  10/8 10/12 10/23

## S

said [6]  5/12 5/17 7/1 9/16 10/13 10/18
same [4]  5/9 5/10 5/16 7/18
Santa [1]  2/17
say [1]  3/21
saying [2]  5/22 10/6
scene [1]  6/1
Scott [3]  5/15 6/6 6/21
second [4]  6/8 8/18 9/11 10/12
see [3]  3/16 7/3 9/11
seem [2]  4/1 4/14
seems [3]  4/5 4/18 8/1
selected [2]  5/7 5/7
selection [1]  11/3
send [1]  8/13
set [3]  8/9 8/17 9/18
settlement [1]  10/4
several [2]  6/4 6/18
severed [1]  8/24
she [2]  7/1 8/14
show [1]  6/21
shown [7]  4/25 5/3 5/9 5/10 6/9 6/12 6/14
sides [1]  10/20
Since [1]  10/2
so [10]  3/16 7/7 7/19 8/1 8/14 10/3 10/17 10/19 10/20 11/3
some [6]  3/17 5/22 5/23 10/5 10/14 10/15
something [1]  3/25

sorry [1]  3/15
sort [1]  10/21
spread [13]
Spring [1]  1/24
state [4]  3/7 8/16 8/22 9/1
STATES [2]  1/1 1/23
status [2]  1/19 3/14
stenographic [1]  12/4
STEPHEN [1]  1/5
still [1]  9/1
Street [1]  1/24
strikes [1]  4/9
struck [1]  10/11
subject [1]  4/15
suggested [1]  9/2
suggestive [3]  3/22 7/25 10/14
suggestiveness [3]  4/4 5/14 7/11
suggests [1]  10/10
Suite [2]  2/7 2/16
summary [3]  4/11 8/14 10/24
sure [1]  3/15
surprised [1]  8/3
surprising [1]  8/6
susceptible [1]  4/11
SVW [2]  1/9 3/5

## T

take [2]  5/8 5/21
terms [1]  10/5
Thank [7]  9/6 9/23 10/1 10/21 11/2 11/6 11/7
that [56]
that's [10]  3/17 4/14 5/3 5/5 5/17 7/7 8/1 9/15 9/25 10/20
them [2]  4/24 5/7
then [4]  4/5 4/8 5/25 6/21
there [13]
there's [1]  5/8
they [6]  4/14 5/1 5/6 5/10 5/19 10/15
thing [1]  7/18
things [2]  5/22 10/6
think [4]  4/23 4/24 5/5 10/17
thinking [1]  8/2
this [7]  3/14 3/25 4/13 8/2 8/5 8/21 10/11
those [2]  4/24 10/19
thought [4]  3/25 4/16 5/11 8/4
thoughts [1]  3/18
three [2]  5/18 6/22
time [1]  3/17
times [1]  5/2
today [1]  3/18
told [1]  5/7
tons [1]  8/4
too [1]  8/3
took [1]  3/17
transcript [2]  1/15 12/4
triable [1]  3/20
trial [7]  3/19 7/4 8/10 8/16 9/1 9/13 10/12
true [1]  12/3
try [1]  8/7
Turner [8]  5/16 6/7 6/9 6/10 6/12 6/21 7/12 10/12
twisted [1]  6/9
two [3]  9/1 9/10 9/21
two-month [1]  9/1
type [1]  8/1

## U

U.S [1]  1/5
understand [2]  7/6 7/9
UNITED [2]  1/1 1/23
unlike [1]  8/1
use [1]  5/19
used [2]  5/16 6/21

## V

verdict [2]  7/21 7/25
versus [1]  9/21
violation [4]  3/24 4/5 4/7 4/9

## W

Wait [1]  9/11
wanted [1]  3/18
was [39]
wasn't [1]  10/16
way [1]  8/13
we [6]  5/13 7/14 8/9 9/16 9/20 10/24
we'd [1]  8/10
Wednesday [1]  9/15
week [4]  8/10 8/18 9/8 9/21
weeks [7]  5/18 6/4 6/13 6/18 6/22 9/10 9/21
well [1]  10/4
were [7]  3/23 4/23 4/25 5/1 5/8 5/10 8/3
weren't [2]  8/5 8/6
what [16]
when [1]  10/12
where [1]  10/19
whether [2]  4/8 7/12
which [1]  5/7
who [4]  4/7 5/6 6/9 8/24
why [4]  3/17 5/21 6/18 8/2
will [4]  9/13 9/18 10/7 10/24
WILSON [1]  1/5
without [1]  3/25
witness [1]  5/15
witnesses [5]  4/23 4/24 5/6 5/8 6/21
Woehrle [3]  8/9 8/11 10/4
word [1]  10/2
working [1]  8/11
would [17]
Wow [1]  8/19

## Y

yeah [1]  5/17
years [3]  5/20 5/23 10/11
Yes [7]  4/20 5/11 6/16 9/15 9/22 11/1 11/5
you [21]
you're [2]  5/22 7/3
your [22]