1   DAVID D. LAWRENCE, ESQ. [State Bar No. 123039]
    dlawrence@lbaclaw.com
2   JIN S. CHOI, ESQ. [State Bar No. 180270]
    jchoi@lbaclaw.com
3   DANIEL S. CHA, ESQ. [State Bar No. 260256]
    Email: dcha@lbaclaw.com
4   LAWRENCE BEACH ALLEN & CHOI, PC
    E-Mail: courtemails@lbaclaw.com
5   LAWRENCE BEACH ALLEN & CHOI, PC
    100 West Broadway, Suite 1200
6   Glendale, California 91210-1219
    Telephone No. (818) 545-1925
7   Facsimile No.  (818) 545-1937

8   Attorneys for Defendants, COUNTY OF LOS ANGELES and CRAIG DITSCH

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  FRANCISCO CARRILLO, JR.,            ) Case No. CV 11-10310 SVW (AGRx)
                                        )
14          Plaintiff,                  ) Honorable Stephen V. Wilson
                                        )
15      vs.                             ) **MOTION *IN LIMINE* NO. 14**
                                        )
16  COUNTY OF LOS ANGELES;              ) **DEFENDANT CRAIG DITSCH'S**
    CRAIG DITSCH; AND DOES 1-10,        ) **NOTICE OF MOTION AND MOTION**
17  INCLUSIVE;                          ) ***IN LIMINE* NO. 14 TO EXCLUDE**
                                        ) **THE TESTIMONY OF GARY L.**
18          Defendants.                 ) **WELLS; MEMORANDUM OF**
                                        ) **POINTS AND AUTHORITIES;**
19  ─────────────────────────────      ) **DECLARATION OF DANIEL S. CHA**
                                        ) **WITH EXHIBITS**
20
                                        *[[Proposed] Order submitted*
21                                      *Concurrently Herewith]*

22                                      Trial Date: 3/29/16

23                                      Pre-Trial Conference:
                                        Date:   February 1, 2016
24                                      Time:  3:00 p.m.
                                        Courtroom:  6
25

26

27

28

                                     1
                        MOTION *IN LIMINE* NO. 14

TO THE COURT, ALL INTERESTED PARTIES, AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 1, 2016[1] at 3:00 p.m., or as soon as thereafter as counsel may be heard, in Courtroom 6 of the above-referenced Court located at 312 North Spring Street, Los Angeles, California 90012, Defendant CRAIG DITSCH (hereinafter "Defendant") will and does hereby move this Court for an Order *in limine* excluding testimony from Plaintiff's expert Gary L. Wells.

This Motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed and served herewith, the Declaration of Daniel S. Cha filed and served concurrently herewith, the pleadings, documents and records on file herein, and upon such other further oral or documentary matters as may be presented at the hearing of this motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3.

Respectfully submitted,

DATED: January 4, 2016        LAWRENCE BEACH ALLEN & CHOI, PC


By    /s/ Daniel S. Cha
        DAVID D. LAWRENCE
        JIN S. CHOI
        DANIEL S. CHA
        Attorneys for Defendants,
        COUNTY OF LOS ANGELES
        and CRAIG DITSCH

---

[1] On December 30, 2015, Defendant filed an *ex parte* application to vacate the pretrial conference and trial date due to the Ninth Circuit's December 29, 2015 Order staying of mandate until final disposition of Defendant's petition for writ of certiorari. *See* Docket No. 179. Because the Court has not yet ruled on the application, Defendant files this motion based on the current pretrial conference date out of an abundance of caution, without prejudice to, and hereby expressly reserving, its objection to further proceedings in this Court pending the Ninth Circuit's lifting of the stay of mandate and issuance thereof.

MOTION *IN LIMINE* NO. 14

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.   INTRODUCTION .................................................................................... 1

II.   STANDARD ON MOTION *IN LIMINE* ......................................................... 3

III.   ALLOWING DR. WELLS' TESTIMONY WILL CREATE A FALSE COMPARISON FOR THE JURY BETWEEN WHAT WAS ADMITTED, AND SHOULD HAVE BEEN ADMITTED AT HIS CRIMINAL TRIAL, AND IS THEREFORE IRRELEVANT AND PREJUDICIAL ............................................ 3

IV.   DR. WELLS' TESTIMONY IS UNHELPFUL AND UNRELIABLE, AND THEREFORE MUST BE EXCLUDED UNDER *DAUBERT* AND FEDERAL RULE OF EVIDENCE 702 ......................................................................... 5

   A.   Dr. Wells' Testimony Would Not Assist The Jury; Rather, It Would Impermissibly Invade The Exclusive Province Of The Jury ............................... 6

   B.   Dr. Wells' Opinions Are Unreliable And Lack Sufficient Foundation ....... 8

   C.   Dr. Wells' Testimony Is An Impermissible Attempted End-Run Around The Prohibition on Expert Testimony As To Witnesses' Credibility ............... 10

   D.   Dr. Wells' Opinions Are A Stealth Delivery Device For Injecting Inadmissible Evidence Regarding The Habeas Proceedings And Findings And Dr. Fraser's Inadmissible Opinions ................................................................ 10

   E.   Dr. Wells' Statistical Opinion About The Likelihood Of Eyewitnesses' Identifying Plaintiff Lacks Foundation And Is Nonsensical ............................. 11

V.   DR. WELLS' TESTIMONY IS LIKELY TO MISLEAD AND CONFUSE THE JURY ............................................................................................. 13

VI.   CONCLUSION ..................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Brady v. Maryland*

    373 U.S. 83 (1963) ........................................................................ 1, 4, 14

*Branion v. Grambly*

    855 F.2d 1256 (7th Cir. 1988) ........................................................ 12, 13

*Carter v. Hewitt*

    617 F.2d 961 (3d Cir. 1980) .................................................................. 13

*Daniels v. Williams*

    474 U.S. 327, 333-334 (1986) ................................................................. 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*

    509 U.S. 579 (1993) ...................................................................... 6, 8, 12

*Grant v. City of Long Beach*

    315 F.3d 1081 (9th Cir. 2002) .................................................................. 4

*Huddleston v. U.S.*

    485 U.S. 681 (1988) ............................................................................... 3

*Kumho Tire Co. v. Carmichael*

    526 U.S. 137 (1999) ............................................................................... 6

*Luce v. United States*

    469 U.S. 38 (1984) ................................................................................. 3

*McEwen v. Norman*

    926 F.2d 1539 (10th Cir. 1991) .............................................................. 3

*Ohler v. United States*

    529 U.S. 753 (2000) ............................................................................... 3

*Simmons v. United States*

    390 U.S. 377 (1968) .................................................................... 1, 3, 4, 14

**Page**

*Smith v. Almada*

   640 F.3d 931 (9th Cir. 2011)....................................................................4

*Tennison v. City and County of San Francisco*

   570 F.3d 1078 (9th Cir. 2008)................................................................4

*U.S. v. Amaral*

   488 F.2d 1148 (9th Cir. 1973).............................................................7, 14

*U.S. v. Binder*

   769 F.2d 595 (9th Cir. 1985)...............................................................10

*U.S. v. Cristophe*

   833 F.2d 1296 (9th Cir. 1987).................................................................6

*U.S. v. Jones*

   689 F.3d 12 (1st Cir. 2012) ...............................................................7, 14

*U.S. v. Kime*

   99 F.3d 870 (8th Cir. 1996)................................................................8, 14

*U.S. v. Labansat*

   94 F.3d 527 (9th Cir. 1996)....................................................................7

*U.S. v. Owens*

   445 Fed.Appx. 209 (11th Cir. 2011) .....................................................8

*U.S. v. Rahm*

   993 F.2d 1405 (9th Cir. 1993).................................................................6

*U.S. v. Rodriguez-Felix*

   450 F.3d 1117 (10th Cir. 2006)...............................................................7

*U.S. v. Sims*

   617 F.2d 1371 (9th Cir. 1980)..............................................................6, 7

*United States v. Cook*

   608 F.2d 1175 (9th Cir. 1979)................................................................3

**Page**

*United States v. Langford*
  802 F.2d 1176 (9th Cir. 1986)..................................................................7

*United States v. Morales*
  108 F.3d 1031 (9th Cir.1997)..............................................................10

*United States v. Rincon*
  28 F.3d 921 (9th Cir. 1994)...........................................................*passim*

*United States v. Sandoval-Mendoza*
  472 F.3d 645 (9th Cir. 2006)..................................................................6

**Statutes**

42 U.S.C. § 1983.......................................................................................1

Federal Rules of Evidence, Rule 401 ......................................................3

Federal Rules of Evidence, Rule 402 ......................................................3

Federal Rules of Evidence, Rule 403 ...........................................5, 13, 14

Federal Rules of Evidence, Rule 702 ...............................................5, 6, 8

Federal Rules of Evidence, Rule 702(a)...................................................6

Federal Rules of Evidence, Rule 702(b)...................................................8

Federal Rules of Evidence, Rule 702(c)...................................................8

Federal Rules of Evidence, Rule 702(d)...................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiff Francisco Carrillo, Jr. ("Plaintiff") was arrested and prosecuted for murder in 1991, and convicted in 1992.  Plaintiff's murder conviction was based on the testimony of five eyewitnesses who identified him as the shooter in a drive-by-shooting.  Another eyewitness, Scott Turner ("Turner"), testified that Plaintiff was not the shooter after originally identifying Plaintiff at the time of the incident. Plaintiff's conviction was vacated in March 2011 when his state habeas corpus petition was granted based primarily on the recantation of eyewitness statements.  In this 42 U.S.C. § 1983 action, Plaintiff alleges various constitutional violations by Defendant Craig Ditsch ("Defendant"), who in 1991 was a deputy gang investigator with the Los Angeles County Sheriff's Department.

On November 14, 2012, this Court entered an order granting in part and denying in part Defendant's Motion for Summary Judgment.  (*See*, November 14, 2012 Order [Docket No. 128].)  Two claims survived:  (1) Plaintiff's claim that Defendant carried out an overly suggestive identification procedure with eyewitness Turner within hours of the January 18, 1991 shooting, in violation of *Simmons v. United States*, 390 U.S. 377 (1968); and (2) Plaintiff's claim that Defendant failed to disclose his unconstitutional identification procedure to the prosecutor, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (*See*, Docket No. 128, at pg. 19.)

Plaintiff alleges that Defendant manipulated Turner into selecting Plaintiff's photograph from the gang photo book and photo "six-pack" in violation of *Simmons*, and that Defendant violated Plaintiff's rights under *Brady* by failing to disclose this alleged misconduct to the prosecutor.  The "six-pack" shown to Mr. Turner was also utilized in another unrelated action, meaning the pictures of the individuals and order were the same in both six-packs.

Defendant anticipates that Plaintiff will seek to introduce the testimony of expert witness, Gary L. Wells ("Wells"), to discuss the reliability of the eye witness

testimony in this case.  *See* Cha Decl. at ¶ 2, Exhibit "A" [Rule 26 Report of Gary L. Wells].  The opinions and anticipated testimony involve Dr. Wells' social science research into eyewitness identification and offers explanations for the witnesses' original, purportedly false identifications of Plaintiff.

Plaintiff should be precluded from bringing such evidence because it is irrelevant, lacks foundation, and is highly prejudicial.  Such evidence is in no way relevant to Plaintiff's remaining claims against Defendant for several reasons. First, the issue of reliability of eye witness testimony was not the subject of expert testimony during the criminal trial in which Plaintiff was convicted.  Plaintiff cannot, in effect, retry the criminal case with "better" or more evidence than what was presented in the original trial.  Second, Dr. Wells' opinions invade the province of the jury, and would be unhelpful to the fact finder.  Third, Dr. Wells' Rule 26 Report reflects insufficient foundation for his opinions – he did not review transcripts of testimony from the preliminary hearing, Plaintiff's first criminal trial that resulted in a hung jury, or Plaintiff's second criminal trial that resulted in his conviction.  Fourth, Dr. Wells' opinions are more an attempt at an end-run around the prohibition against expert testimony as to the credibility of other witnesses. Fifth, Dr. Wells' opinions are a stealth delivery device for introducing inadmissible evidence regarding the habeas proceedings and findings, and Dr. Fraser's opinions (which are addressed separately in Defendant's Motion *in Limine* No. 13); moreover, Dr. Wells lacks the education, training or experience to expound upon the validity of Dr. Fraser's findings or the habeas court's findings.  Sixth, Dr. Wells' purported statistical calculations regarding the likelihood of six positive identifications of Plaintiff lacks foundation and is not sufficiently based on scientific principles to be admitted.

Finally, the limited probative value of the evidence is substantially outweighed by the dangers of unfair prejudice, misleading and confusing the jury,

1   and undue consumption of time and delay.  As such, Defendant respectfully requests

2   that Dr. Wells' testimony be excluded.

3   **II.   STANDARD ON MOTION *IN LIMINE*.**

4        Motions *in limine* are recognized as a proper pretrial request, both in practice

5   and by case law.  *See, Ohler v. United States*, 529 U.S. 753, 758 (2000); *United

6   States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979), *overruled on other grounds in

7   Luce v. United States*, 469 U.S. 38, 40 n. 3 (1984).  Authority for these motions is

8   also derived from the Court's inherent power to manage the course of trials.  *See,

9   Luce*, 469 U.S. at 41.

10       A motion in limine is "any motion, whether made before or during trial, to

11  exclude anticipated prejudicial evidence before the evidence is actually offered."

12  *Luce v. United States*, 469 U.S. 38, 40, n.2 (1984).  The purpose of the motion is to

13  try to avoid the fruitless effort to "unring the bell" if highly prejudicial evidence is

14  offered and then stricken at trial.  *See, McEwen v. Norman*, 926 F.2d 1539, 1548

15  (10th Cir. 1991).

16  **III.   ALLOWING DR. WELLS' TESTIMONY WILL CREATE A FALSE**

17  **COMPARISON FOR THE JURY BETWEEN WHAT WAS**

18  **ADMITTED, AND SHOULD HAVE BEEN ADMITTED AT HIS**

19  **CRIMINAL TRIAL, AND IS THEREFORE IRRELEVANT AND**

20  **PREJUDICIAL.**

21       Evidence may be properly excluded when it is not relevant to the matters at

22  issue.  Fed.R.Evid. Rule 402; *see, Huddleston v. U.S.*, 485 U.S. 681, 682-692

23  (1988). Federal Rules of Evidence Rule 401 establishes that in order for proffered

24  evidence to be relevant, it must have some "tendency to make the existence of any

25  fact that is of consequence to the determination of the action more probable or less

26  probable than it would be without the evidence."  Fed.R.Evid. Rule 401.  To prevail

27  on the *Simmons* claim, Plaintiff must show that the identification resulting in his

28  conviction was (1) the result of impermissibly suggestive techniques; and (2) not

otherwise reliable.  *Grant v. City of Long Beach,* 315 F.3d 1081, 1086 (9th Cir. 2002).  Additionally, to prevail on the *Brady* claim, Plaintiff must show that "(1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government; and (3) the nondisclosure prejudiced the plaintiff."  *Smith v. Almada,* 640 F.3d 931, 939 (9th Cir. 2011).  Because these claims are based on the Fourteenth Amendment's Due Process Clause, Plaintiff must also prove that Defendant Ditsch at least acted with deliberate indifference.  *Daniels v. Williams*, 474 U.S. 327, 333-334 (1986); *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2008).

With respect to the *Brady* claim, to prove that Plaintiff was prejudiced by the nondisclosure, Plaintiff must show that he would not otherwise have been convicted had Defendant disclosed the *Brady* evidence.  Similarly, in order to prove actual damages stemming from the alleged *Simmons* claim, Plaintiff must prove that he would not otherwise have been convicted had the allegedly tainted identification been excluded.  However, during the criminal trial that resulted in Plaintiff's conviction, the issue of whether the lighting was sufficient for the eyewitnesses to identify the shooter was not the subject of any testing or expert testimony.  Since this type of expert testimony and evidence was not presented at the criminal trial, Plaintiff should be excluded from introducing such evidence now as it will prevent the jury from making a valid comparison, i.e., whether the trial, as presented in 1992, would have produced a different result had the jury known about the alleged suggestive identification procedures.

Introducing new expert testimony about eyewitness reliability, testimony that was not offered in the second trial, injects an element that was not considered by the criminal jury that convicted Plaintiff, and precludes the jury in this civil case from making an appropriate factual/legal comparison, i.e., whether introduction of evidence of the alleged suggestive identification procedures would have made a difference in the outcome.  It is also worth noting that Defendant Ditsch played no

part in criminal defense counsel's decision not to offer expert eyewitness reliability testimony to the jury that convicted Plaintiff. Allowing Plaintiff now to try his case with better and more persuasive evidence than was offered in 1992 (the expert eyewitness identification testimony) is highly prejudicial to Defendant Ditsch.

It would be difficult for the jury to parse out Dr. Wells' testimony, and not to include it in its determination as to the impact of the alleged suggestive eyewitness procedures on the outcome of the trial. In other words, if the Court were to allow it into evidence, it would necessarily imply to the jury that it is somehow relevant to a material issue in this case, but on the other hand, the jury would need to be instructed in some manner not to consider it in determining whether a different outcome was likely in Plaintiff's criminal trial. The danger of jury confusion and misleading the jury here substantially outweighs its relevant probative value, if any. *See* Fed.R.Evid. Rule 403.

## IV. DR. WELLS' TESTIMONY IS UNHELPFUL AND UNRELIABLE, AND THEREFORE MUST BE EXCLUDED UNDER *DAUBERT* AND FEDERAL RULE OF EVIDENCE 702.

Dr. Wells' testimony should be excluded under Federal Rules of Evidence, Rule 702 and *Daubert* as such evidence is neither relevant nor reliable. Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

1
2

    (d)   the expert has reliably applied the principles and methods
            to the facts of the case.

3
4
5
6
7
8
9
10

Fed.R.Evid. Rule 702.  Under this Rule, the Court is charged with ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  "Expert opinion testimony is relevant if the knowledge underlying it has a 'valid ... connection to the pertinent inquiry.' And it is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

11
12

    **A.**    **<u>Dr. Wells' Testimony Would Not Assist The Jury; Rather, It Would Impermissibly Invade The Exclusive Province Of The Jury.</u>**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

    First, under Federal Rules of Evidence, Rule 702(a), it is necessary that the expert's testimony and/or "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue…"  Fed.R.Evid. Rule 702(a).  Dr. Wells' anticipated testimony is not properly admissible expert testimony because it is not beyond common experience and not helpful to the finder of fact.  *See U.S. v. Rahm*, 993 F.2d 1405, 1414 (9th Cir. 1993) (psychologist permitted to testify as to defendant's perceptual difficulties based on specific testing of defendant; contrasted with "general human deficiencies that the jury could understand from their own experience"); *U.S. v. Cristophe*, 833 F.2d 1296, 1299-1300 (9th Cir. 1987) (affirming exclusion of expert testimony regarding unreliability of eyewitnesses because "skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable").  "The admissibility of this type of expert testimony is strongly disfavored by most courts." *United States v. Sims*, 617 F.2d 1371, 1375 (9th Cir. 1980); *U.S. v. Amaral*, 488

28

F.2d 1148, 1153 (9th Cir. 1973) (affirming exclusion of expert regarding reliability of eyewitness identification).

In *United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994), a criminal defendant moved in limine to introduce expert testimony regarding the reliability of eyewitness identifications.  The expert witness would have testified regarding "factors that effect [sic] eyewitness identifications, such as passage of time, stress, identification from the lower half of the face, the relationship between certainty and accuracy, and cross-ethnic identifications." *Id.* at 926.  The district court denied the motion in limine, finding that the proposed testimony "would not assist the trier of fact and that it would likely confuse or mislead the jury." *Id.* at 925. Although the testimony was relevant, and may have been informative, the Ninth Circuit held that the district court's comprehensive instruction on eyewitness identifications was sufficient, and affirmed the exclusion of the expert's testimony. *Id.* at 926; *see also United States v. Langford*, 802 F.2d 1176, 1179 (9th Cir. 1986) ("We have repeatedly upheld the exclusion of [expert testimony concerning eyewitness identification]."); *U.S. v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996) (affirming denial of funds for eyewitness reliability expert because "[a]s [the Ninth Circuit has] previously explained, '[t]he admissibility of this type of expert testimony is strongly disfavored by most courts.'") (quoting *U.S. v. Sims*, 617 F.2d 1371, 1375 (9th Cir. 1980)).

Most other jurisdictions similarly disfavor the admissibility of expert testimony regarding eyewitness reliability on the ground that such evidence is not helpful to the trier of fact.  *See U.S. v. Jones*, 689 F.3d 12, 20 (1st Cir. 2012) (affirming District Court's use of jury instructions as opposed to allowing expert testimony to apprise jury of potential factors affecting reliability of eyewitness testimony); *U.S. v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006) ("But outside... specialized circumstances, expert psychological testimony is unlikely to assist the jury – skillful cross-examination provides an equally, if not more effective

tool for testing the reliability of an eyewitness at trial.... Jurors, assisted by skillful cross-examination, are quite capable of using their common-sense and faculties of observation to make this reliability determination."); *U.S. v. Owens*, 445 Fed.Appx. 209, 216 (11th Cir. 2011) ("We have consistently looked unfavorably on expert testimony about eyewitness reliability...."). The Eighth Circuit has specifically affirmed exclusion, under *Daubert* and Federal Rule of Evidence 702, of Plaintiff's expert Dr. Wells on this ground. *U.S. v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) ("The evaluation of eyewitness testimony is for the jury alone.... We believe the jury, as the trier of fact, to have been fully capable of gauging [the witness's] credibility without the aid of an expert.").

The reason courts, including the Ninth Circuit, are reluctant to admit eyewitness reliability testimony is that it goes to the heart of the jury function to evaluate and decide upon the credibility of witnesses, and threatens to usurp that role based on potential undue weight attached to supposed expert testimony. "'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.'" *United States v. Rincon*, 28 F.3d at 925 (quoting *Daubert*, 509 U.S. at 595). "Given the powerful nature of expert testimony, coupled with its potential to mislead the jury, we cannot say that the district court erred in concluding that the proffered evidence would not assist the trier of fact." *Id.* at 926.

**B.**     **Dr. Wells' Opinions Are Unreliable And Lack Sufficient Foundation.**

Likewise, such testimony is also unreliable. Under Federal Rules of Evidence, Rule 702, the testimony must also be "based on sufficient facts or data..." and "the product of reliable principles and methods... reliably applied... to the facts of the case." Fed.R.Evid. Rule 702(b), (c) and (d). In Dr. Wells' Rule 26 Report, Dr. Wells listed the following items he reviewed in formulating his opinions:

   a.  The Murder Book reflecting the Police reports;

   b.  The Findings of the Superior Court Judge;

1    c.  The Transcript of the Habeas Hearing;

2    d.  The Declarations of the Eyewitnesses'

3    e.  The Report of Dr. Scott Fraser

4    *See* Exhibit "A" at p.2.  Noticeably absent from this list is the foundational evidence

5    that is at issue in this case, the testimony of the eyewitnesses at Plaintiff's second

6    criminal trial, in which he was convicted.  For that matter, also absent are the

7    testimony of the eyewitnesses at the preliminary hearing and first criminal trial.  Dr.

8    Wells in essence presupposes from the start that the eyewitnesses made false

9    identifications without any examination of their testimony in 1992, closer in time

10   than the habeas proceedings and declarations, regarding the circumstances in which

11   they made their identifications of Plaintiff.

12       An example of the effect this lack of foundation has on Dr. Wells' opinions is

13   where Dr. Wells' Rule 26 report discusses the unreliability of the other (non-Turner)

14   eyewitnesses' identifications, and he asserts "The investigators should have told

15   Turner to not talk to any other witnesses...."  *See* Exhibit "A" at p. 11.  However, if

16   Dr. Wells had reviewed the transcripts from the criminal trial, he would have seen

17   that Turner testified that he indeed was told not to tell anyone whom he had

18   identified.  *See* Cha Decl. at ¶ 3; Exhibit "B" [Transcript of Testimony at Second

19   Criminal Trial on June 23, 1992] at 288:27-289:1, 314:25-315:17.

20       As another example, Dr. Wells notes that Turner's identification of Carrillo

21   was undermined by his assertion that he saw Plaintiff in or near Lynwood High

22   School, though the Plaintiff was never a student and it is a secure campus.  *See*

23   Exhibit "A" at p. 11.  However, the school administrator testified he is "sure it

24   happens" that unauthorized individuals get on to campus and there is no i.d. check

25   after school session is over.  *See* Exhibit "C" [Transcript of Testimony at Second

26   Criminal Trial on June 25, 1992] at 501:26-504:9.  Moreover, after Plaintiff testified

27   at his second trial that he never talked to friends in front of Lynwood High School,

28

Plaintiff was impeached by his testimony at his first criminal trial, that he did stop to talk to friends in front of Lynwood High School.  *See* Exhibit "C" at 589:11-589:21.

These examples demonstrate the foundational abyss caused by Dr. Wells' ignorance of the criminal trial testimony, and undermines the reliability of his opinions with regard to the validity of the eyewitnesses' identifications in this case. For this reason as well, his testimony should be excluded.

**C.    Dr. Wells' Testimony Is An Impermissible Attempted End-Run Around The Prohibition on Expert Testimony As To Witnesses' Credibility**.

Dr. Wells' testimony simply amounts to an impermissible attempted end-run around the prohibition on expert testimony as to witnesses' credibility.  *U.S. v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (holding expert testimony impermissible when it "in effect ... impermissibly ... asked [the jury] to accept an expert's determination that these particular witnesses were truthful" because "[i]t is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience"), overruled on other grounds by *United States v. Morales,* 108 F.3d 1031 (9th Cir.1997) (en banc).  In other words, Dr. Wells' testimony would simply be telling the jury not to believe the witnesses' 1991 and 1992 testimony, and to believe their recantations instead.  The sum of his Rule 26 Report amounts to argument, couched as expert opinion.

**D.    Dr. Wells' Opinions Are A Stealth Delivery Device For Injecting Inadmissible Evidence Regarding The Habeas Proceedings And Findings And Dr. Fraser's Inadmissible Opinions.**

Separate Motions *in Limine* address the inadmissibility of the habeas court's findings and conclusions, as well as Dr. Fraser's purported expert opinions on the lighting conditions and effects on eyewitness identifications.  This court has also already determined that the habeas court's findings and conclusions are inadmissible in its rulings on summary judgment.  In Dr. Wells' Rule 26 Report, Dr. Wells

specifically notes, adopts, and purports to concur with Dr. Fraser's opinions and the habeas court's field trip and conclusions regarding the lighting conditions.  At the very least, to the extent that this Court grants the other motions and excludes the habeas proceedings and findings and Dr. Fraser's opinions, Dr. Wells should similarly be excluded from reference to those matters in expressing his own opinions.

Moreover, Dr. Wells is not competent to concur with Dr. Fraser's opinions regarding the witnesses' physiological ability to identify Plaintiff as the shooter.  Dr. Wells is a psychologist with experience regarding social science experiments.  There is no indication that he has any education, training, or experience regarding the measurement of illumination or the human physiological abilities to perceive and identify faces in different illumination.

**E.** **Dr. Wells' Statistical Opinion About The Likelihood Of Eyewitnesses' Identifying Plaintiff Lacks Foundation And Is Nonsensical.**

At the end of the Rule 26 Report, Dr. Wells vaguely refers to "Controlled laboratory experiments" that purport to show that "the most commonly identified person from a photo-lineup is identified by only 50% of the witnesses."  *See* Exhibit "A" at p. 12.  He also makes a vague reference to "studies of actual eyewitnesses... collected in California, Arizona, Texas, North Carolina, and London (England)."  *Id.* He goes on to posit that "for any two witnesses the chance that two out of two will identify the same person is only 25% (50% X 50%)."  *Id.*  He concludes that the likelihood of six out of six witnesses to identify the same person is less than 1%, even if they are identifying the actual culprit in good conditions.  *Id.*

The stark lack of specific reference to the experiments and field studies to which he is referring fails the *Daubert* test of scientific knowledge.  *U.S. v. Rincon*, 28 F.3d at 924-925 (affirming exclusion eyewitness reliability testimony where foundation consisted of vague statements such as "There is a wealth of research

supporting this point..." and "The research is clear..."). The Ninth Circuit noted that "none of the research as submitted or described so that the district court could determine if the studies were indeed scientific on the bases the Court explained in *Daubert*: 'whether the reasoning or methodology underlying the testimony is scientifically valid....'" *Id.* at 924 (quoting *Daubert*, 509 U.S. at 592-593. There are no details attached to the experiments and studies on which Dr. Wells bases his figures to establish that their findings are applicable to this case and scientifically valid – there is no mention of whether they involved witnesses who professed to have had prior exposure to the person identified as in this case, for example.

Moreover, Dr. Wells' conclusion is nonsensical. It renders corroborating eyewitness identifications de facto *less* reliable than if there were only a single eyewitness identification. "This error should put us in mind of an example suggested by Condorcet: a lottery may have a million possible number combinations, so when the proprietor of the lottery announces that the winning combination is such-and-such, the probability that this is indeed the winning combination is one in a million. Conclusion: the proprietor is lying." *Branion v. Grambly*, 855 F.2d 1256, 1264 (7th Cir. 1988).

> Every event, if specified in detail, is extremely improbable; indeed, with *enough* detail it is unique in the history of the universe. It is always possible to take some probabilities, small to start with, and multiply them for effect. In order to avoid the errors produced by mindless multiplication, the statistician must specify with care what we should expect to find if the event in which we are interested has occurred, and what we should expect to find if it has not. Next we must develop criteria that might differentiate the one from the other. Only then can we begin to assess probabilities.

*Id.* at 1264 (emphasis in original). In *Branion*, the court further provided this example:

1        Imagine a defendant seeking a writ of habeas corpus with this

2        argument: "Twenty witnesses testified for me, and although the

3        probability that any one of them was lying may have been 0.9, the

4        probability that every one of them was lying was $(0.9)^{20}$, or 0.12,

5        so I must be innocent." Such a maneuver... assumes that the events

6        are independent, when they are not.

7  *Id.* at 1265. Dr. Wells' statistical extrapolation is a materially indistinguishable

8  flipside of the example provided by Judge Easterbrook in *Branion*.   It lacks

9  foundation and is a false and misleading application of statistics to this case.  It

10  should be excluded.

11  **V.**    **DR. WELLS' TESTIMONY IS LIKELY TO MISLEAD AND**

12         **CONFUSE THE JURY.**

13        Even if this testimony were deemed relevant, the Federal Rules of Evidence

14  still bar the admissibility of the evidence at issue in the instant motion *in limine*.

15  "Although relevant, evidence may be excluded if its probative value is substantially

16  outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

17  the jury, or by considerations of undue delay, waste of time, or needless presentation

18  of cumulative evidence."  Fed.R.Evid. Rule 403.  Evidence is "unfairly prejudicial,"

19  for the purposes of Fed.R.Evid. Rule 403 if the evidence "appeals to the jury's

20  sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise

21  may cause a jury to base its decision on something other than the established

22  propositions of the case." *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir. 1980)

23  (internal quotations omitted).

24        In conjunction with the fact that most jurisdictions have excluded expert

25  eyewitness reliability testimony on the ground that it is not helpful to the trier of

26  fact, courts have cited the danger of undue prejudice and of confusing and

27  misleading a jury as a further reason to exclude such evidence.  *U.S. v. Rincon*, 28

28  F.3d at 926 ("Given the powerful nature of expert testimony, coupled with its

potential to mislead the jury, the district court did not abuse its discretion in excluding the testimony."); *U.S. v. Kime*, 99 F.3d at 884 ("Here the district court properly recognized the very real danger that the proffered expert testimony could either confuse the jury or cause it to substitute the expert's credibility assessment for its own."  The undue delay occasioned by permitting such testimony, which is not beyond the jury's common sense ability to understand in light of cross-examination and court instruction, further weighs against the introduction of such testimony.  *See U.S. v. Jones*, 689 F.3d 12, 19 (1st Cir. 2012) ("The use of experts creates costs of its own: distraction, multiplication of cost, and the loss of valuable time in stand-offs of dueling experts...."; affirming exclusion of expert testimony in favor of more efficient use of court instructions to apprise jury of issues affecting reliability of eyewitness identifications).  The Ninth Circuit has also expressly recognized the relevant Federal Rule 403 concerns associated with expert eyewitness reliability evidence.  *U.S. v. Amaral*, 485 F.2d at 1154 ("[W]e see the dangers of admitting such testimony in terms of confusing the jurors and undue delays.").

Moreover, there is a danger of unfair prejudice to Defendant Ditsch in permitting Plaintiff to effectively re-try his criminal case with "better" or alternative evidence that was not utilized or even contemplated at his criminal trial.  The main issue for both Plaintiff's *Simmons* and *Brady* claims, beyond whether Defendant Ditsch did or did not use impermissibly suggestive procedures during Turner's identification of Plaintiff, is whether, had the allegedly tainted identification been excluded or the exculpatory evidence been disclosed, the criminal trial would have resulted in the conviction of Plaintiff.  Consequently, it will be necessary for the jury to compare the evidence at trial to the evidence that would have been admitted had there been no such alleged *Simmons* or *Brady* violation.  Allowing Plaintiff to introduce evidence that was not employed in the first trial (and was not excluded as a consequence of any act or omission of Defendant) invites the jury to improperly analyze the claims at issue with the benefit of hindsight and information that was not

1  developed or even contemplated in 1991 or 1992.  The unfairness to Defendant

2  Ditsch is further pronounced, because, whether or not Defendant Ditsch used

3  suggestive identification procedures, Plaintiff had every reason to impeach the

4  credibility of his eyewitness accusers during his criminal trial – he never put on, or

5  sought to put on, any expert testimony regarding reliability of eyewitnesses at his

6  criminal trial.   Allowing this evidence now allows Plaintiff an impermissible

7  second bite at the apple.

8      As a result, under Federal Rule of Evidence 403 as well, Dr. Wells' testimony

9  should be excluded.

10  **VI.    CONCLUSION.**

11      For the foregoing reasons, Defendant respectfully requests that this Court

12  Defendant's Motion *in Limine* No. 14.

13                              Respectfully submitted,

14  DATED:  January 4, 2016       LAWRENCE BEACH ALLEN & CHOI, PC

15

16                        By     /s/ Daniel S. Cha
                              _____

17                          DAVID D. LAWRENCE
                            JIN S. CHOI
18                          DANIEL S. CHA
                            Attorneys for Defendants,
19                          COUNTY OF LOS ANGELES
                            and CRAIG DITSCH
20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF DANIEL S. CHA</u>

I, Daniel S. Cha, declare and state as follows:

1.      I am an attorney at law duly licensed to practice before this Court and all the courts of the State of California.  I am an associate with the law firm of Lawrence Beach Allen & Choi, P.C., attorneys for Defendants County of Los Angeles and Defendant Craig Ditsch in the above-referenced matter.  I have personal knowledge of the facts stated herein, except those stated upon information and belief and, as to those matters, I believe them to be true.  If called upon to testify to the matters herein, I could and would competently do so.

2.      Exhibit "A" is concurrently lodged under separate cover, attached to "Defendant Craig Ditsch's Notice of Lodging of Exhibit "A" in support of Motion *in Limine* No. 12 to Exclude Evidence and Reference Related to Plaintiff's Habeas Proceedings.  Exhibit "A" is a true and correct copy on disc of Plaintiff's Proposed Trial Exhibit No. 39, which contains a video file of habeas proceedings and testimony.

3.      Attached hereto and incorporated herein by reference as Exhibit "B" is a true and correct copy of the habeas court's July 26, 2011 Findings of Fact and Conclusions of Law on Petition for Writ of Habeas Corpus, which was previously submitted to this Court as Defendant's MSJ Exhibit "F" [Docket No. 35-3].

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 4, 2016, at Santa Ana, California.


_____/s/ Daniel S. Cha_____
DANIEL S. CHA